1   Pierce Gore (SBN 128515)
2   PRATT & ASSOCIATES
    1901 S. Bascom Avenue, Suite 350
3   Campbell, CA 95008
    Telephone: (408) 429-6506
4   Fax: (408) 369-0752
    pgore@prattattorneys.com
5
    (Co-counsel listed on signature page)
6
    *Attorneys for Plaintiffs*
7

8

9                   IN THE UNITED STATES DISTRICT COURT

10             FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                           SAN JOSE DIVISION

12

13  KAREN THOMAS and LISA LIDDLE,          Case No. 5:12-cv-02908 EJD
    individually and on behalf of all others
14  similarly situated,                     **CLASS ACTION AND REPRESENTATIVE
                                            ACTION**
15                 Plaintiffs,
                                            **AMENDED COMPLAINT FOR
16  v.                                      DAMAGES, EQUITABLE AND
                                            INJUNCTIVE RELIEF**
17  COSTCO WHOLESALE
    CORPORATION,                            **JURY TRIAL DEMANDED**
18
19                 Defendant.

20

21          Plaintiffs, Karen Thomas ("Plaintiff Thomas") and Lisa Liddle ("Plaintiff Liddle")
22
    collectively "Plaintiffs") through their undersigned attorneys, bring this lawsuit against Defendant
23
    Costco Wholesale Corporation ("Costco" or "Defendant") as to their own acts upon personal
24
    knowledge and as to all other matters upon information and belief. In order to remedy the harm
25
    arising from Defendant's illegal conduct, which has resulted in unjust profits, Plaintiffs bring this
26
    action on behalf of a national class of consumers, and alternatively, a California subclass of
27
    consumers who, within the last four years, purchased Kirkland Signature Cashew Clusters;
28
    Kirkland Signature Kettle Chips; Kirkland Signature Whole Dried Blueberries; Kirkland

1   Signature Newman's Own 100% Grape Juice; Kirkland Signature Organic Chocolate Reduced

2   Fat Milk; Kirkland Bolthouse Farms Organic 100 % Carrot Juice; Kirkland Signature Real Sliced

3   Fruit; Kirkland Signature Nature's Path Organic Ancient Grains Granola; or Kirkland Canola Oil

4   Cooking Spray, or food products distributed or sold by Defendant that were 1) labeled with the

5   ingredient "evaporated cane juice;" 2) labeled or advertised as having no preservatives despite

6   containing preservatives; 3) labeled or advertised with a nutrient content claim despite containing

7   a disqualifying amount of fat, saturated fat, sodium or cholesterol exceeding the levels listed in 21

8   C.F.R. § 101.13(h); 4)  labeled or advertised with a defined nutrient content  term listed in 21

9   C.F.R. § 101.54, but failing to satisfy the requirements for the use of that term; 5) labeled or

10  advertised as healthy despite containing disqualifying nutrient levels exceeding the levels listed in

11  21 C.F.R. § 101.65; 6) labeled or advertised as having "0 grams Trans Fat" but which contained

12  more than 13 grams of fat per 50 grams; 7) labeled or advertised as healthy despite containing

13  disqualifying nutrient levels; 8) labeled or advertised as having "no sugar added" but failing to

14  meet the regulatory criteria contained in 21 C.F.R. § 101.60 for that claim; or 9) labeled or

15  advertised with an unauthorized health claim (referred to herein as "Misbranded Food Products").

16                                   **INTRODUCTION**

17      1.      Every  day,  millions  of  Americans  purchase  and  consume  packaged  foods.

18  Identical  federal  and  California  laws  require  truthful,  accurate  information  on  the  labels  of

19  packaged foods. This case is about a company that flouts those laws. The law is clear: misbranded

20  food cannot legally be manufactured, held, advertised, distributed or sold. Misbranded food has

21  no economic value and is worthless as a matter of law, and purchasers of misbranded food are

22  entitled to a refund of their purchase price.

23      2.      Costco is a retailer of natural and organic foods that has sales locations throughout

24  the United States, UK, Canada, Mexico, Taiwan, South Korea, Japan and Australia.

25      3.      Defendant has implemented a campaign to describe and advertise its products as

26  healthy and associated with wellness.

27

28

4.      Defendant recognizes that health and wellness claims drive food sales, and actively promotes the purported health benefits of its products, notwithstanding the fact that these promotions violate California and federal law.

5.      If a manufacturer is going to make a claim on a food label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled.  As described more fully below, Defendant has made, and continues to make, false and deceptive claims in violation of federal and California laws that govern the types of representations that can be made on food labels.  These laws recognize that reasonable consumers are likely to choose products claiming to have a health or nutritional benefit over otherwise similar food products that do not claim such benefits.  More importantly, these laws recognize that the failure to disclose the presence of risk-increasing nutrients is deceptive because it conveys to consumers the net impression that a food makes only positive contributions to a diet, or does not contain any nutrients at levels that raise the risk of diet-related disease or health-related condition.

6.      Under California law, which is identical to federal law, a number of Defendant's food labeling practices are unlawful because they are deceptive and misleading to consumers, including:

A.      Failing to use the common or usual name of ingredients required by law or to list ingredients in descending order by weight as required by law thus concealing the presence of undisclosed chemicals and petrochemicals such as Propane, Propane 2-methyl (isobutane) and Butane that comprise a significant percentage of the product and conveying the false impression that chemicals and other nonorganic ingredients comprise smaller percentages of the products than they actually do;

B.      Representing food products to be free of preservatives when they in fact contain preservatives;

C.      Failing to disclose the presence of chemical preservatives and artificial added colors in the ingredient lists of food products as required by law;

D.      Making unlawful nutrient content claims on the labels of  food products that fail to meet the minimum nutritional requirements that are legally required for the nutrient content claims that are being made;

E.      Making unlawful antioxidant claims on the labels of food products that fail to meet the minimum nutritional requirements that are legally required for the

antioxidant claims that are being made;

F.     Representing foods to be fresh or have a "fresh taste" when those products have undergone manufacturing processes and contain undisclosed chemical preservatives that preclude any representations about freshness as a matter of law; and

G.     Making unlawful and unapproved health claims about their products that are prohibited by law.

7.     These practices are not only illegal but they mislead consumers and deprive them of the information they require to make informed purchasing decisions. Thus, for example, a mother who reads labels because she wants to purchase all natural and healthy food, and does not wish to feed her child unhealthy foods or highly processed foods, would be misled by Defendant's practices and labeling.

8.     Similarly, California and federal laws have placed numerous requirements on food companies that are designed to ensure that the claims that companies make about their products to consumers are truthful, accurate and backed by acceptable forms of scientific proof. When companies such as Defendant make false and unlawful nutrient content and health-related and other labeling claims that are prohibited by regulation, consumers such as Plaintiffs are misled.

9.     Identical California and federal laws regulate the content of labels on packaged food. The requirements of the federal Food Drug & Cosmetic Act ("FDCA") were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law"). California Health & Safety Code § 109875, *et seq*. Under both the Sherman Law and FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling. 21 U.S.C. § 343(a).

10.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art. Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading. If any one representation in the labeling is misleading, the entire food is misbranded, and no other statement in the labeling can cure a misleading statement. "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-*

*Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove that anyone was actually misled.

11.     In promoting the health benefits of its Misbranded Food Products, Defendant has claimed to understand the importance of communicating responsibly about its products. Nevertheless, Defendant has made, and continues to make, false and deceptive claims about its products in violation of identical federal and California laws that govern the types of representations that can be made on food labels.

12.     Defendant has made, and continues to make, unlawful claims on food labels of its Misbranded Food Products that are prohibited by federal and California law and which render these products misbranded. Under federal and California law, Defendant's Misbranded Food Products cannot legally be manufactured, advertised, distributed, held or sold.  Defendant's false and misleading labeling practices stem from its global marketing strategy.  Thus, the violations and misrepresentations are similar across product labels and product lines.

13.     Defendant's violations of law are the illegal advertising, marketing, distribution, delivery and sale of Defendant's Misbranded Food Products to consumers in California and throughout the United States.

## PARTIES

14.     Plaintiffs Karen Thomas and Lisa Liddle are residents of Los Gatos, California who purchased Defendant's snacks in California during the four (4) years prior to the filing of this Complaint (the "Class Period").  Attached hereto as **Exhibit 1** are copies of photographs of package labels on products purchased by Plaintiff Karen Thomas.  Attached hereto as **Exhibit 2 - 9** are products purchased by Plaintiff Lisa Liddle.   Plaintiffs each purchased more than $25.00 of the Misbranded Food Products during the Class Period.

15.     Defendant Costco is a Washington corporation doing business in the State of California and throughout the United States.

## JURISDICTION AND VENUE

16.     This Court has original jurisdiction over this action pursuant to  28 U.S.C. § 1332(d) because this is a class action in which:  (1) there are over 100 members in the proposed

1  class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the

2  claims of the proposed class members exceed $5,000,000 in the aggregate.

3      17.    The Court has jurisdiction over the federal claim alleged herein pursuant to

4  28U.S.C. § 1331, because it arises under the laws of the United States.

5      18.    The Court has jurisdiction over the California claims alleged herein pursuant to 28

6  U.S.C. § 1367, because they form part of the same case or controversy under Article III of the

7  United States Constitution.

8      19.    Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to

9  28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is

10  between citizens of different states.

11      20.    The Court has personal jurisdiction over Defendant because a substantial

12  portion of the wrongdoing alleged in this Amended Complaint occurred in California, Defendant

13  is authorized to do business in California, Defendant has sufficient minimum contacts with

14  California, and Defendant otherwise intentionally avails itself of the markets in California

15  through the promotion, marketing and sale of merchandise, sufficient to render the exercise of

16  jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

17      21.    Because a substantial part of the events or omissions giving rise to these claims

18  occurred in this District and because the Court has personal jurisdiction over Defendant, venue is

19  proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

20                          **FACTUAL ALLEGATIONS**

21  A.    **Identical California and Federal Laws Regulate Food Labeling**

22      22.    Food manufacturers are required to comply with identical federal and state laws

23  and regulations that govern the labeling of food products.  First and foremost among these is the

24  Federal Food, Drug and Cosmetics Act ("FDCA") and its labeling regulations, including those set

25  forth in 21 C.F.R. § 101.

26      23.    Pursuant to the Sherman Law, California has expressly adopted the federal

27  labeling requirements as its own and indicated that "[a]ll food labeling regulations and any

28  amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993,

or adopted on or after that date shall be the food regulations of this state." California Health & Safety Code § 110100.

24. In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. For example, food products are misbranded under California Health & Safety Code § 110660 if their labeling is false and misleading in one or more particulars; are misbranded under California Health & Safety Code § 110665 if their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110670 if their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110705 if words, statements and other information required by the Sherman Law to appear on their labeling are either missing or not sufficiently conspicuous; are misbranded under California Health & Safety Code § 110735 if they are represented as having special dietary uses but fail to bear labeling that adequately informs consumers of their value for that use; and are misbranded under California Health & Safety Code § 110740 if they contain artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose that fact on their labeling.

**B.     FDA Enforcement History**

25. In recent years the FDA has become increasingly concerned that food manufacturers have been disregarding food labeling regulations. To address this concern, the FDA informed the food industry of its concerns and placed the industry on notice that food labeling compliance was an area of enforcement priority.

26. In October 2009, the FDA issued its 2009 FOP Guidance to the food industry that stated in part:

> FDA's research has found that with FOP labeling, people are less likely to check the Nutrition Facts label on the information panel of foods (usually, the back or side of the package). It is thus essential that both the criteria and symbols used in front-of-package and shelf-labeling systems be nutritionally sound, well-designed

to help consumers make informed and healthy food choices, and not be false or misleading. The agency is currently analyzing FOP labels that appear to be misleading.  The agency is also looking for symbols that either expressly or by implication are nutrient content claims. We are assessing the criteria established by food manufacturers for such symbols and comparing them to our regulatory criteria.

It is important to note that nutrition-related FOP and shelf labeling, while currently voluntary, is subject to the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. Therefore, FOP and shelf labeling that is used in a manner that is false or misleading misbrands the products it accompanies. Similarly, a food that bears FOP or shelf labeling with a nutrient content claim that does not comply with the regulatory criteria for the claim as defined in Title 21 Code of Federal Regulations (CFR) 101.13 and Subpart D of Part 101 is misbranded. We will consider enforcement actions against clear violations of these established labeling requirements. . .

… Accurate food labeling information can assist consumers in making healthy nutritional choices. FDA intends to monitor and evaluate the various FOP labeling systems and their effect on consumers' food choices and perceptions. FDA recommends that manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA laws and regulations. FDA will proceed with enforcement action against products that bear FOP labeling that are explicit or implied nutrient content claims and that are not consistent with current nutrient content claim requirements. FDA will also proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading.

27.     The 2009 FOP Guidance is attached hereto as **Exhibit 10**.

28.     Defendant had actual knowledge of the 2009 FOP Guidance.

Although Defendant had actual knowledge of the 2009 FOP Guidance, Defendant did not remove the unlawful and misleading labels from its Misbranded Food Products.

29.     On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA Commissioner] Dr. Hamburg" ("Open Letter"). The Open Letter reiterated the FDA's concern regarding false and misleading labeling by food manufacturers.  In pertinent part, the letter stated:

In the early 1990s, the Food and Drug Administration (FDA) and the food industry worked together to create a uniform national system of nutrition labeling, which includes the now-iconic Nutrition Facts panel on most food packages.  Our citizens appreciate that effort, and many use this nutrition information to make food choices.  Today, ready access to reliable information about the calorie and nutrient content of food is even more important, given the prevalence of obesity

and diet-related diseases in the United States.  This need is highlighted by the announcement recently by the First Lady of a coordinated national campaign to reduce the incidence of obesity among our citizens, particularly our children.

With that in mind, I have made improving the scientific accuracy and usefulness of food labeling one of my priorities as Commissioner of Food and Drugs.  The latest focus in this area, of course, is on information provided on the principal display panel of food packages and commonly referred to as "front-of-pack" labeling.  The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections. …

As we move forward in those areas, I must note, however, that there is one area in which more progress is needed.  As you will recall, we recently expressed concern, in a "Dear Industry" letter, about the number and variety of label claims that may not help consumers distinguish healthy food choices from less healthy ones and, indeed, may be false or misleading.

At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations.  As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990.  Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.

To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace.  While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices.  For example:

- Nutrient content claims that FDA has authorized for use on foods for adults are not permitted on foods for children under two.  Such claims are highly inappropriate when they appear on food for infants and toddlers because it is well known that the nutritional needs of the very young are different than those of adults.
- Claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat, and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel.
- Products that claim to treat or mitigate disease are considered to be drugs and must meet the regulatory requirements for drugs, including the

requirement to prove that the product is safe and effective for its intended use.

- Misleading "healthy" claims continue to appear on foods that do not meet the long- and well-established definition for use of that term.

- Juice products that mislead consumers into believing they consist entirely of a single juice are still on the market. Despite numerous admonitions from FDA over the years, we continue to see juice blends being inaccurately labeled as single-juice products.

These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole. In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products. That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.

I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling. I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

30.     Defendant has continued to mislabel its Misbranded Food Products despite the express admonition not to do so contained in the Open Letter.

C.     **Defendant's Food Products are Misbranded**

     i.     **Defendant Make Unlawful Nutrient Content Claims**

31.     In order to appeal to consumer preferences, Defendant has repeatedly made false and unlawful nutrient content claims about nutrients that either fail to utilize one of the limited defined terms or use one of the defined terms improperly. These nutrient content claims are unlawful because they fail to comply with the nutrient content claim provisions in violation of 21 C.F.R. §§ 101.13 and 101.54, which are incorporated in California's Sherman Law.

32.     Pursuant to Section 403 of the FDCA, a claim that characterizes the level of a nutrient in a food is a "nutrient content claim" that must be made in accordance with the

1    regulations that authorize the use of such claims.  21 U.S.C. § 343(r)(1)(A).  California expressly

2    adopted the requirements of 21 U.S.C. § 343(r) in § 110670 of the Sherman Law.

3         33.    Nutrient content claims are claims about specific nutrients contained in a product.

4    They are typically made on the front of packaging in a font large enough to be read by the

5    average consumer.  Because these claims are relied upon by consumers when making purchasing

6    decisions, the regulations govern what claims can be made in order to prevent misleading claims.

7         34.    Section 403(r)(1)(A) of the FDCA governs the use of expressed and implied

8    nutrient content claims on labels of food products that are intended for sale for human

9    consumption. *See* 21 C.F.R. § 101.13.

10        35.    21 C.F.R. § 101.13 provides the general requirements for nutrient content claims,

11   which California has expressly adopted.  California Health & Safety Code § 110100.

12        36.    An "expressed nutrient content claim" is defined as any direct statement about the

13   level (or range) of a nutrient in the food (*e.g.*, "low sodium" or "contains 100 calories").  *See* 21

14   C.F.R. § 101.13(b)(1).

15        37.    An "implied nutrient content claim" is defined as any claim that: (i) describes the

16   food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a

17   certain amount (*e.g.*, "high in oat bran"); or (ii) suggests that the food, because of its nutrient

18   content, may be useful in maintaining healthy dietary practices and is made in association with an

19   explicit claim or statement about a nutrient (*e.g.*, "healthy, contains 3 grams (g) of fat").  21

20   C.F.R. § 101.13(b)(2)(i-ii).

21        38.    FDA regulations authorize use of a limited number of defined nutrient content

22   claims. In addition to authorizing the use of only a limited set of defined nutrient content terms on

23   food labels, FDA's regulations authorize the use of only certain synonyms for these defined terms.

24   If a nutrient content claim or its synonym is not included in the food labeling regulations it cannot

25   be used on a label.  Only those claims, or their synonyms, that are specifically defined in the

26   regulations may be used.  All other claims are prohibited.  21 C.F.R. § 101.13(b).

27        39.    Only approved nutrient content claims will be permitted on the food label, and all

28   other nutrient content claims will misbrand a food.  It should thus be clear which type of claims

1  are prohibited and which are permitted. Manufacturers are on notice that the use of an

2  unapproved nutrient content claim is prohibited conduct.  58 FR 2302.  In addition, 21 U.S.C. §

3  343(r)(2) prohibits using unauthorized undefined terms and declares foods that do so to be

4  misbranded.

5       40.    In order to appeal to consumer preferences, Defendant has repeatedly made

6  unlawful nutrient content claims that its products are a "good source" of nutrients such as fiber,

7  and protein.  These nutrient content claims are unlawful because they fail to comply with the

8  nutrient content claim provisions in violation of 21 C.F.R. §§ 101.13 and 101.54, which have

9  been incorporated in California's Sherman Law.

10      41.    The regulations specify absolute and comparative levels at which foods qualify to

11  make these claims for particular nutrients (*e.g.*, .low fat, . . . more vitamin C) and list synonyms

12  that may be used in lieu of the defined terms.  Certain implied nutrient content claims (*e.g.,*

13  healthy) also are defined.  The daily values (DVs) for nutrients that the FDA has established for

14  nutrition labeling purposes have application for nutrient content claims, as well.  Claims are

15  defined under current regulations for use with nutrients having established DVs; moreover,

16  relative claims are defined in terms of a difference in the percent DV of a nutrient provided by

17  one food as compared to another. *See. e.g.*, 21 C.F.R. §§ 101.13 and 101.54.

18      42.    Defendant has repeatedly made unlawful nutrient content claims about fiber,

19  calcium and other nutrients that fail to utilize one of the limited defined terms appropriately.

20  These nutrient content claims are unlawful because they fail to comply with the nutrient content

21  claim provisions in violation of 21 C.F.R. §§ 101.13 and 101.54, which have been incorporated in

22  California's Sherman Law.  They are false because the terms have defined minimum nutritional

23  thresholds so that, for example, a claim that a product contains a nutrient is a claim that the

24  product has at least 10% of the daily value of that nutrient. By using defined terms improperly,

25  Defendant has, in effect, falsely asserted that the products met the minimum nutritional thresholds

26  for the claims in question when they do not.   By using undefined terms, Defendant has, in effect,

27  falsely asserted that its products meet at least the lowest minimum threshold for any nutrient

28  content claim which is 10% of the daily value of the nutrient at issue.  Such a threshold represents

1   the lowest level that a nutrient can be present in a food before it becomes deceptive and

2   misleading to highlight its presence in a nutrient content claim.

3       43.     For example, the label for the Kirkland Signature Cashew Clusters bought by

4   Plaintiff Liddell states, in relevant part, that it is "A Good Source of Protein" and a "Good Source

5   of  Fiber" despite the fact that that the product does not meet the minimum nutrient level

6   threshold to make such a claim which is 10 percent or more of the RDI (Reference Daily Intake

7   or Recommended Daily Intake) or the DRV (Daily Reference Value) per reference amount

8   customarily consumed. *See* 21 C.F.R. § 101.54(c). Similarly, the Kirkland Signature Cashew

9   Clusters claim to "contain" oleic acid despite the fact the nutrient at issue does not have an

10  established daily value and thus cannot serve as the basis for a defined term like "contain" that

11  has a minimum daily value threshold.

12      44.     Defendant has unlawfully labeled a number of its food products as being a "good

13  source" or an "excellent source" of other nutrients when they do not meet the minimum nutrient

14  level threshold to make such claims. For example, the Kirkland Signature Dried Blueberries

15  bought by Plaintiff Liddle claim to be "rich" in antioxidants despite the fact that that the product

16  does not meet the minimum nutrient level threshold to make such a claim which is 20 percent or

17  more of the RDI (Reference Daily Intake or Recommended Daily Intake) or the DRV (Daily

18  Reference Value) per reference amount customarily consumed. *See* 21 C.F.R. § 101.54(b).

19  Similarly, Kirkland Signature Newman's Own 100% Grape Juice which claims to be an

20  "excellent source" of antioxidants (plural) despite the fact that that the product does not meet the

21  minimum nutrient level threshold to make such a claim which is 20 percent or more of the RDI

22  (Reference Daily Intake or Recommended Daily Intake) or the DRV (Daily Reference Value) per

23  reference amount customarily consumed. *See* 21 C.F.R. § 101.54(b).

24      45.     The nutrient content claims regulations discussed above are intended to ensure that

25  consumers are not misled as to the actual or relative levels of nutrients in food products.

26  Defendant has violated these referenced regulations. Therefore, Defendant's Misbranded Food

27  Products are misbranded as a matter of California and federal law and cannot be sold or held

28  because they have no economic value and are legally worthless.

46.     Plaintiffs relied on Defendant's nutrient content claims when making their purchase decisions and were misled because they erroneously believed the implicit misrepresentation that the Cashew Cluster products they were purchasing met the minimum nutritional threshold to make such claims. Plaintiffs would not have purchased these products had they known that the products did not in fact satisfy such minimum nutritional requirements with regard to the claimed nutrients. Plaintiffs had other food alternatives that satisfied such standards and Plaintiffs also had cheaper alternatives.

47.     Plaintiff Liddle reasonably relied on Defendant's nutrient content claims on Kirkland Signature Dried Blueberries and Kirkland Signature Newman's Own 100% Grape Juice when making her purchase decisions and was misled because she erroneously believed the implicit misrepresentation that the products she was purchasing met the minimum nutritional threshold to make such claims. Plaintiff Liddle would not have purchased these products had she known that the products did not in fact satisfy such minimum nutritional requirements with regard to the claimed nutrients. Plaintiff Liddle had other food alternatives that satisfied such standards and Plaintiffs also had cheaper alternatives.

48.     For these reasons, Defendant's nutrient content claims at issue in this Amended Complaint are false and misleading and in violation of 21 C.F.R. §§ 101.13 and 101.54 and identical California law, and the products at issue are misbranded as a matter of law. Defendant has violated these referenced regulations. Therefore, Defendant's Misbranded Food Products are misbranded as a matter of federal and California law and cannot be sold or held and thus have no economic value and are legally worthless.

49.     Defendant's claims in this respect are false and misleading and the products are in this respect misbranded under identical federal and California laws. Plaintiff and members of the Class who purchased these products paid an unwarranted premium for these products.

**ii.     Defendant's Unlawful "Antioxidant" Claims**

50.     Federal and California regulations regulate antioxidant claims as a particular type of nutrient content claim.  Specifically, 21 C.F.R. § 101.54(g) contains special requirements for nutrient claims that use the term "antioxidant":

(1)      the name of the antioxidant must be disclosed;

(2)      there must be an established Recommended Daily Intake ("RDI") for that antioxidant, and if not, no "antioxidant" claim can be made about it;

(3)      the label claim must include the specific name of the nutrient that is an antioxidant and cannot simply say "antioxidants" (*e.g.*, "high in antioxidant vitamins C and E"),[1] *see* 21 C.F.R. § 101.54(g)(4);

(4)      the nutrient that is the subject of the antioxidant claim must also have recognized antioxidant activity, *i.e.*, there must be scientific evidence that after it is eaten and absorbed from the gastrointestinal tract, the substance participates in physiological, biochemical or cellular processes that inactivate free radicals or prevent free radical-initiated chemical reactions, *see* 21 C.F.R.  § 101.54(g)(2);

(5)      the antioxidant nutrient must meet the requirements for nutrient content claims in 21 C.F.R. § 101.54(b), (c), or (e) for "High" claims, "Good Source" claims, and "More" claims, respectively.  For example, to use a "High" claim, the food would have to contain 20% or more of the Daily Reference Value ("DRV") or RDI per serving.  For a "Good Source" claim, the food would have to contain between 10-19% of the DRV or RDI per serving, *see* 21 C.F.R. § 101.54(g)(3); and

(6)      the antioxidant nutrient claim must also comply with general nutrient content claim requirements such as those contained in 21 C.F.R. § 101.13(h) that prescribe the circumstances in which a nutrient content claim can be made on the label of products high in fat, saturated fat, cholesterol or sodium.

51.      The labeling of Kirkland Signature Whole Dried Blueberries claims that the blueberries are "rich" in antioxidants.  The labeling of Kirkland Signature Newman's Own 100% Grape Juice claims that the juice is an "excellent source" of antioxidants.

---

[1] Alternatively, when used as part of a nutrient content claim, the term "antioxidant" or "antioxidants" (such as "high in antioxidants") may be linked by a symbol (such as an asterisk) that refers to the same symbol that appears elsewhere on the same panel of a product label followed by the name or names of the nutrients with the recognized antioxidant activity.  If this is done, the list of nutrients must appear in letters of a type size height no smaller than the larger of one half of the type size of the largest nutrient content claim or 1/16 inch.

52.     The antioxidant labeling for Costco's Kirkland Signature Whole Dried Blueberries and Kirkland Signature Newman's Own 100% Grape Juice bought by Plaintiff Liddle violates California law: (1) because the names of the antioxidants are not disclosed on the product labels; (2) because there are no RDIs for the antioxidants being touted, including flavonoids and polyphenols; (3) because the claimed antioxidant nutrients fail to meet the requirements for nutrient content claims in 21 C.F.R. § 101.54(b), (c), or (e) for "High" claims, "Good Source" claims, and "More" claims, respectively; and (4) because Defendant lacks adequate scientific evidence that the claimed antioxidant nutrients participate in physiological, biochemical, or cellular processes that inactivate free radicals or prevent free radical-initiated chemical reactions after they are eaten and absorbed from the gastrointestinal tract.

53.     The antioxidant nutrient content claims regulations discussed above are intended to ensure that consumers are not misled as to the actual or relative levels of antioxidants in food products.  Defendant has violated these referenced regulations.  Therefore, Defendant's Misbranded Food Products are misbranded as a matter of California and federal law and cannot be sold or held because they have no economic value and are legally worthless.

54.     Plaintiff Liddle relied on Defendant's unlawful antioxidant content claims on Kirkland Signature Dried Blueberries and Kirkland Signature Newman's Own 100% Grape Juice when making her purchase decisions and was misled because she erroneously believed the implicit misrepresentation that the products she was purchasing met the minimum nutritional threshold to make such claims. Plaintiff Liddle would not have purchased these products had she known that the products did not in fact satisfy such minimum nutritional requirements with regard to the claimed nutrients. Plaintiff Liddle had other food alternatives that satisfied such standards and Plaintiffs also had cheaper alternatives.

55.     For these reasons, Defendant's antioxidant claims at issue in this Complaint are misleading and in violation of 21 C.F.R. § 101.54 and California law, and the products at issue are misbranded as a matter of law.  Misbranded products cannot be legally manufactured, advertised, distributed, held or sold and have no economic value and are legally worthless.

1   Plaintiff Liddle and members of the class who purchased these products paid an unwarranted
2   premium for these products.

3          **iii.    Defendant's Unlawful "No Sugar Added" Claims**

4          56.     Federal and California law regulate "no sugar added" claims as a particular type
5   of nutrient content claim.  Specifically, 21 C.F.R. § 101.60 contains special requirements for
6   nutrient claims that use the phrase "no sugar added."  Pursuant to the Sherman Law, California
7   has expressly adopted the federal labeling requirements of 21 C.F.R. § 101.60 as its own.
8   California Health & Safety Code § 110100.

9          57.     Defendant claims that the Kirkland Signature Bolthouse Farms Organic Carrot
10  Juice and Kirkland Signature Real Sliced Fruit have "No Sugar Added" despite the fact that these
11  products fail to meet the regulatory criteria established by California and identical federal law for
12  making such a claim.

13         58.     21 C.F.R. § 101.60(c)(2) provides in pertinent part, with emphasis added:

14         (2) The terms "no added sugar," "without added sugar," or "***no sugar added***" may
15         be used only if:

16         (i) No amount of sugars, as defined in §101.9(c)(6)(ii), or any other ingredient
17         that contains sugars that functionally substitute for added sugars is added during
           processing or packaging; and

18         (ii) The product does not contain an ingredient containing added sugars such as
19         jam, jelly, or concentrated fruit juice; and

20         (iii) The sugars content has not been increased above the amount present in the
21         ingredients by some means such as the use of enzymes, except where the intended
           functional effect of the process is not to increase the sugars content of a food, and
22         a functionally insignificant increase in sugars results; and

23         (iv) The food that it resembles and for which it substitutes normally contains
24         added sugars; and

25         (v) ***The product bears a statement that the food is not "low calorie" or "calorie***
26         ***reduced"*** (unless the food meets the requirements for a "low" or "reduced"
           calorie" food) ***and that directs consumers' attention to the nutrition panel for***
27         ***further information on sugar and calorie content***.

28

59.    21 C.F.R. § 101.60(b)(2) provides that:

The terms "low-calorie," "few calories," "contains a small amount of calories," "low source of calories," or "low in calories" may be used on the label or in labeling of foods, except meal products as defined in § 101.13(l) and main dish products as defined in § 101.13(m), provided that: (i)(A) The food has a reference amount customarily consumed greater than 30 grams (g) or greater than 2 tablespoons and does not provide more than 40 calories per reference amount customarily consumed; or (B) The food has a reference amount customarily consumed of 30 g or less or 2 tablespoons or less and does not provide more than 40 calories per reference amount customarily consumed and, except for sugar substitutes, per 50 g ….(ii) If a food meets these conditions without the benefit of special processing, alteration, formulation, or reformulation to vary the caloric content, it is labeled to clearly refer to all foods of its type and not merely to the particular brand to which the label attaches (e.g., "celery, a low-calorie food").

60.    Defendant's Misbranded Food Products do not satisfy element (v) of 21 C.F.R. § 101.60(c)(2) and are therefore misbranded under federal and state law.

61.    Notwithstanding the fact that 21 C.F.R. § 101.60(c)(2)(ii) bars the use of the term "no sugar added" on products containing an ingredient that functions as sugar such as concentrated fruit juice, Defendant has touted its Misbranded Food Products as having "no sugar added" despite the addition of such ingredients.

62.    Notwithstanding the fact that 21 C.F.R. § 101.60(c)(2)(v) bars the use of the term "no sugar added" on foods that are not low-calorie unless they bear an express warning immediately adjacent to each use of the terms that discloses that the food is not "low calorie" or "calorie reduced," Defendant has touted its non low-calorie products as having "no sugar added" and chosen to omit the mandated disclosure statements.

63.    In doing so, Defendant has ignored the language of 21 C.F.R. § 101.60(c)(1) that states that:

Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners e.g., "sugar free," or "no sugar," as indicating a  product which is low in calories or significantly reduced in calories.

64.    Because reasonable consumers like Plaintiff Liddle may be expected to regard terms that represent that the food contains "no sugar added" or sweeteners as indicating a product which is low in calories or significantly reduced in calories, consumers are misled when foods that are not low-calorie as a matter of law are falsely represented, through the unlawful use of

phrases like "no sugar added" that they are not allowed to bear due to their high caloric levels and absence of mandated disclaimer or disclosure statements.

65.    In fact these products were highly caloric and loaded with sugar. For example, the Kirkland Signature Real Sliced Fruit Fuji apple varieties had on a 50 gram basis 350 calories which is over 8 times the maximum level allowed by laws. Moreover, it had 25% more sugar than and 44% more calories than an equivalent size Hershey bar.

66.    The labeling for Defendant's products violates California law and federal law.  For these reasons, Defendant's "no sugar added" claims at issue in this Complaint are misleading and in violation of 21 C.F.R. § 101.60(c)(2) and California law, and the products at issue are misbranded as a matter of law.  Misbranded products cannot be legally sold and have no economic value and are legally worthless. Defendant is in violation despite numerous enforcement actions and warning letters pertaining to several other companies addressing the type of misleading sugar-related nutrient content claims described herein.

67.    Plaintiff Liddle did not know, and had no reason to know, that Defendant's Misbranded Food Products were misbranded, and bore "no added sugar" nutrient content claims despite failing to meet the requirements to make those nutrient content claims.

68.    Defendant's products in this respect are misbranded under federal and California law. Many of Defendant's products that are labeled with a "No Sugar Added" or similar sugar-related nutrient content claim contain disqualifying levels of calories that prohibit the claim from being made, absent a mandated disclosure statement warning of the higher caloric level of the products, and thus violate 21 CFR §101.60(c)(2).

69.    Because of these improper nutrient content claims, Plaintiff purchased these products and paid a premium for them.  The nutrient content claims regulations discussed herein are intended to ensure that consumers are not misled as to the actual or relative levels of nutrients in food products.  Defendant has violated these referenced regulations.  Therefore, Defendant's Misbranded Food Products are misbranded as a matter of federal and California law and cannot be sold or held because they have no economic value and are legally worthless.

iv.     **Defendant Makes Unlawful Health Claims**

70.     Defendant has violated identical California and federal law by making numerous unapproved health claims about their products.  It has also violated identical California and federal law by making numerous unapproved claims about the ability of their products to cure, mitigate, treat and prevent various diseases that render their products unapproved drugs under California and federal law. Moreover, in promoting the ability of its Misbranded Food Products to have an effect on certain diseases such as heart disease, Defendant has violated the advertising provisions of the Sherman law.

71.     A health claim is a statement expressly or implicitly linking the consumption of a food substance (*e.g.*, ingredient, nutrient, or complete food) to risk of a disease (*e.g.*, cardiovascular disease) or a health-related condition (*e.g.*, hypertension). *See* 21 C.F.R. §101.14(a)(1), (a)(2), and (a)(5). Only health claims made in accordance with FDCA requirements, or authorized by FDA as qualified health claims, may be included in food labeling. Other express or implied statements that constitute health claims, but that do not meet statutory requirements, are prohibited in labeling foods.

72.     21 C.F.R. § 101.14, which has been expressly adopted by California, provides when and how a manufacturer may make a health claim about its product.  A "Health Claim" means any claim made on the label or in labeling of a food, including a dietary supplement, that expressly or by implication, including "third party" references, written statements (*e.g.*, a brand name including a term such as "heart"), symbols (*e.g.*, a heart symbol), or vignettes, characterizes the relationship of any substance to a disease or health-related condition. Implied health claims include those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition (*see* 21 CFR § 101.14(a)(1)).

73.     Further, health claims are limited to claims about disease risk reduction, and cannot be claims about the diagnosis, cure, mitigation, or treatment of disease. An example of an authorized health claim is: "Three grams of soluble fiber from oatmeal daily in a diet low in

saturated fat and cholesterol may reduce the risk of heart disease. This cereal has 2 grams per serving."

74.    A claim that a substance may be used in the diagnosis, cure, mitigation, treatment, or prevention of a disease is a drug claim and may not be made for a food. 21 U.S.C. § 321(g)(1)(D).

75.    The use of the term "healthy" is not a health claim but rather an implied nutrient content claim about general nutrition that is defined by FDA regulation. In general, the term may be used in labeling an individual food product that:

> Qualifies as both low fat and low saturated fat; Contains 480 mg or less of sodium per reference amount and per labeled serving, and per 50 g (as prepared for typically rehydrated foods) if the food has a reference amount of 30 g or 2 tbsps or less;
>
> Does not exceed the disclosure level for cholesterol (*e.g.*, for most individual food products, 60 mg or less per reference amount and per labeled serving size); *and*
>
> Except for raw fruits and vegetables, certain frozen or canned fruits and vegetables, and enriched cereal-grain products that conform to a standard of identity, provides at least 10% of the daily value (DV) of vitamin A, vitamin C, calcium, iron, protein, *or* fiber per reference amount. Where eligibility is based on a nutrient that has been added to the food, such fortification must comply with FDA's fortification policy.

21 C.F.R. § 101.65(d)(2).    Defendant is aware of this rule.

76.    The FDA's regulation on the use of the term healthy also encompasses other, derivative uses of the term health (*e.g.*, healthful, healthier) in food labeling. 21 C.F.R. § 101.65(d).

77.    Defendant has violated the provisions of § 21 C.F.R. §101.14, 21 C.F.R. §101.65, 21 C.F.R. §101.76, 21 U.S.C. § 321(g)(1)(D) and 21 U.S.C. § 352(f)(1) by including certain claims on their product labeling.   Despite being aware of the criteria and restrictions that pertain to "healthy" claims, Defendant makes numerous unlawful "healthy" claims about their

1   Misbranded Food Products and their components. Defendant indicates that these products and

2   their ingredients are "healthy". Defendant does this in violation of 21 C.F.R. §101.65 which has

3   been adopted by California and which precludes the use of these terms about Defendant's

4   products such as the Kirkland Signature Cashew Clusters purchased by Plaintiffs which have

5   disqualifying levels of unhealthy nutrients like fat or the Kirkland Signature Real Fruit Slices

6   which fail to meet the minimum nutritional levels for a healthy claim.

7       78.   In addition to their unlawful "healthy" claims, Defendant makes unlawful health

8   related claims. For example, Defendant claims that the ingredients in its Cashew Clusters

9   "promotes good cardiovascular health"

10      79.   The therapeutic claims on Defendant's labeling establish that Defendant's products

11  are drugs because they are intended for use in the cure, mitigation, treatment, or prevention of

12  disease. Defendant's products are not generally recognized as safe and effective for the above

13  referenced uses and, therefore, the products would be "new drug[s]" under section 201(p) of the

14  Act [21 U.S.C. § 321(p)]. New drugs may not be legally marketed in the U.S. without prior

15  approval from the FDA as described in section 505(a) of the Act [21 U.S.C. § 355(a)]. FDA

16  approves a new drug on the basis of scientific data submitted by a drug sponsor to demonstrate

17  that the drug is safe and effective. Defendant also violated California Health & Safety Code §

18  110403 which prohibits the advertisement of products that are represented to have any effect on

19  enumerated conditions, disorders and diseases including cancer and heart diseases unless the

20  materials have federal approval.

21      80.   Plaintiffs saw such health related claims and relied on Defendant's health claims

22  which influenced their decision to purchase Defendant's products. Plaintiffs would not have

23  bought the products had they known Defendant's claims were unapproved and that the products

24  were thus misbranded.

25      81.   Plaintiffs and members of the Class was misled into the belief that such claims

26  were legal and had passed regulatory muster and were supported by science capable of securing

27  regulatory acceptance. Because this was not the case, Plaintiffs and members of the Class have

28  been deceived.

82.     Defendant's materials and advertisements not only violate regulations adopted by California such as 21 C.F.R. § 101.14, they also violate California Health & Safety Code § 110403 which prohibits the advertisement of products that are represented to have any effect on enumerated conditions, disorders and diseases including heart disease unless the materials have federal approval.

83.     Plaintiffs and members of the Class have been misled by Defendant's unlawful labeling practices and actions into purchasing products they would not have otherwise purchased had they known the truth about these products. Plaintiffs and members of the Class who purchased these products paid an unwarranted premium for these products.

84.     Defendant's health related claims are false and misleading and the products are in this respect misbranded under identical California and federal laws. Misbranded products cannot be legally sold and thus have no economic value and are legally worthless.

**v.      Defendant's Unlawful "0 grams Trans Fat" Claim**

85.     To appeal to consumer preferences, Defendant has repeatedly made improper nutrient content claims on products containing disqualifying levels of fat, saturated fat, cholesterol or sodium. These nutrient content claims were improper because Defendant failed to include disclosure statements required by law that are designed to inform consumers of the inherently unhealthy nature of those products in violation of 21 C.F.R. § 101.13(h), which has been incorporated in California's Sherman Law.

86.     21 C.F.R. § 101.13 (h)(l) provides that:

> If a food … contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30 g or less … per 50 g … then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: "See nutrition information for __ content" with the blank filled in with the identity of the nutrient exceeding the specified level, e.g., "See nutrition information for fat content."

87.     Defendant repeatedly violates this provision. Defendant's Misbranded Food Products' packaging prominently makes "0 grams Trans Fat" claims despite disqualifying levels of fat that far exceed the 13 gram disclosure threshold.

88.     Pursuant to 21 C.F.R. § 101.13(h), Defendant is prohibited from making the unqualified nutrient claims of "0 grams Trans Fat" on its food products if its products contain fat in excess of 13 grams, saturated fat in excess of 4 grams, cholesterol in excess of 60 milligrams, or sodium in excess of 480mg per 50 grams, unless the product also displays a disclosure statement that informs consumers of the product's fat, saturated fat and sodium levels.

89.     These regulations are intended to ensure that consumers are not misled into the erroneous belief that a product that claims, for instance, to be low in trans fat, but actually has other unhealthy fat levels, is a healthy choice, because of the lack of trans fats.

90.     Nevertheless, Defendant's Misbranded Food Products' labels state that the products contain "0 grams Trans Fat" without such a disclosure even though the products contain fat in excess of 13 grams.

91.     Based on the fat, saturated fat, cholesterol and sodium content of Defendant's products, pursuant to federal and California law, Defendant must include a warning statement adjacent to the trans fat nutrient claim that informs consumers of the high levels of fat, saturated fat, cholesterol or sodium.   No such disclosure statement currently exists on Defendant's Misbranded Food Products.  Therefore, they are misbranded as a matter of federal and California law and cannot be sold because of this fact they have no economic value and are legally worthless.

92.     In October 2009, the FDA issued a Guidance For Industry: Letter regarding Point of Purchase Food Labeling ("2009 FOP Guidance"), to address its concerns about front of package labels. Despite the issuance of the 2009 FOP Guidance, Defendant did not remove the improper and misleading "0 grams Trans Fat" nutrient content claims from its Misbranded Food Products.

93.     On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA Commissioner] Dr. Hamburg" (hereinafter, "Open Letter").

///

///

94.     The Open Letter reiterated the FDA's concern regarding false and misleading labeling by food manufacturers. In pertinent part the letter stated:

> To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace. While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices. For example:
>
> - Claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat, and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel.
>
> These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole. In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products. That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.
>
> I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling. I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

95.     Notwithstanding the Open Letter, Defendant continues to utilize improper trans fat nutrient content claims, despite the express guidance of the FDA in the Open Letter that "claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat [or sodium, cholesterol or total fat], and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel."

96.     Defendant also continues to ignore the FDA's Guidance for Industry, A Food Labeling Guide, which detailed the FDA's guidance on how to make nutrient content claims about food products that contain "one or more nutrients [like total fat at levels] in the food that may increase the risk of disease or health related condition that is diet related."  Defendant continues to utilize improper trans fat nutrient claims on the labels of their Misbranded Food Products.   As such, Defendant's Misbranded Food Products continue to run afoul of FDA guidance as well as California and federal law.

97.     In addition to its guidance to industry, the FDA has sent warning letters to the industry, including many of Defendant's peer food manufacturers, for the same types of improper 0 grams Trans Fat nutrient content claims described above.  In these letters the FDA indicated that as a result of the same type of 0 gram trans fat claims utilized by Defendant, products were in "violation of the Federal Food, Drug, and Cosmetic Act … and the applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 CFR 101)" and "misbranded within the meaning of section 403 because the product label bears a nutrient content claim but does not meet the requirements to make the claim."

98.     The warning letters were hardly isolated, as the FDA has issued at least nine other warning letters to other companies for the same type of improper 0 grams Trans Fat nutrient content claims at issue in this case.

99.     Despite the FDA's numerous warnings to industry, Defendant has continued to sell products bearing improper "0 grams Trans Fat" nutrient content claims without meeting the requirements to make them.

100.    Plaintiffs did not know, and had no reason to know, that Defendant's Misbranded Food Products were misbranded, and bore nutrient claims despite failing to meet the requirements to make those nutrient claims. Plaintiffs were equally unaware that Defendant's Misbranded Food Products contained one or more nutrients like total fat at levels in the food that, according to the FDA, "may increase the risk of disease or health related condition that is diet related."

///

1

2

### vi.   **Defendant's Unlawful ECJ Claim**

3

101.    As discussed herein, evaporated cane juice is an unlawful term as it is merely a

4

false and misleading name for another food or ingredient that has a common or usual name,

5

namely sugar or dried cane syrup.  21 C.F.R. §§ 101.3 and 102.5, which have been adopted by

6

California, prohibit manufacturers from referring to foods by anything other than their common

7

and usual name. 21 CFR §101.4 which has been adopted by California, prohibits manufacturers

8

from referring to ingredient by anything other than their common and usual names.

9

102.    Defendant has violated these provisions by failing to use the common or usual

10

name for ingredients mandated by law, or because the products lacked the ingredient entirely.  In

11

particular, Defendant used the unlawful term evaporated cane juice on its products in violation of

12

numerous labeling regulations designed to protect consumers from misleading labeling practices.

13

Defendant's practices also violated express FDA policies.

14

103.    In October of 2009, the FDA issued Guidance for Industry: Ingredients Declared

15

as Evaporated Cane Juice, which advised industry and that:

16

> [T]he term "evaporated cane juice" has started to appear as an ingredient on food
> labels, most commonly to declare the presence of sweeteners derived from sugar

17

> cane syrup. However, FDA's current policy is that sweeteners derived from sugar
> cane syrup should not be declared as "evaporated cane juice" because that term

18

> falsely suggests that the sweeteners are juice…

19

> "Juice" is defined by 21 CFR 120.1(a) as "the aqueous liquid expressed or

20

> extracted from one or more fruits or vegetables, purees of the edible portions of
> one or more fruits or vegetables, or any concentrates of such liquid or puree." …

21

> As provided in 21 CFR 101.4(a)(1), "Ingredients required to be declared on the

22

> label or labeling of a food . . . shall be listed by common or usual name . . . ." The
> common or usual name for an ingredient is the name established by common

23

> usage or by regulation (21 CFR 102.5(d)). The common or usual name must

24

> accurately describe the basic nature of the food or its characterizing properties or
> ingredients, and may not be "confusingly similar to the name of any other food

25

> that is not reasonably encompassed within the same name" (21 CFR 102.5(a))…

26

> Sugar cane products with common or usual names defined by regulation are sugar

27

> (21 CFR 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 CFR
> 168.130). Other sugar cane products have common or usual names established by

28

> common usage (e.g., molasses, raw sugar, brown sugar, turbinado sugar,
> muscovado sugar, and demerara sugar)…

1

2

3

4

The intent of this draft guidance is to advise the regulated industry of FDA's view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried cane syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup."…

5

6

7

8

9

Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5. Furthermore, sweeteners derived from sugar cane syrup are not juice and should not be included in the percentage juice declaration on the labels of beverages that are represented to contain fruit or vegetable juice (see 21 CFR 101.30).

10

11

http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodLabelingNutrition/ucm181491.htm

12

13

104.    Despite the issuance of the 2009 FDA Guidance, Defendant did not remove the unlawful and misleading food labeling ingredients from its Misbranded Food Products.

14

15

16

17

18

19

105.    Defendant often lists ingredients with unlawful and misleading names.    The Nutrition Facts label of the Misbranded Food Products list "Organic Evaporated Cane Juice" as an ingredient.  According to the FDA, "'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup."  The FDA provides that "cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is 'dried cane syrup.' "

20

21

22

23

106.    Various FDA warning letters have made it clear that the use of the term evaporated cane juice is unlawful because the term does not represent the common or usual name of a food or ingredient. These warning letters indicate that foods that bear labels that contain the term evaporated cane juice are misbranded.

24

25

107.    Such products mislead consumers into paying a premium price for inferior or undesirable ingredients or for products that contain ingredients not listed on the label.

26

27

108.    Defendant's false, unlawful, and misleading ingredient listings render products misbranded under California law.

28

109.    Defendant sold Kirkland Signature Organic Chocolate Reduced Fat Milk, the labels of which misleadingly listed "evaporated cane juice" as an ingredient.  According to the FDA, "'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup."  The FDA provides that "cane syrup has a standard of identity defined by regulation in 21 CFR 168.130; the common or usual name for the solid or dried form of cane syrup is 'dried cane syrup.'"

110.    For these reasons, Defendant's claims at issue in this Complaint are misleading and violate 21 C.F.R. § 343 (a) and California law, and the products at issue are misbranded as a matter of law.  Misbranded products cannot be legally manufactured, advertised, distributed, held or sold and have no economic value and are legally worthless.  Plaintiff Liddle read and relied on the listing of evaporated cane juice and this played a role in her decision making process. Plaintiff Liddle would not have bought the products labeled with evaporated cane juice as an ingredient had the ingredients all been listed by their common and usual names. Plaintiff Liddle and the class paid a premium price for the Misbranded Food Products.

**vii.    Defendant Violates California Law By Failing To Label Its Product Ingredients By Their Common Names And Concealing The Fact That Its Food Products Contain High Levels of Synthetic Chemicals And Petrochemicals**

111.    In violation of identical California and federal law, Defendant concealed the fact that its Kirkland cooking spray products contained significant amounts of undisclosed petrochemicals such as Propane, Propane 2-methyl (isobutane) as well as other undisclosed chemicals.

112.     Defendant did this by failing to disclose these ingredients in the ingredient statements for Kirkland cooking spray products despite the fact that, as confirmed by an official Material Safety Data Sheet prepared by Defendant for its Kirkland cooking spray products, the products contained Propane and Propane 2-methyl (isobutane).

113.    Under California law "[a]ny food fabricated from two or more ingredients is

1    misbranded unless it bears a label clearly stating the common or usual name of each ingredient"

2    (California Health & Safety Code § 110725). California's law is identical to federal law on this

3    point.

4         114.    Moreover, California has expressly adopted the federal regulations as it own.

5    Thus, California has adopted the requirements of 21 C.F.R. § 101.4 which mandate that the

6    ingredient names listed on product labels be the common or usual name of those ingredients.

7         115.    In its guidance for industry and warning letters to manufacturers, the FDA has

8    repeatedly stated its policy of restricting the ingredient names listed on product labels to their

9    common or usual name, as provided in 21 C.F.R. § 101.4(a)(1).

10        116.    An ingredient's common or usual name is the name established by common usage

11   or regulation, as provided in 21 C.F.R. § 102.5(d) which has been adopted by the State of

12   California.

13        117.    The common or usual name must accurately describe the basic nature of the food

14   or its characterizing properties or ingredients, as provided in 21 C.F.R. § 102.5(a).

15        118.    The purpose of these laws and regulations is to ensure that consumers are provided

16   with accurate information about products and their ingredients so they can make informed

17   purchasing decisions. Consumers can avoid chemicals and ingredients they wish to avoid in

18   particular products and can select products that contain the ingredients consumers desire.

19        119.    Absent such disclosures and labeling practices, consumers cannot avoid chemicals

20   like the ones listed on the Material Safety Data Sheets that Defendant describes as posing both

21   chronic and acute risks to health and life.

22        120.    Ignoring California law and its incorporated federal regulations and guidance,

23   Defendant mislabeled its Misbranded Food Products so that consumers were deprived of accurate

24   information and, in fact, Plaintiff and the members of the class were misled by Defendant's

25   concealment of chemicals and petrochemicals they wished to avoid.

26        121.    In listing "PROPELLANT" as an ingredient, and failing to list the actual

27   ingredients Propane and Iso-butane by their common and usual names, Defendant not only misled

28   Plaintiffs and the Class by concealing the presence of these petrochemicals. Defendant also

1   violated California Health & Safety Code § 110725 and the federal regulations (21 C.F.R. §§

2   101.4 and 102.5) that have been adopted as law by the State of California. Specifically,

3   Defendant has failed to disclose the presence of the Propane and Iso-butane by their common or

4   usual names, as required by California Health & Safety Code § 110725 and 21 C.F.R. §§ 101.4

5   and 102.5.

6       122.    A reasonable consumer would expect that when a manufacturer lists the

7   ingredients on its products, the product's ingredients are given their common or usual name as

8   required by law. A reasonable consumer would also expect that when a manufacturer lists the

9   ingredients on its products it would use the same names required on its Material Safety Data

10  Sheets.

11      123.    Plaintiff Lisa Liddle purchased Kirkland cooking spray and did not know, and had

12  no reason to know, that Defendant's Products were misbranded because they failed to list

13  undisclosed chemicals and petrochemicals as ingredients or to name those ingredients by the

14  ingredients' common or usual name, despite identical California and federal regulations requiring

15  that that the chemicals and petrochemicals be listed as ingredients by their common and usual

16  names.

17      124.    Consumers are thus misled into purchasing Defendant's products with false and

18  misleading ingredient names, which do not describe the basic nature of the food or its

19  characterizing properties or ingredients, as provided in California Health & Safety Code § 110725

20  and 21 C.F.R. §§ 101.4 and 102.5(a), both of which have been adopted as law by California..

21      125.    Had Plaintiff Lisa Liddle been aware that the Kirkland cooking spray products she

22  purchased contained any amount (let alone the actual high levels) of petrochemicals like the

23  lighter fluid butane, she would not have purchased the products or knowingly used them as food.

24  Plaintiff had other alternatives that lacked such ingredients and Plaintiff also had cheaper

25  alternatives.

26      126.    Defendant's claims in this respect are false and misleading and the products are in

27  this respect misbranded under identical federal and California law, including California Health &

28  Safety Code § 110725. Misbranded products cannot be legally sold and have no economic value

and are legally worthless. Plaintiffs and members of the Class who purchased these products paid an unwarranted premium for these products.

### viii. Defendant Violates California Law By Failing To List Its Product Ingredients In Descending Order Of Predominance By Weight.

127.    Under identical California and federal law, ingredients must be listed in descending order of predominance by weight. 21 C.F.R. § 101.4 (adopted by California).

128.    Such laws are designed to ensure consumers can determine if ingredients that are important to them are either significant components of particular products or not and how those ingredients compare relative to other ingredients.

129.    Defendant violates these regulations on its cooking spray products by listing as its last ingredient "Propellant" a component of the product which constitutes a significant percentage of the product that is far greater than other ingredients listed before this ingredient.

130.     The failure to list ingredients in descending order of predominance by weight misbrands products under identical California and federal laws. It also misleads consumers such as Plaintiffs who relied on the labels into the erroneous belief that ingredients such as the synthetic chemicals and petrochemicals that comprised the propellant mix were a small component of the product less than even preservatives and anti-foaming agents, which is false.

131.    Had Plaintiff been aware that the Propane and iso-butane were ingredients that made up a significant component of the cooking spray products, she would not have purchased the products.  Plaintiff had other alternatives that lacked such ingredients and Plaintiff also had cheaper alternatives.

### ix. Defendant Violates California Law By Making Unlawful And False Claims That Its Misbranded Food Products Are "Free" Preservatives And By Failing To Disclose On Its Misbranded Food Products' Labels The Presence Of Preservatives In Those Products As Required By California Law

132.    Despite the fact that its Misbranded Food Products contained chemical preservatives, Defendant falsely stated on the labels of its Misbranded Food Products that they

1    were "free" of preservatives. This statement was demonstrably false and misled consumers such
2    as the Plaintiffs who relied on the statements.

3        133.    For example, Defendant's Kirkland Signature Nature's Path Organic Ancient
4    Grains Granola bought by Plaintiff Liddle bore such a false labeling statement. In fact, this
5    product contained the chemical preservatives tocopherols which are listed as chemical
6    preservatives in 21 C.F.R. § 182.3890 and which meet the definition of chemical preservatives
7    incorporated into California and federal law in (21 C.F.R. § 101.22.

8        134.    Given the presence of this chemical preservative, the label statement "Preservative
9    free" ingredients is both false and misleading and renders the product misbranded.

10       135.    Moreover, even if Defendant had not included a false representation that its
11   Misbranded Food Products were "free" preservatives on its product labels, these products would
12   have still been misbranded as a matter of law because of Defendant's failure to disclose the
13   presence of such ingredients as mandated by identical California and federal law.

14       136.    "Under California law "food is misbranded if it bears or contains any artificial
15   flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact
16   (California Health & Safety Code § 110740). California's law is identical to federal law on this
17   point.

18       137.    Pursuant to 21 C.F.R. § 101.22 which has been adopted by California, "[a]
19   statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the
20   food or on its container or wrapper, or on any two or all three of these, as may be necessary to
21   render such statement likely to be read by the ordinary person under customary conditions of
22   purchase and use of such food." 21 C.F.R. §  101.22 defines a chemical preservative as "any
23   chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not
24   include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to
25   food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or
26   herbicidal properties."

27       138.    Defendant's Misbranded Food Products were misbranded because they contained
28   chemical preservatives like tocopherols but failed to disclose that fact.

1    139.    For example, while Defendant's Kirkland Signature Nature's Path Organic

2    Ancient Grains Granola bought by Plaintiff Liddle purchased by the Plaintiffs, contains

3    tocopherols which is used in that product as a type of chemical preservative designed to retard

4    rancidity, the products  label fails to disclose the fact that the tocopherols are being used as a

5    preservative in those products by including a parenthetical such as (preservative) or (to retard

6    spoilage) after the term citric acid in the ingredient statement. Because Defendant unlawfully fails

7    to indicate these ingredients are being used as chemical preservatives reasonable consumer would

8    have no reason to doubt the preservative free claim.

9    140.    A reasonable consumer would expect that when Defendant made a representation

10   on its products' labels that such products were "free" of preservatives that such a representation

11   was true, A reasonable consumer would also expect that when Defendant lists its products'

12   ingredients that it would make all disclosures required by law such as the disclosure of chemical

13   preservatives and coloring mandated by identical California and federal law.

14   141.    Plaintiff Liddle saw Defendant's label representations that its products were "free"

15   of preservatives and relied on them in the reasonable expectation that such a representation was

16   true. Plaintiff Liddle based her purchasing decisions in part on the belief that these products did

17   not contain chemical preservatives or artificial ingredients.

18   142.    Plaintiff Liddle did not know, and had no reason to know, that Defendant's

19   Misbranded Food Products contained undisclosed chemical preservatives because 1) Defendant

20   falsely represented on its label that the products were "free" of preservatives and 2) failed to

21   disclose those chemical preservatives as required by California and federal law.

22   143.    Consumers are thus misled into purchasing Defendant's products with false and

23   misleading labeling statements and ingredient descriptions, which do not describe the basic nature

24   of the ingredients, as  required by California Health & Safety Code § 110740 and  21 C.F.R. §§

25   101.22 which has been adopted as law by California..

26   144.    Had Plaintiff Liddle been aware that the Misbranded Food Products she purchased

27   contained chemical preservatives she would not have purchased the products. Plaintiff Liddle had

28   other alternatives that lacked such ingredients and Plaintiff Liddle also had cheaper alternatives.

145.    Because of their false label representations and omissions about chemical preservatives Defendant's Misbranded Food Products are in this respect misbranded under identical federal and California law, including California Health & Safety Code § 110740. Misbranded products cannot be legally sold and have no economic value and are legally worthless. Plaintiff Liddle and members of the Class who purchased these products paid an unwarranted premium for these products.

x.    **Defendant Has Violated California Law By Using Misleading Containers That Are Slack Filled**

146.    Pursuant to C.F.R. 100.100 which has been adopted by California.

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;

(2) The requirements of the machines used for enclosing the contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other non-mandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

147.     Defendant routinely employed slack filled packaging to mislead consumers into believing they were receiving more than they actually were.

148.     Defendant lacked any lawful justification for doing so.

149.     Plaintiffs and members of the Class relied on and were deceived by Defendant's misleading slack filled packaging.

150.     The Plaintiffs purchased slack filled packages of Defendant's products including Kirkland Signature Nature's Path Organic Ancient Grains Granola; Kirkland Signature Whole Dried Blueberries; and Kirkland Signature Cashew Clusters.

151.     Plaintiffs did not know, and had no reason to know, that Defendant's Misbranded Food Products were slack filled and misbranded. Plaintiffs and members of the Class who purchased the Misbranded Food Products paid an unwarranted premium for these products. Because of Defendant's slack fill packaging violations these products were misbranded and could not be legally held or sold. They were legally and economically worthless.

**D.      Defendant Has Violated California Law**

152.     Defendant has violated California Health & Safety Code § 110390 which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

153.     Defendant has violated California Health & Safety Code § 110395 which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

154.     Defendant has violated California Health & Safety Code §§ 110398 and 110400 which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

155.     Defendant has violated California Health & Safety Code § 110660 because its products' labeling are false and misleading in one or more ways.

156. Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110665 because their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and the regulations adopted thereto.

157. Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110670 because their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted thereto.

158. Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110705 because words, statements and other information required by the Sherman Law to appear on their labeling either are missing or not sufficiently conspicuous.

159. Defendant has violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

160. Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110755 because they purport to be or are represented for special dietary uses, and its labels fail to bear such information concerning their vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

161. Defendant has violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

162. Defendant has violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for deliver any such food.

163. Defendant has violated the standard set by 21 C.F.R. § 101.13(h), which has been incorporated by reference in the Sherman Law, by failing to include on their product labels the nutritional information required by law.

**E.    Plaintiffs Purchased Defendant's Misbranded Food Products**

164. Plaintiffs care about the nutritional content of food and seek to maintain a healthy diet.

1   165.   Plaintiffs purchased Defendant's Misbranded Food Products on occasions during

2   the Class Period.

3   166.   Plaintiffs read the labels on Defendant's Misbranded Food Products before

4   purchasing them.  Defendant's labels falsely conveyed to the Plaintiffs the net impression that the

5   Misbranded Food Products they bought made only positive contributions to a diet, and did not

6   contain any nutrients at levels that raised the risk of diet-related disease or health- related

7   condition.

8   167.   Plaintiffs relied on Defendant's package labeling and based and justified the

9   decision to purchase Defendant's products in substantial part on Defendant's package labeling.

10   168.   At point of sale, Plaintiffs did not know, and had no reason to know, that

11   Defendant's products were misbranded as set forth herein, and would not have bought the

12   products had they known the truth about them.

13   169.   At point of sale, Plaintiffs did not know, and had no reason to know, that claims

14   were improper and unauthorized as set forth herein, and would not have bought the products

15   absent the claims.

16   170.   As a result of Defendant's improper nutrient content claims, Plaintiffs and

17   thousands of others in California purchased the Misbranded Food Products at issue.

18   171.   Defendant's labeling, advertising and marketing as alleged herein are false and

19   misleading and were designed to increase sales of the products at issue. Defendant's

20   misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a

21   reasonable person would attach importance to Defendant's misrepresentations in determining

22   whether to purchase the products at issue.

23   172.   A reasonable person would also attach importance to whether Defendant's

24   products were legally salable, and capable of legal possession, and to Defendant's representations

25   about these issues in determining whether to purchase the products at issue. Plaintiffs would not

26   have purchased Defendant's Misbranded Food Products had they known they were not capable of

27   being legally sold or held.

28

1

**CLASS ACTION ALLEGATIONS**

2      173.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Procedure

3  23(b)(2) and 23(b)(3) on behalf of the following class:

4
> All persons in the United States, and alternatively, in a subclass of persons
5  in the State of California who, within the last four years, purchased Kirkland
   Signature Cashew Clusters; Kirkland Signature Kettle Chips; Kirkland Signature
6  Whole Dried Blueberries; Kirkland Signature Newman's Own 100% Grape Juice;
   Kirkland Signature Organic Chocolate Reduced Fat Milk; Kirkland Bolthouse
7  Farms Organic 100 % Carrot Juice; Kirkland Signature Real Sliced Fruit; Kirkland
   Signature Nature's Path Organic Ancient Grains Granola; or Kirkland Canola Oil
8  Cooking Spray or food products distributed or sold by Defendant that were 1)
   labeled with the ingredient "evaporated cane juice;" 2) labeled or advertised as
9  having no preservatives despite containing preservatives; 3) labeled or advertised
   with a nutrient content claim despite containing a disqualifying amount of fat,
10 saturated fat, sodium or cholesterol exceeding the levels listed in 21 C.F.R. §
   101.13(h); 4)  labeled or advertised with a defined nutrient content  term listed in
11 21 C.F.R. § 101.54, but failing to satisfy the requirements for the use of that term;
   5) labeled or advertised as healthy despite containing disqualifying nutrient levels
12 exceeding the levels listed in 21 C.F.R. § 101.65; 6) labeled or advertised as
   having "0 grams Trans Fat" but which contained more than 13 grams of fat per 50
13 grams; 7) labeled or advertised as healthy despite containing disqualifying nutrient
   levels; labeled or advertised as having "no sugar added" but failing to meet the
14 regulatory criteria contained in 21 C.F.R. § 101.60 for that claim; or 9) labeled or
   advertised with an unauthorized health claim (referred to herein as "the Class").
15

16

17     174.    The  following  persons  are  expressly  excluded  from  the  Class:  (1)

18 Defendant and  Its subsidiaries and affiliates; (2) all persons who make a timely election to

19 be excluded from the proposed Class; (3) governmental entities; and (4) the Court to

20 which this case is assigned and its staff.

21     175.    This action can be maintained as a class action because there is a well-defined

22 community of interest in the litigation and the proposed Class is easily ascertainable.

23     176.    Numerosity:  Based upon Defendant's publicly available sales data with respect to

24 the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that

25 joinder of all Class members is impracticable.

26     177.    Common Questions Predominate:  This action involves common questions of law

27 and fact applicable to each Class member that predominate over questions that affect only

28 individual Class members.  Thus, proof of a common set of facts will establish the right of each

Class member to recover.  Questions of law and fact common to each Class member include, for example:

a.   Whether Defendant engaged in unlawful, unfair or deceptive business practices by failing to properly package and label its Misbranded Food Products sold to consumers;

b.   Whether the food products at issue were misbranded as a matter of law;

c.   Whether Defendant made improper and misleading nutrient content, antioxidant, and health  claims with respect to its food products sold to consumers;

d.   Whether Defendant made unlawful and misleading "no sugar added, or "preservative free" or "0 grams trans fat" claims with respect to their food products sold to consumers;

e.   Whether Defendant utilized slack fill packaging or failed to properly list or describe the ingredients in its products;

f.   Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq*., California Bus. & Prof. Code § 17500 *et seq*., the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq*., and the Sherman Law;

g.   Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief;

h.   Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiffs and the Class; and

i.   Whether Defendant was unjustly enriched by its deceptive practices.

178.   <u>Typicality</u>:   Plaintiffs' claims are typical of the claims of the Class because Plaintiffs bought Defendant's Misbranded Food Products during the Class Period.  Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.   Plaintiffs and the Class sustained similar injuries arising out of Defendant's conduct in violation of California law.  The injuries of each member of the Class were caused directly by Defendant's wrongful conduct.  In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

179.  Adequacy:  Plaintiffs will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class members.  Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the members of the Class.  Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

180.  Superiority:  There is no plain, speedy or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

181.  The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

182.  The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions

affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

183. Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Business and Professions Code § 17200, *et seq.***
**Unlawful Business Acts and Practices**

184. Plaintiffs incorporate by reference each allegation set forth above.

185. Defendant's conduct constitutes unlawful business acts and practices.

186. Defendant sold Misbranded Food Products in California during the Class Period.

187. Defendant is a corporation and, therefore, is a "person" within the meaning of the Sherman Law.

188. Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

189. Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

190. Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

191. Defendant sold Plaintiffs and the Class Misbranded Food Products that were not capable of being sold, or held legally and have no economic value and which were legally worthless. Plaintiffs and the Class paid a premium price for the Misbranded Food Products.

192. As a result of Defendant's illegal business practices, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's

1  ill-gotten gains and to restore to any Class Member any money paid for the Misbranded Food

2  Products.

3      193.    Defendant's unlawful business acts present a threat and reasonable continued

4  likelihood of injury to Plaintiffs and the Class.

5      194.    As a result of Defendant's conduct, Plaintiffs and the Class, pursuant to Business

6  and Professions Code § 17203, are entitled to an order enjoining such future conduct by

7  Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's

8  ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by

9  Plaintiffs and the Class.

**SECOND CAUSE OF ACTION**
**Business and Professions Code § 17200, *et seq.***
**Unfair Business Acts and Practices**

195.    Plaintiffs incorporate by reference each allegation set forth above.

196.    Defendant's conduct as set forth herein constitutes unfair business acts and

practices.

197.    Defendant sold Misbranded Food Products in California during the Class Period.

198.    Plaintiffs and members of the Class suffered a substantial injury by virtue of

buying Defendant's Misbranded Food Products that they would not have purchased absent

Defendant's illegal conduct.

199.    Defendant's deceptive marketing, advertising, packaging and labeling of its

Misbranded Food Products and its sale of unsalable misbranded products that were illegal to

possess was of no benefit to consumers, and the harm to consumers and competition is

substantial.

200.    Defendant sold Plaintiffs and the Class Misbranded Food Products that were not

capable of being legally sold or held and that have no economic value and were legally worthless.

Plaintiffs and the Class paid a premium price for the Misbranded Food Products.

201.    Plaintiffs and the Class who purchased Defendant's Misbranded Food Products

had no way of reasonably knowing that the products were misbranded and were not properly

marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

202. The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefor. Defendant's conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiffs and the Class.

203. As a result of Defendant's conduct, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the Class.

**THIRD CAUSE OF ACTION**
**Business and Professions Code § 17200, *et seq.***
**Fraudulent Business Acts and Practices**

204. Plaintiffs incorporate by reference each allegation set forth above.

205. Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

206. Defendant sold Misbranded Food Products in California during the Class Period.

207. Defendant's misleading marketing, advertising, packaging and labeling of the Misbranded Food Products and misrepresentation that the products were salable, capable of possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiffs and members of the Class were deceived. Defendant has engaged in fraudulent business acts and practices.

208. Defendant's fraud and deception caused Plaintiffs and the Class to purchase Defendant's Misbranded Food Products that they would otherwise not have purchased had they known the true nature of those products.

209.   Defendant sold Plaintiffs and the Class Misbranded Food Products that were not capable of being sold or held legally and that have no economic value and were legally worthless. Plaintiffs and the Class paid a premium price for the Misbranded Food Products.

210.   As a result of Defendant's conduct as set forth herein, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the Class.

**FOURTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**Misleading and Deceptive Advertising**

211.   Plaintiffs incorporate by reference each allegation set forth above.

212.   Plaintiffs assert this cause of action for violations of California Business and Professions Code § 17500*, et seq*. for misleading and deceptive advertising against Defendant.

213.   Defendant sold Misbranded Food Products in California during the Class Period.

214.   Defendant engaged in a scheme of offering Defendant's Misbranded Food Products for sale to Plaintiffs and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products.  Defendant's advertisements and inducements were made within California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products and are statements disseminated by Defendant to Plaintiffs and the Class that were intended to reach members of the Class.  Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

215.   In furtherance of its plan and scheme, Defendant prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of

Defendant's Misbranded Food Products.  Plaintiffs and the Class necessarily and reasonably relied on Defendant's materials, and were the intended targets of such representations.

216.    Defendant's conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiffs and the Class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of Defendant's Misbranded Food Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

217.    As a result of Defendant's violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiffs and the Class.  Misbranded products cannot be legally sold or held and have no economic value and are legally worthless. Plaintiffs and the Class paid a premium price for the Misbranded Food Products.

218.    Plaintiffs and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the Class.

### FIFTH CAUSE OF ACTION
### Business and Professions Code § 17500, *et seq.*
### Untrue Advertising

219.    Plaintiffs incorporate by reference each allegation set forth above.

220.    Plaintiffs assert this cause of action against Defendant for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

221.    Defendant sold Misbranded Food Products in California during the Class Period.

222.    Defendant engaged in a scheme of offering Defendant's Misbranded Food Products for sale to Plaintiffs and the Class by way of product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products.  Defendant's advertisements and inducements

were made in California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products, and are statements disseminated by Defendant to Plaintiffs and the Class. Defendant knew, or in the exercise of reasonable care should have known, that these statements were untrue.

223. In furtherance of its plan and scheme, Defendant prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendant's Misbranded Food Products, and falsely misrepresented the nature of those products. Plaintiffs and the Class were the intended targets of such representations and would reasonably be deceived by Defendant's materials.

224. Defendant's conduct in disseminating untrue advertising throughout California deceived Plaintiffs and members of the Class by obfuscating the contents, nature and quality of Defendant's Misbranded Food Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

225. As a result of Defendant's violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiffs and the Class. Misbranded products cannot be legally sold or held and have no economic value and are legally worthless. Plaintiffs and the Class paid a premium price for the Misbranded Food Products.

226. Plaintiffs and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the Class.

## SIXTH CAUSE OF ACTION
## Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*

227.    Plaintiffs incorporate by reference each allegation set forth above.

228.    This cause of action is brought pursuant to the CLRA.  This cause of action does not currently seek monetary damages and is limited solely to injunctive relief.  Plaintiffs intend to amend this Complaint to seek damages in accordance with the CLRA after providing Defendant with notice pursuant to Cal. Civ. Code § 1782.

229.    At the time of any amendment seeking damages under the CLRA, Plaintiffs will demonstrate that the violations of the CLRA by Defendant was willful, oppressive and fraudulent, thus supporting an award of punitive damages.

230.    Consequently, Plaintiffs and the Class will be entitled to actual and punitive damages against Defendant for their violations of the CLRA.  In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiffs and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiffs and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

231.    Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

232.    Defendant sold Misbranded Food Products in California during the Class Period.

233.    Plaintiffs and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

234.    Defendant's Misbranded Food Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

235.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Sections 1770(a)(5) of the CLRA, (because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

236. By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

237. By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they advertise goods with the intent not to sell the goods as advertised.

238. By engaging in the conduct set forth herein, Defendant has violated and continues to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

239. Plaintiffs request that the Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2). If Defendant is not restrained from engaging in these practices in the future, Plaintiffs and the Class will continue to suffer harm.

240. Pursuant to Section 1782(a) of the CLRA, Plaintiffs' counsel served Defendant with notice of Defendant's violations of the CLRA.

241. Defendant has refused or failed to respond to the CLRA demand notice.

242. Defendant has failed to provide appropriate relief for its violations of the CLRA within 30 days of its receipt of the CLRA demand notice. Accordingly, pursuant to Sections 1780 and 1782(b) of the CLRA, Plaintiffs are entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

Plaintiffs make certain claims in this First Amended Complaint that were not included in the original Complaint and were not included in the CLRA demand notice.

243. This cause of action does not currently seek monetary relief and is limited solely to injunctive relief, as to Defendant's violations of the CLRA not included in the original

1   Complaint.  Plaintiffs intend to amend this Complaint to seek monetary relief in accordance with

2   the CLRA after providing Defendant with notice of Plaintiffs' new claims pursuant to Cal. Civ.

3   Code § 1782.

4       244.    At the time of any amendment seeking damages under the CLRA, Plaintiffs will

5   demonstrate that the violations of the CLRA by Defendant were willful, oppressive and

6   fraudulent, thus supporting an award of punitive damages.

7       245.    Consequently, Plaintiffs and the Class will be entitled to actual and punitive

8   damages against Defendant for its violations of the CLRA.  In addition, pursuant to Cal. Civ.

9   Code § 1782(a)(2), Plaintiffs and the Class will be entitled to an order enjoining the above-

10  described acts and practices, providing restitution to Plaintiffs and the Class, ordering payment of

11  costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court

12  pursuant to Cal. Civ. Code § 1780.

13              **SEVENTH CAUSE OF ACTION**
                **Restitution Based on Unjust Enrichment/Quasi-Contract**
14

15      246.    Plaintiffs incorporate by reference each allegation set forth above.

16      247.    As a result of Defendant's fraudulent and misleading labeling, advertising,

17  marketing and sales of Defendant's Misbranded Food Products Defendant was enriched at the

18  expense of Plaintiffs and the Class.

19      248.    Defendant sold Misbranded Food Products to Plaintiffs and the Class that were not

20  capable of being sold or held legally and which have no economic value and were legally

21  worthless.  It would be against equity and good conscience to permit Defendant to retain the ill-

22  gotten benefits it received from Plaintiffs and the Class, in light of the fact that the products were

23  not what Defendant purported them to be.  Thus, it would be unjust and inequitable for Defendant

24  to retain the benefit without restitution to Plaintiffs and the Class of all monies paid to Defendant

25  for the products at issue.

26      249.    As a direct and proximate result of Defendant's actions, Plaintiffs and the Class

27  have suffered damages in an amount to be proven at trial.

28

1

2          **EIGHTH CAUSE OF ACTION**
           **<u>Song-Beverly Act (Cal. Civ. Code § 1790, *et seq.*)</u>**
3

4          250.   Plaintiffs incorporate by reference each allegation set forth above.

5          251.   Plaintiffs and members of the Class are "buyers" as defined by Cal. Civ. Code §

6    1791(b).

7          252.   Defendant is a "manufacturer" and "seller" as defined by Cal. Civ. Code § 1791(j)

8    & (l).

9          253.   Defendant's food products are "consumables" as defined by Cal. Civ. Code §

10   1791(d).

11         254.   Defendant's nutrient and health content claims constitute "express warranties" as

12   defined by Cal. Civ. Code § 1791.2.

13         255.   Defendant, through its package labels, creates express warranties by making the

14   affirmations of fact and promising that its Misbranded Food Products comply with food labeling

15   regulations under federal and California law.

16         256.   Despite Defendant's express warranties regarding its food products, it does not

17   comply with food labeling regulations under federal and California law.

18         257.   Defendant breached its express warranties regarding its Misbranded Food Products

19   in violation of Cal. Civ. Code § 1790, *et seq.* Defendant also breached its implied warranties

20   regarding its Misbranded Food Products.

21         258.   Defendant sold Plaintiffs and members of the Class Defendant's Misbranded Food

22   Products that were not capable of being sold or held legally and which have no economic value

23   and were legally worthless. Plaintiffs and the Class paid a premium price for the Misbranded

24   Food Products. Plaintiffs purchased more than $25 worth of the Misbranded Food Products and

25   some of the Misbranded Food Products cost more than $5.

26         259.   As a direct and proximate result of Defendant's actions, Plaintiffs and the Class

27   have suffered damages in an amount to be proven at trial pursuant to Cal. Civ. Code § 1794.

28

260.     Defendant's breaches of warranty were willful, warranting the recovery of civil penalties pursuant to Cal. Civ. Code § 1794.

## NINTH CAUSE OF ACTION
### Magnuson-Moss Act (15 U.S.C. § 2301, *et seq.*)

261.     Plaintiffs incorporate by reference each allegation set forth above.

262.     Plaintiffs and members of the Class are "consumers" as defined by 15 U.S.C. § 2301(3).

263.     Defendant is a "supplier" and "warrantor" as defined by 15 U.S.C. § 2301(4) & (5).

264.     Defendant's food products are "consumer products" as defined by 15 U.S.C. § 2301(1).

265.     Defendant's nutrient and health content claims constitute "express warranties."

266.     Defendant, through its package labels, creates express warranties by making the affirmations of fact and promising that its Misbranded Food Products comply with food labeling regulations under federal and California law.

267.     Despite Defendant's express warranties regarding its food products, it does not comply with food labeling regulations under federal and California law.

268.     Defendant breached its express warranties regarding its Misbranded Food Products in violation of 15 U.S.C. §§ 2301, *et seq.* Defendant also breached its implied warranties regarding its Misbranded Food Products.

269.     Defendant sold Plaintiffs and members of the Class Misbranded Food Products that were not capable of being sold or held legally and which have no economic value and were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products. Plaintiffs purchased more than $25 worth of the Misbranded Food Products and some of the Misbranded Food Products cost more than $5.

270.     As a direct and proximate result of Defendant's actions, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury of their claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, and on behalf of the general public, pray for judgment against Defendant as follows:

A.   For an order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B.   For an order awarding, as appropriate, damages, restitution or disgorgement to Plaintiffs and the Class;

C.   For an order requiring Defendant to immediately cease and desist from selling its Misbranded Food Products listed in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

D.   For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

E.   For an order awarding attorneys' fees and costs;

F.   For an order awarding punitive damages;

G.   For an order awarding pre-and post-judgment interest; and

H.   For an order providing such further relief as this Court deems proper.

Dated:  September 28, 2012

Respectfully submitted,


_/S/ Pierce Gore_____

Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1901 S. Bascom Avenue, Suite 350
Campbell, CA  95008
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com