1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| KAREN THOMAS and LISA LIDDLE, individually and on behalf of all others similarly situated, | ) ) ) | Case No.: 5:12-CV-02908 EJD |
| | ) | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| COSTCO WHOLESALE CORPORATION, | ) ) | **[Re: Docket No. 40]** |
| Defendant. | ) ) | |

17    Plaintiffs Karen Thomas ("Thomas") and Lisa Liddle ("Liddle") filed this putative class

18  action against Defendant Costco Wholesale Corporation's ("Costco" or "Defendant"). Plaintiffs

19  allege that several of Defendant's food products have been improperly labeled so as to amount to

20  misbranding and deception in violation of several California and federal laws. Presently before the

21  Court is Defendant's Motion to Dismiss Plaintiffs' Amended Class Action Complaint. Having fully

22  reviewed the parties' papers and having heard oral arguments of counsel, the Court will grant

23  Defendant's Motion.

24

25  **I.      Background**

26    Plaintiff Thomas appears to allege that she purchased at least one of Defendant's products,

27  including Kirkland Signature Kettle Chips. See Am. Compl. ¶ 14, Ex. 1, Docket Item No. 24.

28

Plaintiff Liddle appears to allege that she purchased at least eight of Defendant's products including Kirkland Signature Cashew Clusters, Kirkland Signature Whole Dried Blueberries, Kirkland Signature Newman's Own 100% Grape Juice, Kirkland Signature Organic Chocolate Reduced Fat Milk, Kirkland Bolthouse Farms Organic 100% Carrot Juice, Kirkland Signature Real Sliced Fruit, Kirkland Signature Nature's Path Organic Ancient Grains Granola, and Kirkland Canola Oil Cooking Spray. See id., Exs. 2–9.

Plaintiffs argue that the following representations on the packaging of these and other of Defendant's food products were unlawful and/or misleading: (i) nutrient content claims; (ii) claims about antioxidant content; (iii) "no sugar added" claims; (iv) health claims; (v) "0 grams trans fat" or "no trans fat" claims; (vi) "evaporated cane juice" claims; (vii) synthetic chemical content omissions; (viii) listing of product ingredients not in descending order of predominance by weight; (ix) "preservative free" claims and omissions about preservative content; and (x) slack-filled packaging. They also allege that they "read the labels on Defendant's Misbranded Food Products before purchasing them" and that they "relied on Defendant's package labeling and based and justified the decision to purchase Defendant's products in substantial part on Defendant's package labeling." Id. ¶¶ 166–67.

On September 28, 2012, Plaintiffs filed the Amended Class Action Complaint on behalf of themselves and a putative class of all persons in the United States who have purchased the same or similar products or other of Defendant's food products that were allegedly mislabeled. In the Amended Complaint, Plaintiffs bring forth the following causes of actions: violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. (counts 1–3); violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq., (counts 4–5); violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq. (count 6); restitution based on unjust enrichment or quasi-contract (count 7); and breach of warranty in violation of the Song-Beverly Act, Cal. Civ. Code § 1790 et seq. (count 8) and the Magnuson-Moss Act, 15 U.S.C. § 2301 (count 9).

Case No.: 5:12-CV-02908 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

1    Under California's Sherman Food, Drug, and Cosmetic Laws, the federal labeling

2 requirements are adopted as the food labeling requirements of the state of California. <u>See</u> Cal.

3 Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those

4 regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after

5 that date shall be the food regulations of this state."). The state laws also point to the adoption of

6 specific federal provisions as the parallel state labeling requirements. <u>See, e.g.</u>, <u>id.</u> § 110665 ("Any

7 food is misbranded if its labeling does not conform with the requirements for nutrition labeling as

8 set forth in Section 403(q) (21 U.S.C. Sec. 343(q)) of the federal act and the regulations adopted

9 pursuant thereto. Any food exempted from those requirements under the federal act shall also be

10 exempt under this section."). As such, Plaintiffs argue that violations of the federal laws and

11 regulations—namely the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 <u>et seq.</u> as

12 amended by the Nutrition Labeling and Education Act ("NLEA")—would amount to violations of

13 the identical California state requirements.

14    On November 15, 2012, Defendant filed the present Motion to Dismiss the Amended Class

15 Action Complaint. <u>See</u> Docket Item No. 40. The Court heard arguments of counsel at a hearing on

16 January 25, 2013. <u>See</u> Minute Entry, Docket Item No. 52.

17

18 **II.    Legal Standards**

19    **A.  Article III Standing**

20    An Article III federal court must ask whether a plaintiff has suffered sufficient injury to

21 satisfy the "case or controversy" requirement of Article III of the U.S. Constitution. To satisfy

22 Article III standing, plaintiff must allege: (1) an injury in fact that is concrete and particularized, as

23 well as actual and imminent; (2) that the injury is fairly traceable to the challenged action of the

24 defendant; and (3) that it is likely (not merely speculative) that injury will be redressed by a

25 favorable decision. <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167,

26 180–81 (2000); <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561–62 (1992). A suit brought by a

27 plaintiff without Article III standing is not a "case or controversy," and an Article III federal court

28

3

1    therefore lacks subject matter jurisdiction over the suit. <u>Steel Co. v. Citizens for a Better</u>

2    <u>Environment</u>, 523 U.S. 83, 101 (1998). In that event, the suit should be dismissed under Rule

3    12(b)(1). <u>See id.</u> at 109–10. A defendant may challenge standing through a Federal Rule of Civil

4    Procedure 12(b)(1) motion and may either attack the complaint on its face or the existence of

5    jurisdiction in fact. <u>Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.</u>, 594 F.2d 730, 732–33 (9th

6    Cir. 1979). At least one named plaintiff must have suffered an injury in fact. <u>See</u> <u>Lierboe v. State</u>

7    <u>Farm Mut. Auto. Ins. Co.</u>, 350 F.3d 1018, 1022 (9th Cir. 2003) ("[I]f none of the named plaintiffs

8    purporting to represent a class establishes the requisite of a case or controversy with the

9    defendants, none may seek relief on behalf of himself or any other member of the class."). The

10   party seeking to invoke federal court jurisdiction has the burden of establishing the constitutional

11   elements of standing. <u>See</u> <u>Lujan</u>, 504 U.S. at 561.

12

13         **B.  Motion to Dismiss for Failure to State a Claim**

14         Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

15   specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it

16   rests." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotations omitted). A

17   complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim

18   upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is

19   appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a

20   cognizable legal theory." <u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1104 (9th Cir.

21   2008). Moreover, the factual allegations "must be enough to raise a right to relief above the

22   speculative level" such that the claim "is plausible on its face." <u>Twombly</u>, 550 U.S. at 556–57.

23         When deciding whether to grant a motion to dismiss, the court generally "may not consider

24   any material beyond the pleadings." <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d

25   1542, 1555 n.19 (9th Cir. 1990). The court must accept as true all "well-pleaded factual

26   allegations." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). The court must also construe the alleged facts

27   in the light most favorable to the plaintiff. <u>Love v. United States</u>, 915 F.2d 1242, 1245 (9th Cir.

28

Case No.: 5:12-CV-02908 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1988). "[M]aterial which is properly submitted as part of the complaint may be considered." Twombly, 550 U.S. at 555. But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Id.

Fraud-based claims are subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b). In that regard, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. Proc. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). To that end, the allegations must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). Averments of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Additionally, "the plaintiff must plead facts explaining why the statement was false when it was made." Smith v. Allstate Ins. Co., 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) (citation omitted); see also In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc) (superseded by statute on other grounds).

**III.    Discussion**

   **A.  Standing**

Defendant argues that Plaintiffs' claims must be dismissed because they do not have standing to sue. As noted, to establish Article III standing, a plaintiff must allege facts showing an "injury-in-fact," causation, and redressability such that the injury will be likely redressed by a decision in the plaintiff's favor. Lujan, 504 U.S. at 561–62. An "injury in fact" requires showing "an invasion of a legally protected interest which is concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. at 560 (citations and internal quotation marks omitted). The UCL and FAL incorporate the Article III standing requirements, but additionally

5

United States District Court
For the Northern District of California

1   require that the plaintiff plead an economic injury. Kwikset Corp. v. Superior Court, 51 Cal. 4th

2   310, 322–23 (2011); see also TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 825 n.1 (9th

3   Cir. 2011) ("Plaintiffs filing an unfair competition suit must prove a pecuniary injury . . . and

4   'immediate' causation. . . . Neither is required for Article III standing." (internal citations

5   omitted)). Under the UCL and FAL, a plaintiff suffers an injury-in-fact when he or she has "(1)

6   expended money due to the defendants' acts of unfair competition; (2) lost money or property; or

7   (3) been denied money to which he or she has a cognizable claim." Chacanaca v. Quaker Oats Co.,

8   752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010). To satisfy the injury-in-fact requirement for unfair

9   competition claims, "courts in California require that plaintiffs demonstrate the purchase of

10  products as a result of deceptive advertising." Id.

11          In support of their claim of standing, Plaintiffs assert that they would not have purchased

12  the products at issue had the products been properly labeled in accordance with the California

13  labeling requirements or had they known the truth about these products. Plaintiffs' theory of injury,

14  therefore, is an economic harm which they allege was caused by the unlawful labeling of the

15  products.

16          Economic harm based on the "benefit of the bargain" theory where a plaintiff would not

17  otherwise have purchased a product but for a misrepresentation has been recognized as a viable

18  basis for standing. See, e.g., Chavez v. Blue Sky Natural Beverage Co., 340 Fed. App'x 359, 360–

19  61 (9th Cir. 2009) (finding a sufficient pleading of injury-in-fact where a plaintiff alleged that he

20  would not have paid for allegedly mislabeled products had he known the truth about the products'

21  geographic origins); Khasin v. Hershey, No. 12-CV-01862 EJD, 2012 WL 5471153, at *6 (N.D.

22  Cal. Nov. 9, 2012) (finding sufficient standing where a plaintiff alleged that he had "lost money or

23  property when he purchased the [food] products in question because he did not receive the full

24  value of those products as advertised and labeled due to the alleged misrepresentation"); see also

25  Jones v. ConAgra Foods, Inc., -- F. Supp. 2d --, No. C 12-01633 CRB, 2012 WL 6569393, at *9–

26  10 (N.D. Cal. Dec. 17, 2012); Colucci v. ZonePerfect Nutrition Co., No. 12-2907-SC, 2012 WL

27  6737800, *3–5 (N.D. Cal. Dec. 28, 2012); Chacanaca, 752 F. Supp. 2d at 1125; Carrea v. Dreyer's

28

Case No.: 5:12-CV-02908 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

1    Grand Ice Cream, Inc., 2011 WL 159381, at *2-3 (N.D. Cal. Jan. 10, 2011). Because Plaintiff

2    Liddle sufficiently makes such allegations, she has met the Article III and statutory standing

3    requirement on her claims.

4         Plaintiff Thomas's argument for standing, however, is belied by assertions in the Amended

5    Complaint. Thomas' causes of action apparently involve her purchase of Kirkland Signature Kettle

6    Chips containing representations of "No Trans Fat" or "0 grams trans fat" on the labeling.

7    However, she fails to sufficiently allege that these representations were untruthful or misleading,

8    which would be required for standing in this situation. See Kwikset 51 Cal.4th at 326–27. Plaintiff

9    Thomas does not allege that the product in question actually contained any amount of trans fat,

10   which would be contrary to the assertions on the label. Because she has not asserted that she

11   received a product different from the one as labeled, she has not met the injury-in-fact requirement

12   for standing. See Delacruz v. Cytosport, No. C 11-3532 CW, 2012 WL 2563857, at *8 (N.D. Cal.

13   June 28, 2012) (dismissing a similar claim based on a "0g Trans Fat" labeling because Plaintiff

14   "does not claim that the statement misrepresents the amount of trans fat in the [product]" and

15   therefore the statement "does not amount to a false statement or misrepresentation and, thus, is not

16   an actionable claim"). Moreover, the causation prong of standing is missing from Thomas'

17   allegation in that she admits to having "read the labels on the [Kettle Chips] . . . before purchasing

18   them." See Am. Compl. ¶ 166. Therefore, she was aware of the trans fat content of the chips—

19   which was 0 grams, confirming the "no trans fat" claim on the label—as well as the content of

20   other types of fat (e.g. saturated fat, polyunsaturated fat, monounsaturated fat), all of which was

21   clearly stated on the labeling of the product she purchased. See Am. Compl. Ex. 1. For these

22   reasons, Plaintiff Thomas' claims will be dismissed for lack of standing. See Chacanaca, 752

23   F. Supp. 2d at 1125 ("[C]ourts in California require that plaintiffs demonstrate the purchase of

24   products as a result of deceptive advertising.").

25

26

27

28

Case No.: 5:12-CV-02908 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.  Warranty Claims**

Defendant moves to dismiss Plaintiffs' breach of warranty claims brought under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 et seq., and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. Plaintiffs oppose this by offering the unsupported iteration that they have "alleged sufficient facts to maintain claims under [these Acts]." Pl.'s Opp'n to Def.'s Mot. to Dismiss 24–25.

The Song-Beverly Act provides a right of action for buyers of consumer goods for express or implied warranty violations. Cal. Civ. Code § 1794. The Act defines "consumer goods" as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for . . . consumables," id. at § 1791(a) (emphasis added), and defines "consumables" as "any product that is intended for consumption by individuals, or use by individuals for purposes of personal care or in the performance of services ordinarily rendered within the household, and that usually is consumed or expended in the course of consumption or use," Id. at 1791(d). The products at issue fall under this definition of "consumables." As such, and in light of the fact that Plaintiffs do not attempt to argue to the contrary, Plaintiffs' claim predicated upon the Song-Beverly Act is dismissed without leave to amend.

The Magnuson-Moss Warranty Act creates a civil cause of action for consumers to enforce the terms of written warranties. 15 U.S.C. § 2310(d). In the Amended Complaint, Plaintiffs allege that the labeling on the products in question constitute express warranties. See Am. Compl. ¶¶ 265–67. On the contrary, food labels, like the ones at issue, do not constitute warranties against a product defect. See Astiana v. Dreyer's Grand Ice Cream, Inc., No. C-11-2910 EMC, C-11-3164 EMC, 2012 WL 2990766 at *3 (N.D. Cal. July 20, 2012); ConAgra Foods, Inc., 2012 WL 6569393, *12-13. They are "product descriptions rather than promises that [a food or beverage product] is defect-free, or guarantees of specific performance levels." Hairston v. S. Beach Beverage Co., No. CV 12-1429-JFW, 2012 WL 1893818, at *6 (C.D. Cal. May 18, 2012) (internal quotation marks omitted). As such, and in light of the fact that that Plaintiffs do not attempt to

8

argue otherwise, Plaintiffs' claim predicated upon the Magnuson-Moss Warranty Act is dismissed without leave to amend.

### C.  Sufficiency of the Pleadings

The Court now turns to whether the remaining claims are sufficient, in light of the pleadings standards set forth in the Federal Rules of Civil Procedure, to survive Defendant's Rule 12(b)(6) Motion. As an initial matter, the Court notes that the heightened Rule 9 pleading standard applies to claims for false or deceptive advertising brought pursuant to the UCL, FAL, or CLRA. Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009); see also Herrington v. Johnson & Johnson Consumer Cos., Inc., No. C 09-1597 CW, 2010 WL 3448531, at *7 (N.D. Cal. Sept. 1, 2010) (subjecting UCL, FAL, and CLRA claims which "sound in fraud" to the heightened Rule 9 pleading standards). Because Plaintiffs' remaining claims involve allegations of fraudulent conduct, deception or misrepresentation, the Rule 9 pleading standard applies to the Amended Complaint. See ConAgra Foods, Inc., No. C 12-01633 CRB, 2012 WL 6569393, at *10 (applying the heightened Rule 9 pleading standard to the complaint in a similar suit); Colucci, No. 12-2907-SC, 2012 WL 6737800, *8–9 (same). As such, Plaintiffs are required to aver with particularity the specific circumstances surrounding the alleged mislabeling, which give rise to their claims. Plaintiffs must state with clarity the "who, what, when, where, and how" of the fraudulent conduct, Vess, 317 F.3d at 1106, and provide an unambiguous account of the "time, place, and specific content of the false representations," Swartz, 476 F.3d at 764.

The Court finds that the allegations of the remaining claims do not provide a clear and unambiguous account of the allegedly fraudulent, deceptive, or misrepresentative statements with the specificity and particularity required by Rule 9. The Amended Complaint fails to unambiguously specify the particular products that have violated particular labeling requirements, the allegedly unlawful representations that were on which products, and the particular statements Plaintiffs allegedly relied on when making their purchases. There are several instances of this in the Amended Complaint, as explained herein.

Case No.: 5:12-CV-02908 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1      First, Plaintiffs use the term "Misbranded Food Products" throughout the Amended

2  Complaint, alleging, as but one example, that the "Misbranded Food Products are misbranded

3  under [California law]," Am. Compl. ¶ 156. In the Amended Complaint's introduction, Plaintiffs

4  define this term as follows:

5          In order to remedy the harm arising from Defendant's illegal conduct, which has
          resulted in unjust profits, Plaintiffs bring this action on behalf of a national class of
6          consumers, and alternatively, a California subclass of consumers who, within the
          last four years, purchased Kirkland Signature Cashew Clusters; Kirkland Signature
7          Kettle Chips; Kirkland Signature Whole Dried Blueberries; Kirkland Signature
          Newman's Own 100% Grape Juice; Kirkland Signature Organic Chocolate
8          Reduced Fat Milk; Kirkland Bolthouse Farms Organic 100 % Carrot Juice;
          Kirkland Signature Real Sliced Fruit; Kirkland Signature Nature's Path Organic
9          Ancient Grains Granola; or Kirkland Canola Oil Cooking Spray, or food products
          distributed or sold by Defendant that were 1) labeled with the ingredient
10         "evaporated cane juice;" 2) labeled or advertised as having no preservatives despite
          containing preservatives; 3) labeled or advertised with a nutrient content claim
11         despite containing a disqualifying amount of fat, saturated fat, sodium or cholesterol
          exceeding the levels listed in 21 C.F.R. § 101.13(h); 4) labeled or advertised with a
12         defined nutrient content term listed in 21 C.F.R. § 101.54, but failing to satisfy the
          requirements for the use of that term; 5) labeled or advertised as healthy despite
13         containing disqualifying nutrient levels exceeding the levels listed in 21 C.F.R. §
          101.65; 6) labeled or advertised as having "0 grams Trans Fat" but which contained
14         more than 13 grams of fat per 50 grams; 7) labeled or advertised as healthy despite
          containing disqualifying nutrient levels; 8) labeled or advertised as having "no
15         sugar added" but failing to meet the regulatory criteria contained in 21 C.F.R. §
          101.60 for that claim; or 9) labeled or advertised with an unauthorized health claim
16         (referred to herein as "Misbranded Food Products").

17

18

19  Am. Compl. 1–2 (emphasis added). Rather than consisting of finite and particular products, this

20  term purports to encapsulate a general, non-particularized class of food products. While the above-

21  quoted sentence does refer to specific and particular food products produced by Defendant (e.g.

22  Kirkland Signature Cashew Clusters, Kirkland Signature Kettle Chips, etc.), the sentence states that

23  the term "Misbranded Food Products" also refers to any and all "food products distributed or sold by

24  be Defendant" that contain the allegedly unlawful labeling language. Therefore, the definition of

25  "Misbranded Food Products," which is used throughout the Amended Complaint, does not solely

26  and entirely refer to specific and particular products. The use of this general definition is

27  insufficient to state a cause of action and is ultimately fatal to the Amended Complaint.

28

Case No.: 5:12-CV-02908 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

Second, when attempting to explicate the bases of their claims, Plaintiffs do not clearly and unambiguously state which products contain which allegedly unlawful or misleading labeling claims. Section C of the Amended Complaint is titled "Defendant's Food Products are Misbranded" and contains ten subsections, which attempt to explain the types of representations on the food packaging that are allegedly in violation of California and federal labeling regulations. However, in these subsections, Plaintiffs fail to clearly match particular food products to particular claims that allegedly amount to such violations. Plaintiffs only offer generalized terms, without specifically asserting the particular products that contained the allegedly unlawful representations.

For example, subsection C.iv of the Amended Complaint—titled "Defendant Makes Unlawful Health Claims"—brings forth allegations that "Defendant has violated identical California and federal law by making numerous unapproved health claims about their products." Am. Compl. ¶ 70. However, this subsection fails to identify the particular products that contain the allegedly unlawful health claims and fails to assert the precise language on the product packaging which constitutes such allegedly unlawful claims. To illustrate, ¶ 77 of the Amended Complaint asserts the following:

> Defendant has violated the provisions of § 21 C.F.R. §101.14, 21 C.F.R. §101.65, 21 C.F.R. §101.76, 21 U.S.C. § 321(g)(1)(D) and 21 U.S.C. § 352(f)(1) by including certain claims on their product labeling. Despite being aware of the criteria and restrictions that pertain to "healthy" claims, Defendant makes numerous unlawful "healthy" claims about their Misbranded Food Products and their components. Defendant indicates that these products and their ingredients are "healthy". Defendant does this in violation of 21 C.F.R. §101.65 which has been adopted by California and which precludes the use of these terms about Defendant's products <u>such as</u> the Kirkland Signature Cashew Clusters purchased by Plaintiffs which have disqualifying levels of unhealthy nutrients like fat or the Kirkland Signature Real Fruit Slices which fail to meet the minimum nutritional levels for a healthy claim.

Am. Compl. ¶ 17 (emphasis added). As noted, the term "Misbranded Food Products" itself is ambiguous and does not refer to specific products; thus the allegation that "Misbranded Food Products" contain unlawful misrepresentations is also too ambiguous to meet the Rule 9 pleading standard. While Plaintiffs do refer to specific products (e.g., Kirkland Cashew Clusters), the use of the term "such as" indicates that these references are only used as an example of one of the

Case No.: 5:12-CV-02908 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

apparently many products that allegedly contain such unlawful "healthy" misrepresentations. Moreover, Plaintiffs fail to clearly and unambiguously state the precise language on the product labeling which constitutes the allegedly unlawful misrepresentations, and how Plaintiffs were allegedly deceived by those particular misrepresentations. Even if Plaintiffs purport to allege that only the Kirkland Signature Cashew Clusters or Kirkland Signature Real Fruit Slices are the only products that contain the "unlawful health claims," the placement of the non-definite terms "Misbranded Food Products" and "Defendant's products" in the same context creates an ambiguity such that Defendant—or the Court, for that matter—would have to draw its own inferences to determine the products that are subject to the allegations of containing "unlawful health" representations.

Third, when stating their claims of mislabeling and violations of California and federal law, Plaintiffs do not refer solely to specific statements on particular products. Subsection D of the Amended Complaint—titled "Defendant Has Violated California Law"—contains a list of generalized allegations that "Defendant's products" or "Defendant's Misbranded Food Products" are mislabeled in violation of California law. See Am. Compl. ¶¶ 152–63. While these statements do include specific sections of the California Health & Safety Code, they do not state specifically which products contain labeling in violation of those code sections. As an example, ¶ 156 of the Amended Complaint states the following: "Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110670 because their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted thereto." As noted, the term "Misbranded Food Products" is a generalized, indefinite term referring to at least nine of Defendant's food products. Therefore, these sections of the Amended Complaint do not state with certainty and clarity the particular products that are in violation of § 110670.

Fourth, it is unclear which specific and particular products Plaintiffs purchased. Section E of the Amended Complaint—titled "Plaintiffs Purchased Defendant's Misbranded Food Products"—states that "Plaintiffs purchased Defendant's Misbranded Food Products on occasions

United States District Court
For the Northern District of California

1   during the Class Period." Am. Compl. ¶ 165. As noted, the term "Misbranded Food Products" is a

2   generalized term that does not refer to specific and particular food products let alone a specific

3   number of food products. Therefore, the Amended Complaint does not clearly and unambiguously

4   state which particular food products were purchased by which particular Plaintiff. While ¶ 14 of the

5   Amended Complaint does suggest that Plaintiffs did purchase specific products, see Am. Compl.

6   ¶ 14 ("Attached hereto as Exhibit 1 are copies of photographs of package labels on products

7   purchased by Plaintiff Karen Thomas. Attached hereto as Exhibit 2–9 are products purchased by

8   Plaintiff Lisa Liddle."), this seeming clarity is obfuscated by the Section E, which speaks in vague

9   and generalized terms about Plaintiffs' purchases and suggests that Plaintiffs purchased more than

10  just those products listed in ¶ 14 and the Exhibits.

11         At the hearing on the present Motion, Plaintiffs' counsel engaged in dialogue with the

12  Court about Plaintiffs' claims vis-à-vis particular products. While this was helpful for the Court to

13  frame Plaintiffs' arguments, such specificity—which products Plaintiffs alleged to have purchased,

14  which parts of the labeling they have read, how they relied on the statements, which language on

15  the labeling constitute the misrepresentations, which statements were on the labeling of which

16  products, etc.—is nevertheless absent from the Amended Complaint. While the Amended

17  Complaint contains much detail about the California and federal labeling laws and regulations that

18  are alleged to have been violated by Defendant, it fails to state with the necessary clarity which

19  products violated which provisions of law. In its lacking specificity and precision, the Amended

20  Complaint would require Defendant and the Court to draw their own conclusions and inferences

21  about which products match up with which allegations of unlawful labeling. As such, the Court

22  concludes that the remaining claims are not sufficiently pled to meet the Rule 9 pleading standard

23  so as to survive Defendant's Motion to Dismiss.

24

25  **IV.    Conclusion and Order**

26         For the foregoing reasons Defendant's Motion to Dismiss is GRANTED. The Court has

27  concluded that Plaintiffs' breach of warranty claims of violation of the Song-Beverly Act (count 8)

28

13

Case No.: 5:12-CV-02908 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

and Magnuson-Moss Act (count 9) will be DISMISSED WITH PREJUDICE. The remainder of Plaintiff Thomas' claims will be DISMISSED WITHOUT PREJUDICE for lack of standing. The remainder of Plaintiff Liddle's claims will be DISMISSED WITHOUT PREJUDICE.

If Plaintiffs wish to file an amended complaint, the Court orders that it be pleaded in compliance with the pleading standards of Rules 8 and 9 and be filed within 15 days of the date of this Order.

Because the Complaint is presently dismissed in its entirety, the court declines to set a case management schedule at this time. However, the court will address scheduling issues as raised by the parties should it become necessary.

**IT IS SO ORDERED.**

Dated: April 9, 2013



EDWARD J. DAVILA
United States District Judge

14

Case No.: 5:12-CV-02908 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California