Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com

*Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KAREN THOMAS and LISA LIDDLE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>                    Defendant. | Case No.  5:12-cv-02908 EJD<br><br>**SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT FOR DAMAGES, EQUITABLE AND INJUNCTIVE RELIEF**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs, Karen Thomas and Lisa Liddle, ("Plaintiffs") through their undersigned

attorneys, bring this lawsuit against Defendant Costco Wholesale Corporation ("Costco" or

"Defendant") as to their own acts upon personal knowledge, and as to all other matters upon

information and belief.

**DEFINITIONS**

1.      "Class Period" is June 5, 2008 to the present.

2.      "Purchased Products" are the products listed below (2a-2i) that were purchased by

Plaintiffs during the Class Period.  Plaintiff Thomas purchased 2a.  Plaintiff Liddle purchased 2b-

2i.  Pictures of the Plaintiffs' Purchased Products are attached as Exhibits 1-9 and specific

descriptions of the labels are included below.

a.   Kirkland Signature Kettle Brand Krinkle Cut Potato Chips (Sea Salt) (32 oz bag);

b.   Kirkland Signature Whole Dried Blueberries;

c.   Kirkland Signature Cashew Clusters with Almonds and Pumpkin Seeds (32 oz);

d.   Kirkland Signature Organic Chocolate Reduced Fat Milk (24-8.25 oz cartons);

e.   Kirkland Signature Canola Oil Cooking Spray;

f.   Kirkland Signature Newman's Own 100% Grape Juice;

g.   Kirkland Signature Real Sliced Fruit – Fuji Apple, Strawberry Banana, Fuji Apple with Cinnamon (20 single serve pouches)

h.   Kirkland Signature Boathouse Farms Organic 100% Carrot Juice (32 oz); and

i.   Kirkland Signature Ancient Grains Granola with Almonds (2-17.6 oz).

## SUMMARY OF THE CASE

3.      Plaintiffs' case has two distinct facets.  First, the "UCL unlawful" part. Plaintiffs' first cause of action is brought pursuant to the unlawful prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL").  Plaintiffs allege that Defendant packages and labels the Purchased Products in violation of California's Sherman Law which adopts, incorporates, and is identical to the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA").  These violations (which do not require a finding that the labels are "misleading") render the Purchased Products "misbranded" which is no small thing.  Under California law, a food product that is misbranded cannot legally be manufactured, advertised, distributed, held or sold.  Misbranded products cannot be legally sold, possessed, have no economic value, and are legally worthless.  Indeed, the sale or possession of misbranded food is a criminal act in California.  The sale of such products is illegal under federal law and can result in the seizure of misbranded products and the imprisonment of those involved.  This "misbranding" – standing alone without any allegations of deception by Defendant or review of or reliance on the labels by Plaintiffs – give rise to Plaintiffs' first cause of action under the UCL.  To state a claim under the unlawful prong, Plaintiffs need only allege that they would not have purchased the product had they known it was misbranded because they would have a product that is illegal to own or possess.

4.     Under California law, which is identical to federal law, Defendant's products listed below are unlawful because they are misbranded due to violations of the Sherman Law, as alleged herein:

| Purchased Product | Relevant Label Language | Sherman Law Violation (directly or through incorporation of FDCA) |
|---|---|---|
| Kirkland Signature Kettle Brand Krinkle Cut Potato Chips (Sea Salt) | "No Trans Fat" | 21 C.F.R. § 101.13<br>21 C.F.R. § 1.21<br>Cal. Health & Safety Code § 110100 |
| Kirkland Signature Whole Dried Blueberries | "Naturally Rich in Antioxidants" | 21 C.F.R. § 101.13<br>21 C.F.R. § 101.54<br>Cal. Health & Safety Code § 110100 |
| Kirkland Signature Cashew Clusters with Almonds and Pumpkin Seeds | "Good Source of Fiber"<br>"Good Source of Protein"<br>"contain oleic acid"<br>"promotes good cardiovascular health"<br>"…being healthy too" | 21 C.F.R. § 101.13<br>21 C.F.R. § 101.54<br>Cal. Health & Safety Code § 110100<br>21 C.F.R. § 101.14<br>21 C.F.R. § 101.65<br>21 C.F.R. § 101.76<br>21 U.S.C. § 321(g)<br>21 U.S.C. § 352(f) |
| Kirkland Signature Organic Chocolate Reduced Fat Milk | "evaporated cane juice" | 21 C.F.R. § 101.4<br>21 C.F.R. § 102.5<br>21 C.F.R. § 343(a)<br>21 C.F.R. § 101.4<br>21 C.F.R. § 102.5<br>Cal. Health & Safety Code § 110725<br>Cal. Health & Safety Code § 110100 |
| Kirkland Signature Canola Oil Cooking Spray | "PROPELLANT" | 21 C.F.R. § 101.4<br>21 C.F.R. § 102.5<br>Cal. Health & Safety Code § 110725<br>Cal. Health & Safety Code § 110100 |
| Kirkland Signature Newman's Own 100% Grape Juice | "Excellent Source of Antioxidants" | 21 C.F.R. § 101.13<br>21 C.F.R. § 101.54<br>Cal. Health & Safety Code § 110100 |
| Kirkland Signature Real Sliced Fruit – Fuji Apple, Strawberry Banana, Fuji Apple with Cinnamon | "No Sugar Added" | 21 C.F.R. § 101.60<br>Cal. Health & Safety Code § 110100 |
| Kirkland Signature Boathouse Farms Organic 100% Carrot Juice | "No Sugar Added" | 21 C.F.R. § 101.60<br>Cal. Health & Safety Code § 110100 |
| Kirkland Signature Ancient | "Preservative Free" | Cal. Health & Safety Code § |

| Grains Granola with Almonds | | 110740<br>21 C.F.R. §101.22<br>Cal. Health & Safety Code § 110100 |
|---|---|---|

5.      Defendant also violated the Sherman Law provisions listed in paragraphs 202-217 for manufacturing, offer to selling, deliver, etc. misbranded food.

6.      Second, the "fraudulent" part. Plaintiffs allege that the illegal statements contained on the labels of the Purchased Products – aside from being unlawfully misbranded under the Sherman Law – are also misleading, deceptive, unfair and fraudulent.  Plaintiffs describe these labels and how they are misleading.  Plaintiffs allege that prior to purchase they reviewed the illegal statements on the labels on the Purchased Products, reasonably relied in substantial part on the unlawful label statements, and were thereby deceived, in deciding to purchase these products. Had Plaintiffs known that these food products were misbranded there would have been no purchases.

7.      All of the Purchased Products have labels that are (i) unlawful and misbranded under the Sherman Law and (ii) misleading and deceptive.  Plaintiffs did not know, and had no reason to know, that the Defendant's Purchased Products were misbranded under the Sherman Law and bore food labeling claims that failed to meet the requirements to make those food labeling claims. Similarly, Plaintiffs did not know, and had no reason to know, that the labels on Defendant's Purchased Products were false and misleading.

**BACKGROUND**

8.      Every day, millions of Americans purchase and consume packaged foods. Identical federal and California laws require truthful, accurate information on the labels of packaged foods. This case is about a company that flouts those laws. The law is clear: misbranded food cannot legally be manufactured, held, advertised, distributed or sold. Misbranded food has no economic value and is worthless as a matter of law, and purchasers of misbranded food are entitled to a refund of their purchase price.

9.      Costco ("Defendant") is a retailer of natural and organic foods that has sales locations throughout the United States, UK, Canada, Mexico, Taiwan, South Korea, Japan and

Australia.

10.     Defendant has implemented a campaign to label its products, including the Purchased Products, as healthy and associated with wellness.

11.     Defendant recognizes that health and wellness claims drive food sales, and actively promotes the purported health benefits of its products, notwithstanding the fact that these promotions violate California and federal law.

12.     If a manufacturer is going to make a claim on a food label, they must not violate certain California and ensure that consumers.  As described more fully below, Defendant has made, and continues to make, unlawful labeling claims in violation of federal and California laws that govern the types of representations that can be made on food labels.  Defendant's product labels violate California law and therefore are misbranded.

13.     These California food labeling laws recognize that reasonable consumers are likely to choose products claiming to have a health or nutritional benefit over otherwise similar food products that do not claim such benefits.  More importantly, these laws recognize that the failure to disclose the presence of risk-increasing nutrients is deceptive because it conveys to consumers the net impression that a food makes only positive contributions to a diet, or does not contain any nutrients at levels that raise the risk of diet-related disease or health-related condition.

14.     Plaintiffs' claims are brought under California statutes and for violations of the Sherman Law.  Under California law, which is identical to federal law, Defendant's products listed below are unlawful and also misleading in the following manner:

> A.     Making unlawful and misleading nutrient content claims or failing to meet the minimum nutritional requirements that are legally required for the nutrient content claims that are being made;
>
> B.     Making unlawful and misleading antioxidant claims that fail to meet the minimum nutritional requirements that are legally required for the antioxidant claims that are being made;
>
> C.     Making unlawful and misleading "no sugar added" claims;
>
> D.     Making unlawful and unapproved health claims that are prohibited by law;

E.   Making unlawful and misleading "no trans fat" claims;

F.   Labeling certain Purchased Products with evaporated cane juice;

G.   Failing to use the common or usual name of ingredients required by law or to list ingredients in descending order by weight as required by law thus concealing the presence of undisclosed chemicals and petrochemicals such as Propane, Propane 2-methyl (isobutane) and Butane that comprise a significant percentage of the product and conveying the false impression that chemicals and other nonorganic ingredients comprise smaller percentages of the products than they actually do;

H.   Making unlawful and false claims that its products are "Preservative Free" and by failing to disclose on its purchased products' labels the presence of     preservatives in those products as required by California law; and

I.   Using misleading and unlawful containers that are slack filled.

15.   These practices are not only illegal but they mislead consumers and deprive them of the information they require to make informed purchasing decisions. Thus, for example, a mother who reads labels because she wants to purchase all natural and healthy food, and does not wish to feed her child unhealthy foods or highly processed foods, would be misled by Defendant's practices and labeling.

16.   Similarly, California and federal laws have placed numerous requirements on food companies that are designed to ensure that the claims that companies make about their products to consumers are truthful, accurate and backed by acceptable forms of scientific proof. When companies such as Defendant make false and unlawful nutrient content and health-related and other labeling claims that are prohibited by regulation, consumers such as Plaintiffs are misled.

17.   Identical California and federal laws regulate the content of labels on packaged food.  The requirements of the federal FDCA were adopted by the California legislature in the Sherman Law.  Under both the Sherman Law and FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling. Cal. Health & Safety Law 110660; 21 U.S.C. § 343(a).

18.   Under the FDCA, the term "false" has its usual meaning of "untruthful," while the

term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.  If any one representation in the labeling is misleading, the entire food is misbranded, and no other statement in the labeling can cure a misleading statement.  "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove that anyone was actually misled.

19.     In promoting the health benefits of its Purchased Products, Defendant has claimed to understand the importance of communicating responsibly about its products.  Nevertheless, Defendant has made, and continues to make, false and deceptive claims about its Purchased Products in violation of identical federal and California laws that govern the types of representations that can be made on food labels.

20.     Defendant also has made, and continues to make, unlawful claims on food labels of its Purchased Products that are prohibited by federal and California law and which render these products misbranded. Under federal and California law, Defendant's Purchased Products cannot legally be manufactured, advertised, distributed, held or sold.

21.     Defendant's violations of law are the illegal advertising, marketing, distribution, delivery and sale of Defendant's misbranded Purchased Products to consumers in California and throughout the United States.

## PARTIES

22.     Plaintiff Karen Thomas is a resident of Los Gatos, California who purchased Defendant's Kirkland Signature Kettle Brand Krinkle Cut Potato Chips (Sea Salt) in California during the Class Period.  Attached hereto are copies of photographs of the package label on the product purchased by Plaintiff Karen Thomas (Exhibit 1).  Plaintiff Thomas purchased more than $25.00 of Kirkland Signature Kettle Brand Krinkle Cut Potato Chips (Sea Salt) during the Class Period.

23.     Plaintiff Lisa Liddle is a resident of Los Gatos, California who purchased Defendant's Kirkland Signature Whole Dried Blueberries (Exhibit 2), Kirkland Signature Cashew

1    Clusters with Almonds and Pumpkin Seeds (32 oz) (Exhibit 3), Kirkland Signature Organic

2    Chocolate Reduced Fat Milk (24-8.25 oz cartons) (Exhibit 4), Kirkland Signature Canola Oil

3    Cooking Spray (Exhibit 5), Kirkland Signature Newman's Own 100% Grape Juice (Exhibit 6),

4    and Kirkland Signature Real Sliced Fruit – Fuji Apple, Strawberry Banana, Fuji Apple with

5    Cinnamon (20 single serve pouches) (Exhibit 7) Kirkland Signature Boathouse Farms Organic

6    100% Carrot Juice (Exhibit 8) and Kirkland Signature Ancient Grains Granola with Almonds

7    (Exhibit 9) in California during the Class Period.  Exhibits 2-9 are copies of photographs of

8    product labels on the products purchased by Plaintiff Lisa Liddle.   Plaintiff Liddle purchased

9    more than $25.00 of these products during the Class Period.

10      24.     Defendant Costco is a Washington corporation doing business in the State of

11    California and throughout the United States.

12                    **JURISDICTION AND VENUE**

13      25.     This Court has original jurisdiction over this action pursuant to 28 U.S.C.

14    § 1332(d) because this is a class action in which:  (1) there are over 100 members in the proposed

15    class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the

16    claims of the proposed class members exceed $5,000,000 in the aggregate.

17      26.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to

18    28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is

19    between citizens of different states.

20      27.     The Court has personal jurisdiction over Defendant because a substantial portion

21    of the wrongdoing alleged in this Second Amended Complaint occurred in California, Defendant

22    is authorized to do business in California, Defendant has sufficient minimum contacts with

23    California, and Defendant otherwise intentionally avails itself of the markets in California

24    through the promotion, marketing and sale of merchandise, sufficient to render the exercise of

25    jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

26      28.     Because a substantial part of the events or omissions giving rise to these claims

27    occurred in this District and because the Court has personal jurisdiction over Defendant, venue is

28    proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FACTUAL ALLEGATIONS**

A.  **Identical California and Federal Laws Regulate Food Labeling**

29.  Food manufacturers are required to comply with identical federal and state laws and regulations that govern the labeling of food products.  First and foremost among these is the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

30.  Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."  California Health & Safety Code § 110100.

31.  In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations.  For example, food products are misbranded under California Health & Safety Code § 110660 if their labeling is false and misleading in one or more particulars; are misbranded under California Health & Safety Code § 110665 if their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110670 if their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110705 if words, statements and other information required by the Sherman Law to appear on their labeling are either missing or not sufficiently conspicuous; are misbranded under California Health & Safety Code § 110735 if they are represented as having special dietary uses but fail to bear labeling that adequately informs consumers of their value for that use; and are misbranded under California Health & Safety Code § 110740 if they contain artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose that fact on their labeling.

B.  **FDA Enforcement History**

32.  In recent years the FDA has become increasingly concerned that food

manufacturers have been disregarding food labeling regulations. To address this concern, the FDA informed the food industry of its concerns and placed the industry on notice that food labeling compliance was an area of enforcement priority.

33.     In October 2009, the FDA issued its 2009 *Guidance for Industry:  Letter regarding Point of Purchase Food Labeling* ("2009 FOP Guidance") to the food industry that stated in part:

> FDA's research has found that with FOP labeling, people are less likely to check the Nutrition Facts label on the information panel of foods (usually, the back or side of the package). It is thus essential that both the criteria and symbols used in front-of-package and shelf-labeling systems are nutritionally sound, well-designed to help consumers make informed and healthy food choices, and not be false or misleading. The agency is currently analyzing FOP labels that appear to be misleading.  The agency is also looking for symbols that either expressly or by implication are nutrient content claims. We are assessing the criteria established by food manufacturers for such symbols and comparing them to our regulatory criteria.

> It is important to note that nutrition-related FOP and shelf labeling, while currently voluntary, is subject to the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. Therefore, FOP and shelf labeling that is used in a manner that is false or misleading misbrands the products it accompanies. Similarly, a food that bears FOP or shelf labeling with a nutrient content claim that does not comply with the regulatory criteria for the claim as defined in Title 21 Code of Federal Regulations (CFR) 101.13 and Subpart D of Part 101 is misbranded. We will consider enforcement actions against clear violations of these established labeling requirements. . .

> … Accurate food labeling information can assist consumers in making healthy nutritional choices. FDA intends to monitor and evaluate the various FOP labeling systems and their effect on consumers' food choices and perceptions. FDA recommends that manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA laws and regulations. FDA will proceed with enforcement action against products that bear FOP labeling that are explicit or implied nutrient content claims and that are not consistent with current nutrient content claim requirements. FDA will also proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading.

34.     The 2009 FOP Guidance is attached hereto as Exhibit 8.

35.     Defendant had actual knowledge of the 2009 FOP Guidance.

36.     Although Defendant had actual knowledge of the 2009 FOP Guidance, Defendant did not remove the (i) unlawful and (ii) misleading labels from its Purchased Products.

37. On March 3, 2010, the FDA issued an "*Open Letter to Industry from [FDA Commissioner] Dr. Hamburg*" ("Open Letter"). The Open Letter reiterated the FDA's concern regarding false and misleading labeling by food manufacturers. In pertinent part, the letter stated:

In the early 1990s, the Food and Drug Administration (FDA) and the food industry worked together to create a uniform national system of nutrition labeling, which includes the now-iconic Nutrition Facts panel on most food packages. Our citizens appreciate that effort, and many use this nutrition information to make food choices. Today, ready access to reliable information about the calorie and nutrient content of food is even more important, given the prevalence of obesity and diet-related diseases in the United States. This need is highlighted by the announcement recently by the First Lady of a coordinated national campaign to reduce the incidence of obesity among our citizens, particularly our children.

With that in mind, I have made improving the scientific accuracy and usefulness of food labeling one of my priorities as Commissioner of Food and Drugs. The latest focus in this area, of course, is on information provided on the principal display panel of food packages and commonly referred to as "front-of-pack" labeling. The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections. …

As we move forward in those areas, I must note, however, that there is one area in which more progress is needed. As you will recall, we recently expressed concern, in a "Dear Industry" letter, about the number and variety of label claims that may not help consumers distinguish healthy food choices from less healthy ones and, indeed, may be false or misleading.

At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990. Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.

To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace. While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices. For example:

- Nutrient content claims that FDA has authorized for use on foods for adults are not permitted on foods for children under two. Such claims are highly inappropriate when they appear on food for infants and toddlers because it is well known that the nutritional needs of the very young are different than those of adults.

- Claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat, and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel.

- Products that claim to treat or mitigate disease are considered to be drugs and must meet the regulatory requirements for drugs, including the requirement to prove that the product is safe and effective for its intended use.

- Misleading "healthy" claims continue to appear on foods that do not meet the long- and well-established definition for use of that term.

- Juice products that mislead consumers into believing they consist entirely of a single juice are still on the market. Despite numerous admonitions from FDA over the years, we continue to see juice blends being inaccurately labeled as single-juice products.

These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole. In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products. That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.

I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling. I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

38.     Defendant has continued to mislabel its Purchased Products despite the express admonition not to do so contained in the Open Letter.

**THE PURCHASED PRODUCTS AND THEIR SHERMAN LAW VIOLATIONS**

A.     **"Nutrient Content" Claims**

39.     The following Purchased Products contain a "nutrient content" claim:

Kirkland Signature Dried Blueberries
Kirkland Signature Cashew Clusters with Almonds and Pumpkin Seeds
Kirkland Signature Newman's Own 100% Grape Juice

The specific nutrient content claims will be described below in the sections devoted to the specific product, starting at paragraph 55.

40.     In order to appeal to consumer preferences, Defendant has repeatedly made false and unlawful nutrient content claims about nutrients that either fail to utilize one of the limited defined terms or use one of the defined terms improperly. These nutrient content claims are unlawful because they fail to comply with the nutrient content claim provisions in violation of 21 C.F.R. §§ 101.13 and 101.54, which are incorporated in California's Sherman Law.

41.     Pursuant to Section 403 of the FDCA, a claim that characterizes the level of a nutrient in a food is a "nutrient content claim" that must be made in accordance with the regulations that authorize the use of such claims.  21 U.S.C. § 343(r)(1)(A).  California expressly adopted the requirements of 21 U.S.C. § 343(r) in § 110670 of the Sherman Law.

42.     Nutrient content claims are claims about specific nutrients contained in a product. They are typically made on the front of packaging in a font large enough to be read by the average consumer.  Because these claims are relied upon by consumers when making purchasing decisions, the regulations govern what claims can be made in order to prevent misleading claims.

43.     Section 403(r)(1)(A) of the FDCA governs the use of expressed and implied nutrient content claims on labels of food products that are intended for sale for human consumption.  *See* 21 C.F.R. § 101.13.

44.     21 C.F.R. § 101.13 provides the general requirements for nutrient content claims, which California has expressly adopted.  California Health & Safety Code § 110100.

45.     An "expressed nutrient content claim" is defined as any direct statement about the level (or range) of a nutrient in the food (*e.g.*, "low sodium" or "contains 100 calories"). *See* 21 C.F.R. § 101.13(b)(1).

46.     An "implied nutrient content claim" is defined as any claim that: (i) describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (*e.g.*, "high in oat bran"); or (ii) suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (*e.g.*, "healthy, contains 3 grams (g) of fat").  21 C.F.R. § 101.13(b)(2)(i-ii).

47.     FDA regulations authorize use of a limited number of defined nutrient content claims. In addition to authorizing the use of only a limited set of defined nutrient content terms on food labels, FDA's regulations authorize the use of only certain synonyms for these defined terms. If a nutrient content claim or its synonym is not included in the food labeling regulations it cannot be used on a label.  Only those claims, or their synonyms, that are specifically defined in the regulations may be used.  All other claims are prohibited.  21 C.F.R. § 101.13(b).

48.     Only approved nutrient content claims will be permitted on the food label, and all other nutrient content claims will misbrand a food.  It should thus be clear which type of claims are prohibited and which are permitted. Manufacturers are on notice that the use of an unapproved nutrient content claim is prohibited conduct.  58 F.R. 2302.  In addition, 21 U.S.C. § 343(r)(2) prohibits using unauthorized undefined terms and declares foods that do so to be misbranded.

49.     In order to appeal to consumer preferences, Defendant has repeatedly made unlawful nutrient content claims that its products are a "good source" of nutrients such as fiber, and protein.  These kinds of nutrient content claims are unlawful because they fail to comply with the nutrient content claim provisions in violation of 21 C.F.R. §§ 101.13 and 101.54, which have been incorporated in California's Sherman Law.

50.     The regulations specify absolute and comparative levels at which foods qualify to make these claims for particular nutrients (*e.g.*, low fat . . . more vitamin C) and list synonyms that may be used in lieu of the defined terms.  Certain implied nutrient content claims (*e.g.,* healthy) also are defined.  The daily values (DVs) for nutrients that the FDA has established for nutrition labeling purposes have application for nutrient content claims, as well.  Claims are defined under current regulations for use with nutrients having established DVs; moreover, relative claims are defined in terms of a difference in the percent DV of a nutrient provided by one food as compared to another.  *See. e.g.*, 21 C.F.R. §§ 101.13 and 101.54.

51.     Defendant has repeatedly made unlawful nutrient content claims about fiber, protein and other nutrients that fail to utilize one of the limited defined terms appropriately. These nutrient content claims are unlawful because they fail to comply with the nutrient content

claim provisions in violation of 21 C.F.R. §§ 101.13 and 101.54, which have been incorporated in California's Sherman Law.  They are false because the terms have defined minimum nutritional thresholds so that, for example, a claim that a product contains a nutrient is a claim that the product has at least 10% of the daily value of that nutrient. By using defined terms improperly, Defendant has, in effect, falsely asserted that the products met the minimum nutritional thresholds for the claims in question when they do not.   By using undefined terms, Defendant has, in effect, falsely asserted that its products meet at least the lowest minimum threshold for any nutrient content claim which is 10% of the daily value of the nutrient at issue.  Such a threshold represents the lowest level that a nutrient can be present in a food before it becomes deceptive and misleading to highlight its presence in a nutrient content claim.

52.     The nutrient content claims regulations discussed herein are intended to ensure that consumers are not misled as to the actual or relative levels of nutrients in food products. Defendant has violated these referenced regulations. Therefore, Defendant's Purchased Products listed in paragraph 39 are misbranded as a matter of California and federal law and cannot be sold or held because they have no economic value and are legally worthless.

53.     For these reasons, Defendant's nutrient content claims at issue in this Second Amended Complaint are false and misleading and in violation of 21 C.F.R. §§ 101.13 and 101.54 and identical California law, and the products listed in paragraph 36 are misbranded as a matter of law. Defendant has violated these referenced regulations. Therefore, these three products are misbranded as a matter of federal and California law and cannot be sold or held and thus have no economic value and are legally worthless.

54.     Defendant's claims in this respect are false and misleading and the products are in this respect misbranded under identical federal and California laws. Plaintiff Liddle and members of the Class who purchased these products paid an unwarranted premium for these products.

**Kirkland Signature Dried Blueberries**

55.     The following unlawful and misleading language appears on the label of the Kirkland Signature Dried Blueberries:

*"Naturally Rich in Antioxidants"*

1     56.    Plaintiff Liddle reasonably relied on this label representation in paragraph 55 and

2 based and justified the decision to purchase the product, in substantial part, on this label

3 representation.  Also, Plaintiff reasonably relied on the fact that this product was not misbranded

4 under the Sherman Law and was therefore legal to buy and possess. Plaintiff would not have

5 purchased the product had she known it was illegal to buy and possess the product.

6     57.    Plaintiff Liddle reasonably relied on this label representation when making her

7 purchase decisions and was misled because she erroneously believed the implicit

8 misrepresentation that this product she was purchasing met the minimum nutritional threshold to

9 make such claims. Plaintiff Liddle would not have purchased this product had she known that the

10 product did not in fact satisfy such minimum nutritional requirements with regard to the claimed

11 nutrients. Plaintiff Liddle had other food alternatives that satisfied such standards and Plaintiff

12 Liddle also had cheaper alternatives.  Reasonable consumers would have been misled in the same

13 manner as Plaintiff Liddle.

14     58.    This product is unlawful, misbranded and violates the Sherman Law (through

15 incorporation of 21 C.F.R. § 101.13 and § 101.54) and is misleading and deceptive because the

16 label uses the phrases "Naturally Rich in Antioxidants" despite the fact that that the product does

17 not meet the minimum nutrient level threshold to make such a claim which is 20 percent or more

18 of the RDI (Reference Daily Intake or Recommended Daily Intake) or the DRV (Daily Reference

19 Value) per reference amount customarily consumed.  *See* 21 C.F.R. § 101.54(b).

20 **Kirkland Signature Cashew Clusters with Almonds and Pumpkin Seeds**

21     59.    The following unlawful and misleading language appears on the label of the

22 Kirkland Signature Cashew Clusters with Almonds and Pumpkin Seeds:

23             *"Good Source of Fiber"*

24            *"Good Source of Protein"*

25               *"contain oleic acid"*

26     60.    Plaintiff Liddle reasonably relied on these label representations in paragraph 59

27 and based and justified the decision to purchase the product, in substantial part, on these label

28 representations.  Also, Plaintiff Liddle reasonably relied on the fact that this product was not misbranded

1  under the Sherman Law and was therefore legal to buy and possess. Plaintiff would not have

2  purchased the product had she known it was illegal to buy and possess the product.

3       61.    Plaintiff Liddle reasonably relied on these label representations when making her

4  purchase decisions and was misled because she erroneously believed the implicit

5  misrepresentations that this product she was purchasing met the minimum nutritional threshold to

6  make such claims. Plaintiff Liddle would not have purchased this product had she known that the

7  product did not in fact satisfy such minimum nutritional requirements with regard to the claimed

8  nutrients. Plaintiff Liddle had other food alternatives that satisfied such standards and Plaintiff

9  Liddle also had cheaper alternatives. Reasonable consumers would have been mislead in the

10  same manner as Plaintiff Liddle.

11       62.    This product is unlawful, misbranded and violates the Sherman Law (through

12  incorporation of 21 C.F.R. § 101.13 and § 101.54) and is misleading and deceptive because the

13  phrases "Good Source of Protein" and "Good Source of Fiber" are used despite the fact that that

14  the product does not meet the minimum nutrient level threshold to make such a claim which is 10

15  percent or more of the RDI (Reference Daily Intake or Recommended Daily Intake) or the DRV

16  (Daily Reference Value) per reference amount customarily consumed. *See* 21 C.F.R. § 101.54(c).

17  Similarly, this product claims to "contain" oleic acid despite the fact the nutrient at issue does not

18  have an established daily value and thus cannot serve as the basis for a defined term like

19  "contain" that has a minimum daily value threshold.

20  **Kirkland Signature Newman's Own 100% Grape Juice**

21       63.    The following unlawful and misleading language appears on the label of the

22  Kirkland Signature Newman's Own 100% Grape Juice:

23                                     ***"Excellent Source of Antioxidants"***

24       64.    Plaintiff Liddle reasonably relied on these label representations in paragraph 63

25  and based and justified the decision to purchase the product, in substantial part, on this label

26  representation. Also, Plaintiff Liddle reasonably relied on the fact that this product was not

27  misbranded under the Sherman Law and was therefore legal to buy and possess. Plaintiff would

28  not have purchased the product had she known it was illegal to purchase and possess the product.

65.     Plaintiff Liddle reasonably relied on this label representation when making her purchase decisions and was misled because she erroneously believed the implicit misrepresentation that this product she was purchasing met the minimum nutritional threshold to make such claims. Plaintiff Liddle would not have purchased this product had she known that the product did not in fact satisfy such minimum nutritional requirements with regard to the claimed nutrients. Plaintiff Liddle had other food alternatives that satisfied such standards and Plaintiff Liddle also had cheaper alternatives.  Reasonable consumers would have been misled in the same manner as Plaintiff Liddle.

66.     This product is unlawful, misbranded and violates the Sherman Law (through incorporation of 21 C.F.R. § 101.13 and § 101.54) and is misleading and deceptive because the label uses the phrase "excellent source" of antioxidants (plural) despite the fact that that the product does not meet the minimum nutrient level threshold to make such a claim which is 20 percent or more of the RDI (Reference Daily Intake or Recommended Daily Intake) or the DRV (Daily Reference Value) per reference amount customarily consumed.  *See* 21 C.F.R. § 101.54(b).

**B.     "Antioxidant Nutrient Content" Claims**

67.     The following Purchased Products contain an "antioxidant nutrient content" claim:

> Kirkland Signature Whole Dried Blueberries
> Kirkland Signature Newman's Own 100% Grape Juice

68.     Federal and California regulations regulate antioxidant claims as a particular type of nutrient content claim.  Specifically, 21 C.F.R. § 101.54(g) contains special requirements for nutrient claims that use the term "antioxidant":

(1)     the name of the antioxidant must be disclosed;

(2)     there must be an established Recommended Daily Intake ("RDI") for that antioxidant, and if not, no "antioxidant" claim can be made about it;

(3)     the label claim must include the specific name of the nutrient that is an antioxidant and cannot simply say "antioxidants" (*e.g.*, "high in antioxidant vitamins C and E"),[1] *see* 21 C.F.R. § 101.54(g)(4);

---

[1] Alternatively, when used as part of a nutrient content claim, the term "antioxidant" or "antioxidants" (such as "high in antioxidants") may be linked by a symbol (such as an asterisk) that refers to the same symbol that appears elsewhere on the same panel of a product label followed by the name or names of the nutrients with the recognized antioxidant activity.  If this is

(4)     the nutrient that is the subject of the antioxidant claim must also have recognized antioxidant activity, *i.e.*, there must be scientific evidence that after it is eaten and absorbed from the gastrointestinal tract, the substance participates in physiological, biochemical or cellular processes that inactivate free radicals or prevent free radical-initiated chemical reactions, *see* 21 C.F.R. § 101.54(g)(2);

(5)     the antioxidant nutrient must meet the requirements for nutrient content claims in 21 C.F.R. § 101.54(b), (c), or (e) for "High" claims, "Good Source" claims, and "More" claims, respectively. For example, to use a "High" claim, the food would have to contain 20% or more of the Daily Reference Value ("DRV") or RDI per serving. For a "Good Source" claim, the food would have to contain between 10-19% of the DRV or RDI per serving, *see* 21 C.F.R. § 101.54(g)(3); and

(6)     the antioxidant nutrient claim must also comply with general nutrient content claim requirements such as those contained in 21 C.F.R. § 101.13(h) that prescribe the circumstances in which a nutrient content claim can be made on the label of products high in fat, saturated fat, cholesterol or sodium.

69.     The labeling of Kirkland Signature Whole Dried Blueberries claims that the blueberries are "***naturally rich in antioxidants***." The labeling of Kirkland Signature Newman's Own 100% Grape Juice claims that the juice is an "***excellent source of antioxidants***."

70.     The antioxidant nutrient content claims regulations discussed above are intended to ensure that consumers are not misled as to the actual or relative levels of antioxidants in food products. Defendant has violated these referenced regulations. Therefore, the Kirkland Signature Whole Dried Blueberries and Kirkland Signature Newman's Own 100% Grape Juice are misbranded as a matter of California and federal law and cannot be sold or held because they have no economic value and are legally worthless.

71.     Plaintiff Liddle reasonably relied on these label representations in paragraphs 55, 63 and 69 and based and justified the decision to purchase Kirkland Signature Whole Dried Blueberries and Kirkland Signature Newman's Own 100% Grape Juice, in substantial part, on these label representations. Also, Plaintiff Liddle reasonably relied on the fact that these products were not misbranded under the Sherman Law and were therefore legal to buy and possess. Plaintiff would not have purchased the product had she known it was illegal to purchase and possess the product.

---

done, the list of nutrients must appear in letters of a type size height no smaller than the larger of one half of the type size of the largest nutrient content claim or 1/16 inch.

72.     Plaintiff Liddle reasonably relied on these label representations when making her purchase decisions on Kirkland Signature Whole Dried Blueberries and Kirkland Signature Newman's Own 100% Grape Juice and was misled because when making her purchase decisions she erroneously believed the implicit misrepresentation that the products she was purchasing met the minimum nutritional threshold to make such claims. Plaintiff Liddle would not have purchased these products had she known that the products did not in fact satisfy such minimum nutritional requirements with regard to the claimed nutrients. Plaintiff Liddle had other food alternatives that satisfied such standards and Plaintiffs also had cheaper alternatives.

73.     For these reasons, Defendant's antioxidant claims at issue in this Second Amended Complaint are misleading and in violation of 21 C.F.R. § 101.54 and California law, and the Kirkland Signature Whole Dried Blueberries and Kirkland Signature Newman's Own 100% Grape Juice are misbranded as a matter of law.  Misbranded products cannot be legally manufactured, advertised, distributed, held or sold and have no economic value and are legally worthless. Plaintiff Liddle and members of the class who purchased Kirkland Signature Whole Dried Blueberries and Kirkland Signature Newman's Own 100% Grape Juice paid an unwarranted premium for these products.

74.     These products,  Kirkland Signature Whole Dried Blueberries and Kirkland Signature Newman's Own 100% Grape Juice, are unlawful, misbranded and violate the Sherman Law (through incorporation of 21 C.F.R. § 101.13 and § 101.54) and are misleading and deceptive because (1) because the names of the antioxidants are not disclosed on the product labels; (2) because there are no RDIs for the antioxidants being touted, including flavonoids and polyphenols; (3) because the claimed antioxidant nutrients fail to meet the requirements for nutrient content claims in 21 C.F.R. § 101.54(b), (c), or (e) for "High" claims, "Good Source" claims, and "More" claims, respectively; and (4) because Defendant lacks adequate scientific evidence that the claimed antioxidant nutrients participate in physiological, biochemical, or cellular processes that inactivate free radicals or prevent free radical-initiated chemical reactions after they are eaten and absorbed from the gastrointestinal tract.

C.     **"No Sugar Added" Claims**

75.     The following Purchased Products contain a "no sugar added" claim:

Kirkland Signature Real Sliced Fruit – Fuji Apple, Strawberry Banana, Fuji Apple with Cinnamon (20 single serve pouches)

Kirkland Signature Boathouse Farms Organic 100% Carrot Juice

76.     The following unlawful and misleading language appears on the labels of Defendant's Kirkland Signature Real Sliced Fruit Fuji Apple, Strawberry Banana, Fuji Apple with Cinnamon and Kirkland Signature Boathouse Farms Organic 100% Carrot Juice: ***"No Sugar Added"***

77.     Plaintiff Liddle reasonably relied on this label representation in paragraph 76 and based and justified the decision to purchase the product, in substantial part, on this label representation.  Also, Plaintiff Liddle reasonably relied on the fact that this product was not misbranded under the Sherman Law and was therefore legal to buy and possess.  Plaintiff would not have purchased the product had she known that it was illegal to purchase and possess the product.

78.     Plaintiff Liddle reasonably relied on this label representation when making her purchase decisions and was misled because she erroneously believed the "no sugar added" claim as described below.  Plaintiff Liddle would not have purchased this product had she known the truth about the product.  Plaintiff Liddle had other food alternatives that satisfied such standards and Plaintiff Liddle also had cheaper alternatives.  Reasonable consumers would have been mislead in the same manner as Plaintiff Liddle.

79.     Federal and California law regulate "no sugar added" claims as a particular type of nutrient content claim.  Specifically, 21 C.F.R. § 101.60 contains special requirements for nutrient claims that use the phrase "no sugar added."  Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements of 21 C.F.R. § 101.60 as its own.  California Health & Safety Code § 110100.

80.     Defendant makes this unlawful and misleading claim on its Kirkland Signature Real Sliced Fruit – Fuji Apple, Strawberry Banana, Fuji Apple with Cinnamon and Kirkland

Signature Boathouse Farms Organic 100% Carrot Juice despite the fact that this product fails to meet the regulatory criteria established by California and identical federal law for making such a claim.

81.     21 C.F.R. § 101.60(c)(2) provides in pertinent part, with emphasis added:

(2) The terms "no added sugar," "without added sugar," or "*no sugar added*" may be used only if:

(i) No amount of sugars, as defined in §101.9(c)(6)(ii), or any other ingredient that contains sugars that functionally substitute for added sugars is added during processing or packaging; and

(ii) The product does not contain an ingredient containing added sugars such as jam, jelly, or concentrated fruit juice; and

(iii) The sugars content has not been increased above the amount present in the ingredients by some means such as the use of enzymes, except where the intended functional effect of the process is not to increase the sugars content of a food, and a functionally insignificant increase in sugars results; and

(iv) The food that it resembles and for which it substitutes normally contains added sugars; and

(v) *The product bears a statement that the food is not "low calorie" or "calorie reduced"* (unless the food meets the requirements for a "low" or "reduced calorie" food) *and that directs consumers' attention to the nutrition panel for further information on sugar and calorie content*.

82.     21 C.F.R. § 101.60(b)(2) provides that:

The terms "low-calorie," "few calories," "contains a small amount of calories," "low source of calories," or "low in calories" may be used on the label or in labeling of foods, except meal products as defined in § 101.13(l) and main dish products as defined in § 101.13(m), provided that: (i)(A) The food has a reference amount customarily consumed greater than 30 grams (g) or greater than 2 tablespoons and does not provide more than 40 calories per reference amount customarily consumed; or (B) The food has a reference amount customarily consumed of 30 g or less or 2 tablespoons or less and does not provide more than 40 calories per reference amount customarily consumed and, except for sugar substitutes, per 50 g ….(ii) If a food meets these conditions without the benefit of special processing, alteration, formulation, or reformulation to vary the caloric content, it is labeled to clearly refer to all foods of its type and not merely to the particular brand to which the label attaches (e.g., "celery, a low-calorie food").

83.     This product does not satisfy element (v) of 21 C.F.R. § 101.60(c)(2) and is therefore misbranded under federal and state law.

84.     Notwithstanding the fact that 21 C.F.R. § 101.60(c)(2)(v) bars the use of the term "no sugar added" on foods that are not low-calorie unless they bear an express warning

1    immediately adjacent to each use of the terms that discloses that the food is not "low calorie" or

2    "calorie reduced," Defendant has touted its Kirkland Signature Real Sliced Fruit Fuji Apple,

3    Strawberry Banana, Fuji Apple with Cinnamon and its Kirkland Signature Boathouse Farms

4    Organic 100% Carrot Juice, as having "no sugar added" and chosen to omit the mandated

5    disclosure statements.

6         85.    In doing so, Defendant has ignored the language of 21 C.F.R. § 101.60(c)(1) that

7    states that:

8            Consumers may reasonably be expected to regard terms that represent that the
             food contains no sugars or sweeteners e.g., "sugar free," or "no sugar," as
9            indicating a product which is low in calories or significantly reduced in calories.

10        86.    Because reasonable consumers like Plaintiff Liddle may be expected to regard

11   terms that represent that the food contains "no sugar added" or sweeteners as indicating a product

12   which is low in calories or significantly reduced in calories, consumers are misled when foods

13   that are not low-calorie, like Kirkland Signature Real Sliced Fruit – Fuji Apple, Strawberry

14   Banana, Fuji Apple with Cinnamon and Kirkland Signature Boathouse Farms Organic 100%

15   Carrot Juice, as a matter of law are falsely represented, through the unlawful use of phrases like

16   "no sugar added" that they are not allowed to bear due to their high caloric levels and absence of

17   mandated disclaimer or disclosure statements.

18        87.    Defendant's Kirkland Signature Real Sliced Fruit – Fuji Apple, Strawberry

19   Banana, Fuji Apple with Cinnamon and Kirkland Signature Boathouse Farms Organic 100%

20   Carrot Juice was highly caloric and loaded with sugar.  This product had on a 50 gram basis 175

21   calories which is over 4 times the maximum level allowed.  Moreover, it had 25% more sugar

22   than a Hershey bar.

23        88.    The labeling for this product violates California law.  For these reasons,

24   Defendant's "no sugar added" claim on this product are misleading and in violation of 21 C.F.R.

25   § 101.60(c)(2) and California law, and this product is misbranded as a matter of law.  Misbranded

26   products cannot be legally sold and have no economic value and are legally worthless.

27

28

89.     Defendant is in violation despite numerous enforcement actions and warning letters pertaining to several other companies addressing the type of misleading sugar-related nutrient content claims described herein.

90.     Plaintiff Liddle did not know, and had no reason to know, that this product was misbranded, and bore "no added sugar" nutrient content claims despite failing to meet the requirements to make those nutrient content claims.

91.     This product is misbranded under federal and California law.

92.     Because of this "no sugar added" claim, Plaintiff purchased these products and paid a premium for it.  The "no sugar added" regulations discussed herein are intended to ensure that consumers are not misled as to the actual or relative levels of nutrients in food products. Defendant has violated these referenced regulations.  Therefore, Defendant's Kirkland Signature Real Sliced Fruit – Fuji Apple, Strawberry Banana, Fuji Apple with Cinnamon and Kirkland Signature Boathouse Farms Organic 100% Carrot Juice are misbranded as a matter of federal and California law and cannot be sold or held because it has no economic value and is legally worthless.

**D.      Health Claims**

93.     The following Purchased Products contain a "health" claim:

Kirkland Signature Cashew Clusters with Almonds and Pumpkin Seeds (32 oz).

94.     The following unlawful and misleading language appears on the label of Kirkland Signature Cashew Clusters with Almonds and Pumpkin Seeds:

*"promotes good cardiovascular health"*

*"…being healthy too"*

95.     Plaintiff Liddle reasonably relied on these label representations in paragraph 95 and based and justified the decision to purchase the product, in substantial part, on these label representations.  Also, Plaintiff Liddle reasonably relied on the fact that this product was not misbranded under the Sherman Law and was therefore legal to buy and possess.  Plaintiff would not have purchased the product had she known it was illegal to purchase and possess the product.

96.     Defendant has violated the Sherman Law (through incorporation of § 21 C.F.R. § 101.14, 21 C.F.R. § 101.65, 21 C.F.R. § 101.76, 21 U.S.C. § 321(g)(1)(D) and 21 U.S.C. § 352(f)(1)) by including certain claims on the labeling of Kirkland Signature Cashew Clusters with Almonds and Pumpkin Seeds.   Despite being aware of the criteria and restrictions that pertain to "healthy" claims, Defendant makes unlawful "healthy" claims about their Kirkland Signature Cashew Clusters with Almonds and Pumpkin Seeds. Defendant indicates that these products and their ingredients are "healthy."

97.     Plaintiff Liddle reasonably relied on these label representations when making her purchase decisions and was misled because she erroneously believed the two phrase ("promotes good cardiovascular health" and "being healthy too") label as described below.  Plaintiff Liddle would not have purchased this product had she known the truth about the product.  Plaintiff Liddle had other food alternatives that satisfied such standards and Plaintiff Liddle also had cheaper alternatives.  Reasonable consumers would have been mislead in the same manner as Plaintiff Liddle.

98.     Defendant has violated identical California and federal law by making numerous unapproved health claims about their products.  It has also violated identical California and federal law by making numerous unapproved claims about the ability of their products to cure, mitigate, treat and prevent various diseases that render their products unapproved drugs under California and federal law. Moreover, in promoting the ability of its Kirkland Signature Cashew Clusters with Almonds and Pumpkin Seeds to have an effect on certain diseases such as heart disease, Defendant has violated the advertising provisions of the Sherman law.

99.     A health claim is a statement expressly or implicitly linking the consumption of a food substance (*e.g.*, ingredient, nutrient, or complete food) to risk of a disease (*e.g.*, cardiovascular disease) or a health-related condition (*e.g.*, hypertension). *See* 21 C.F.R. §101.14(a)(1), (a)(2), and (a)(5). Only health claims made in accordance with FDCA requirements, or authorized by FDA as qualified health claims, may be included in food labeling. Other express or implied statements that constitute health claims, but that do not meet statutory requirements, are prohibited in labeling foods.

100.    21 C.F.R. § 101.14, which has been expressly adopted by California, provides when and how a manufacturer may make a health claim about its product.  A "Health Claim" means any claim made on the label or in labeling of a food, including a dietary supplement, that expressly or by implication, including "third party" references, written statements (*e.g.*, a brand name including a term such as "heart"), symbols (*e.g.*, a heart symbol), or vignettes, characterizes the relationship of any substance to a disease or health-related condition. Implied health claims include those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition (*see* 21 C.F.R. § 101.14(a)(1)).

101.    Further, health claims are limited to claims about disease risk reduction, and cannot be claims about the diagnosis, cure, mitigation, or treatment of disease. An example of an authorized health claim is: "Three grams of soluble fiber from oatmeal daily in a diet low in saturated fat and cholesterol may reduce the risk of heart disease. This cereal has 2 grams per serving."

102.    A claim that a substance may be used in the diagnosis, cure, mitigation, treatment, or prevention of a disease is a drug claim and may not be made for a food. 21 U.S.C. § 321(g)(1)(D).

103.    The use of the term "healthy" is not a health claim but rather an implied nutrient content claim about general nutrition that is defined by FDA regulation. In general, the term may be used in labeling an individual food product that:

> Qualifies as both low fat and low saturated fat; Contains 480 mg or less of sodium per reference amount and per labeled serving, and per 50 g (as prepared for typically rehydrated foods) if the food has a reference amount of 30 g or 2 tbsps or less;

> Does not exceed the disclosure level for cholesterol (*e.g.*, for most individual food products, 60 mg or less per reference amount and per labeled serving size); *and*

> Except for raw fruits and vegetables, certain frozen or canned fruits and vegetables, and enriched cereal-grain products that conform to a standard of identity, provides at least 10% of the daily value (DV) of vitamin A, vitamin C, calcium, iron, protein, *or* fiber per reference amount. Where eligibility is based on a nutrient that has been added to the food, such fortification must comply with

1    FDA's fortification policy.

2    21 C.F.R. § 101.65(d)(2).

3        104.    Defendant is aware of this rule.

4        105.    The FDA's regulation on the use of the term healthy also encompasses other,

5    derivative uses of the term health (*e.g.*, healthful, healthier) in food labeling. 21 C.F.R. §

6    101.65(d).

7        106.    Defendant does this in violation of 21 C.F.R. § 101.65 which has been adopted by

8    California and which precludes the use of these terms about the Kirkland Signature Cashew

9    Clusters with Almonds and Pumpkin which has disqualifying levels of unhealthy nutrients like

10   fat.

11       107.    In addition to their unlawful "healthy" claims, Defendant makes unlawful health

12   related claims. For example, Defendant claims that the ingredients in its Kirkland Signature

13   Cashew Clusters with Almonds and Pumpkin Seeds "promotes good cardiovascular health."

14       108.    The therapeutic claims on Defendant's labeling establish that Defendant's products

15   are drugs because they are intended for use in the cure, mitigation, treatment, or prevention of

16   disease. Defendant's products are not generally recognized as safe and effective for the above

17   referenced uses and, therefore, the products would be "new drug[s]" under section 201(p) of the

18   Act [21 U.S.C. § 321(p)]. New drugs may not be legally marketed in the U.S. without prior

19   approval from the FDA as described in section 505(a) of the Act [21 U.S.C. § 355(a)]. FDA

20   approves a new drug on the basis of scientific data submitted by a drug sponsor to demonstrate

21   that the drug is safe and effective. Defendant also violated California Health & Safety Code §

22   110403 which prohibits the advertisement of products that are represented to have any effect  on

23   enumerated conditions, disorders and diseases including cancer and heart diseases unless the

24   materials have federal approval.

25       109.    Plaintiff Liddle saw such health related claims (in paragraph 94) and relied on

26   these label claims which influenced her decision to purchase Defendant's products. Plaintiff

27

28

SECOND AMENDED CLASS ACTION COMPLAINT                                                      27
CASE NO. 12-CV-02908 (EJD)

1    Liddle would not have bought the products had she known Defendant's claims were unapproved

2    and that the products were thus misbranded.

3        110.    Plaintiff Liddle and members of the Class were misled into the belief that such

4    claims were legal and had passed regulatory muster and were supported by science capable of

5    securing regulatory acceptance. Because this was not the case, Plaintiff Liddle and members of

6    the Class have been deceived.

7        111.    Defendant's materials and advertisements not only violate regulations adopted by

8    California such as 21 C.F.R. § 101.14,  they also violate California Health & Safety Code §

9    110403 which prohibits the advertisement of products that are represented to have any effect  on

10   enumerated conditions, disorders and diseases including heart disease unless the materials have

11   federal approval.

12       112.    Plaintiff Liddle and members of the Class have been misled by Defendant's

13   unlawful labeling practices and actions into purchasing products they would not have otherwise

14   purchased had they known the truth about these products. Plaintiff Liddle and members of the

15   Class who purchased this product paid an unwarranted premium for this product.

16       113.    Defendant's health related claims are false and misleading and the Kirkland

17   Signature Cashew Clusters with Almonds and Pumpkin Seeds are misbranded under identical

18   California and federal laws. Misbranded products cannot be legally sold and thus have no

19   economic value and are legally worthless.

20       **E.      "No Trans Fat" Claim**

21       114.    The following Purchased Products contain a "No Trans Fat" claim:

22           Kirkland Signature Kettle Brand Krinkle Cut Potato Chips (Sea Salt) (32 oz bag)

23       115.    The following unlawful and misleading language appears on the label of Kirkland

24   Signature Kettle Brand Krinkle Cut Potato Chips (Sea Salt): ***"No Trans Fat"***

25       116.    Plaintiff Thomas reasonably relied on this label representation in paragraph 115

26   and based and justified the decision to purchase the product, in substantial part, on this label

27   representation.  Also, Plaintiff Thomas reasonably relied on the fact that this product was not

28

SECOND AMENDED CLASS ACTION COMPLAINT                                          28
CASE NO. 12-CV-02908 (EJD)

1   misbranded under the Sherman Law and was therefore legal to buy and possess. Plaintiff would

2   not have purchased the product had she known it was illegal to purchase and possess the product.

3        117.    Plaintiff Thomas reasonably relied on these label representation when making her

4   purchase decision and was misled by this representation as described below. Plaintiff Thomas

5   would not have purchased this product had she known the truth about the product. Plaintiff

6   Thomas had other food alternatives that satisfied such standards and Plaintiff Thomas also had

7   cheaper alternatives. Reasonable consumers would have been mislead in the same manner as

8   Plaintiff Thomas.

9        118.    To appeal to consumer preferences, Defendant has repeatedly made improper

10  nutrient content claims on products containing disqualifying levels of fat, saturated fat,

11  cholesterol or sodium. These nutrient content claims were improper because Defendant failed to

12  include disclosure statements required by law that are designed to inform consumers of the

13  inherently unhealthy nature of those products in violation of 21 C.F.R. § 101.13(h), which has

14  been incorporated in California's Sherman Law.

15       119.    21 C.F.R. § 101.13 (h)(l) provides that:

16  > If a food … contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams
17  > (mg) of cholesterol, or 480 mg of sodium per reference amount customarily
    > consumed, per labeled serving, or, for a food with a reference amount customarily
18  > consumed of 30 g or less … per 50 g … then that food must bear a statement
    > disclosing that the nutrient exceeding the specified level is present in the food as
    > follows: "See nutrition information for __ content" with the blank filled in with
19  > the identity of the nutrient exceeding the specified level, e.g., "See nutrition
    > information for fat content."
20

21       120.    21 C.F.R. § 1.21 establishes that a violation of the disclosure rules is *per se*

22  "misleading."

23       121.    Defendant repeatedly violates these provisions on its Kirkland Signature Kettle

24  Brand Krinkle Cut Potato Chips (Sea Salt) which prominently states "No Trans Fat" claim on the

25  label despite disqualifying levels of fat that far exceed the 13 gram disclosure threshold.

26       122.    Pursuant to 21 C.F.R.  § 101.13(h), Defendant is prohibited from making the

27  unqualified nutrient claims of "0 grams Trans Fat" or "No Trans Fat" claim on its food products if

28  its products contain fat in excess of 13 grams, saturated fat in excess of 4 grams, cholesterol in

excess of 60 milligrams, or sodium in excess of 480mg per 50 grams, unless the product also displays a disclosure statement that informs consumers of the product's fat, saturated fat and sodium levels.  These regulations are intended to ensure that consumers are not misled into the erroneous belief that a product that claims, for instance, to be low in trans fat, but actually has other unhealthy fat levels, is a healthy choice, because of the lack of trans fats.

123.    Nevertheless, Defendant's Kirkland Signature Kettle Brand Krinkle Cut Potato Chips (Sea Salt) label states that this product contains "No Trans Fat" without such a disclosure even though the products contain fat in excess of 13 grams.

124.    Based on the fat, saturated fat, cholesterol and sodium content of Defendant's Kirkland Signature Kettle Brand Krinkle Cut Potato Chips (Sea Salt) pursuant to federal and California law, Defendant must include a warning statement adjacent to the trans fat nutrient claim that informs consumers of the high levels of fat, saturated fat, cholesterol or sodium.  No such disclosure statement currently exists on Defendant's Kirkland Signature Kettle Brand Krinkle Cut Potato Chips (Sea Salt).  Therefore, this product is misbranded as a matter of federal and California law and cannot be sold because of this fact it have no economic value and is legally worthless.

125.    In October 2009, the FDA issued its FOP Guidance, to address its concerns about front of package labels. Despite the issuance of the 2009 FOP Guidance, Defendant did not remove the improper and misleading "No Trans Fat" nutrient content claims from its Kirkland Signature Kettle Brand Krinkle Cut Potato Chips (Sea Salt).

126.    On March 3, 2010, the FDA issued an Open Letter which reiterated the FDA's concern regarding false and misleading labeling by food manufacturers. In pertinent part the letter stated:

> To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace.  While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices. For example:

- Claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat, and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel.

These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole. In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products. That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.

I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling. I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

127.    Notwithstanding the Open Letter, Defendant continues to utilize this improper trans fat nutrient content claims, despite the express guidance of the FDA in the Open Letter that "claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat [or sodium, cholesterol or total fat], and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel."

128.    Defendant also continues to ignore the FDA's Guidance for Industry, A Food Labeling Guide, which detailed the FDA's guidance on how to make nutrient content claims about food products that contain "one or more nutrients [like total fat at levels] in the food that may increase the risk of disease or health related condition that is diet related." Defendant continues to utilize improper trans fat nutrient claims on the labels of its Kirkland Signature Kettle Brand Krinkle Cut Potato Chips (Sea Salt). As such, this product continues to run afoul of FDA guidance as well as California and federal law.

129.    In addition to its guidance to industry, the FDA has sent warning letters to the industry, including many of Defendant's peer food manufacturers, for the same types of improper "0 grams Trans Fat" and "No Trans Fat" nutrient content claims described above. In these letters the FDA indicated that as a result of the same type of 0 gram trans fat claims utilized by

1    Defendant, products were in "violation of the Federal Food, Drug, and Cosmetic Act … and the

2    applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 CFR 101)" and

3    "misbranded within the meaning of section 403 because the product label bears a nutrient content

4    claim but does not meet the requirements to make the claim."

5         130.    The warning letters were hardly isolated, as the FDA has issued at least nine other

6    warning letters to other companies for the same type of improper No Trans Fat nutrient content

7    claims at issue in this case.

8         131.    Courts have found this exact kind of label representation to be misleading.  "A

9    disqualifying level of, say, saturated fat is four grams per "reference amount customarily

10   consumed." 21 C.F.R. § 101.13(h)(1). If this level is exceeded, a food purveyor is prohibited from

11   making an unqualified claim touting the health benefits of another nutrient in the food. This is

12   because the Agency has reasoned that the beneficent claim, standing alone, would be

13   misleading."  *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010). This Court

14   has already held that a disqualifying claim such as Defendants'' "0 grams Trans Fat," even if

15   accurate, may be unlawful and misleading. *Chacanaca. Quaker Oats*, 752 F. Supp. 2d1111, 1122

16   (N.D. Cal. 2010); *Wilson v. Frito-Lay North America, Inc.*, 2013 WL 1320468 (N.D. April 1,

17   2013)(Plaintiffs sufficiently alleged claim that the "0 Grams Trans Fat" statement on bags of

18   potato chips was deceptive because, accompanied by a disclosure of at least one of the ingredients

19   that 21 C.F.R. § 101.13(h)(1) requires to be disclosed, they and other reasonable consumers

20   would think that the statements on the labels make accurate claims about the labeled products'

21   nutritional content when, in fact, they do not; disqualifying claim such as; "0 grams Trans Fat,"

22   even if accurate, may be unlawful and misleading); see also *Chacanaca. Quaker Oats*, 752 F.

23   Supp. 2d1111, 1122 (N.D. Cal. 2010). In *Chacanaca*, Judge Seeborg explained:

24        The federal regulatory statute provides for this precise scenario: that is, it categorizes as
         misleading and therefore prohibited even true nutrient content claims if the presence of
25        another "disqualifying" nutrient exceeds and amount established by regulation. The
         Agency has by regulation imposed "disqualifying" levels for only four nutrients: total fat,
26        saturated fat, cholesterol, and sodium. 21C.F.R. §§ 101.13(h)(1), 101.14(a)(4). It is
         important to note how disqualifying claims work. A disqualifying level of say, saturated
27        fat is four grams per "reference amount customarily consumed." 21C.F.R. § 101.13 (h)(1).
         If this level is exceeded, a food purveyor is prohibited from making an unqualified claim
28

1

2

touting the health benefits of another nutrient in the food. This is because the Agency has reasoned that the beneficent claim, standing alone, would be misleading. *Chacanaca*, 752 F. Supp. 2d at 1122 (emphasis in original).

3

4

5

6

In reaching his decision, Judge Conti expressly found that the very claim (0 grams Trans Fat) at issue here on the very type of product at issue here (potato chips) was sufficient to establish a claim. *Wilson v. Frito-Lay North America, Inc*., 2013 WL 1320468 (N.D. April 1, 2013).

7

8

9

132.    Despite the FDA's numerous warnings to industry, Defendant has continued to sell its Kirkland Signature Kettle Brand Krinkle Cut Potato Chips (Sea Salt) bearing improper "No Trans Fat" nutrient content claims without meeting the requirements to make this claim.

10

11

12

13

14

15

16

17

18

19

20

133.    Plaintiff Thomas did not know, and had no reason to know, that Defendant's Kirkland Signature Kettle Brand Krinkle Cut Potato Chips (Sea Salt) was misbranded, and bore nutrient claims despite failing to meet the requirements to make those nutrient claims. Plaintiff Thomas read and relied upon Defendant's front of package statement "No Trans Fat" statement. Plaintiff Thomas was equally unaware that Defendant's Kirkland Signature Kettle Brand Krinkle Cut Potato Chips (Sea Salt) contained one or more nutrients like total fat at levels in the food that, according to the FDA, "may increase the risk of disease or health related condition that is diet related."  Because of Defendant's unlawful 0 grams Trans Fat claim, Plaintiff was misled into the erroneous belief that the product only made positive contributions to her diet and did not contain one or more nutrients like total fat at levels in the food that may increase the risk of disease or health related condition that is diet related.

21

**F.    Evaporated Cane Juice Claim**

22

23

134.    The following Purchased Products contain an "evaporated cane juice" claim:

Kirkland Signature Organic Chocolate Reduced Fat Milk (24-8.25 oz)

24

25

135.    The following unlawful and misleading language appears on the label as an ingredient of Kirkland Signature Organic Chocolate Reduced Fat Milk: ***"evaporated cane juice"***

26

27

28

136.    Plaintiff Liddle reasonably relied on this label representation in paragraph 136 and based and justified the decision to purchase the product, in substantial part, on this label representation.  Also, Plaintiff Liddle reasonably relied on the fact that this product was not

misbranded under the Sherman Law and was therefore legal to buy and possess. Plaintiff would not have purchased the product had she known it was illegal to purchase and possess the product.

137.    Plaintiff Liddle reasonably relied on this label representation when making her purchase decision and was misled by this representation as described below. Plaintiff Liddle would not have purchased this product had she known the truth about the product. Plaintiff Liddle had other food alternatives that satisfied such standards and Plaintiff Liddle also had cheaper alternatives. Reasonable consumers would have been misled in the same manner as Plaintiff Liddle.

138.    As discussed herein, evaporated cane juice is an unlawful term as it is merely a false and misleading name for another food or ingredient that has a common or usual name, namely sugar or dried cane syrup. 21 C.F.R. §§ 101.3 and 102.5, which have been adopted by California, prohibit manufacturers from referring to foods by anything other than their common and usual name. 21 CFR §101.4 which has been adopted by California, prohibits manufacturers from referring to ingredient by anything other than their common and usual names.

139.    Defendant has violated these provisions by failing to use the common or usual name for ingredients mandated by law, or because the products lacked the ingredient entirely. In particular, Defendant used the unlawful term evaporated cane juice on its Kirkland Signature Organic Chocolate Reduced Fat Milk in violation of numerous labeling regulations designed to protect consumers from misleading labeling practices. Defendant's practices also violated express FDA policies.

140.    In October 2009, the FDA issued *Guidance for Industry: Ingredients Declared as Evaporated Cane Juice*, which advised industry and that:

> [T]he term "evaporated cane juice" has started to appear as an ingredient on food labels, most commonly to declare the presence of sweeteners derived from sugar cane syrup. However, FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as "evaporated cane juice" because that term falsely suggests that the sweeteners are juice…

> "Juice" is defined by 21 CFR 120.1(a) as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree." … As provided in 21 CFR 101.4(a)(1), "Ingredients required to be declared on the label or labeling of a food . . . shall be listed by common or usual name . . . ." The

common or usual name for an ingredient is the name established by common usage or by regulation (21 CFR 102.5(d)). The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" (21 CFR 102.5(a))… Sugar cane products with common or usual names defined by regulation are sugar (21 CFR 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 CFR 168.130). Other sugar cane products have common or usual names established by common usage (e.g., molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar, and demerara sugar)…

The intent of this draft guidance is to advise the regulated industry of FDA's view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried cane syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup."…

Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5. Furthermore, sweeteners derived from sugar cane syrup are not juice and should not be included in the percentage juice declaration on the labels of beverages that are represented to contain fruit or vegetable juice (see 21 CFR 101.30).

http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodLabelingNutrition/ucm181491.htm

141.    Despite the issuance of the 2009 FDA Guidance, Defendant did not remove the unlawful and misleading "Evaporated Cane Juice" ingredient from its Kirkland Signature Organic Chocolate Reduced Fat Milk.

142.    Defendant lists ingredients with unlawful and misleading names.  The label of the Kirkland Signature Organic Chocolate Reduced Fat Milk lists "Organic Evaporated Cane Juice" as an ingredient.  According to the FDA, "'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup" or sugar.  The FDA provides that "cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is 'dried cane syrup.'" Similarly, sweeteners derived from the evaporation of cane juice, must be described as sugar in accordance with 21 C.F.R. § 104(b)(20). Sugar cane products are required by regulation (21 C.F.R. §101.4) to be described by their common or usual names, sugar (21 C.F.R. § 101.4(b)(20) and 21 C.F.R. §184.1854 or cane syrup (21 C.F.R. § 168.1340).

143.    Various FDA warning letters have made it clear that the use of the term evaporated cane juice is unlawful because the term does not represent the common or usual name of a food or ingredient. These warning letters indicate that foods that bear labels that contain the term evaporated cane juice are misbranded.

144.    Using the term "Evaporated Cane Juice" in the ingredients section on Kirkland Signature Organic Chocolate Reduced Fat Milk instead of using a common name accepted by California law for sugar was unlawful and misled consumers into paying a premium price for inferior or undesirable ingredients or for products that contain ingredients not listed on the label.

145.    Defendant's unlawful, false and misleading ingredient listing of "Evaporated Cane Juice" renders Kirkland Signature Organic Chocolate Reduced Fat Milk misbranded under California law.

146.    Defendant sold Kirkland Signature Organic Chocolate Reduced Fat Milk, the label of which misleadingly listed "evaporated cane juice" as an ingredient.  According to the FDA, "'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup" or sugar.  The FDA provides that "cane syrup has a standard of identity defined by regulation in 21 CFR 168.130; the common or usual name for the solid or dried form of cane syrup is 'dried cane syrup.'"  Similarly, sweeteners derived from the evaporation of cane juice, must be described as sugar in accordance with 21 C.F.R. § 104(b)(20). Sugar cane products are required by regulation (21 C.F.R. §101.4) to be described by their common or usual names, sugar (21 C.F.R. § 101.4(b)(20) and 21 C.F.R. §184.1854 or cane syrup (21 C.F.R. § 168.1340).

147.    For these reasons, Kirkland Signature Organic Chocolate Reduced Fat Milk is misbranded and its label unlawful and misleading and violates 21 C.F.R. § 343 (a) and California law. The Kirkland Signature Organic Chocolate Reduced Fat Milk is misbranded as a matter of law and cannot be legally manufactured, advertised, distributed, held or sold and have no economic value and are legally worthless.  Plaintiff Liddle read and relied on the listing of evaporated cane juice and this played a role, in substantial part, in her decision making process. Plaintiff Liddle would not have bought Kirkland Signature Organic Chocolate Reduced Fat Milk had the ingredients all been listed by their common and usual names, and thus disclosed to

Plaintiff that the product actually contained sugar or dried cane syrup.  Plaintiff Liddle and the class paid a premium price for the Kirkland Signature Organic Chocolate Reduced Fat Milk.

**G.**    **Failing To Label Product Ingredients By Their Common Names "Propellant" And Concealing The Fact That Its Cooking Spray Contains High Levels of Synthetic Chemicals And Petrochemicals**

148.    The following Purchased Products contain this type of claim:

Kirkland Signature Canola Oil Cooking Spray (16 oz).

149.    The following unlawful and misleading language appears on the label as an ingredient of Kirkland Signature Canola Oil Cooking Spray: ***"PROPELLANT"***

150.    In violation of identical California and federal law, Defendant concealed the fact that its Kirkland Signature Canola Oil Cooking Spray contained significant amounts of undisclosed petrochemicals such as Propane, Propane 2-methyl (isobutane) as well as other undisclosed chemicals.

151.    Defendant did this by failing to disclose these ingredients in the ingredient statements for Kirkland Signature Canola Oil Cooking Spray despite the fact that, as confirmed by an official Material Safety Data Sheet prepared by Defendant for its Kirkland Signature Canola Oil Cooking Spray, the products contained Propane and Propane 2-methyl (isobutane).

152.    Under California law "[a]ny food fabricated from two or more ingredients is misbranded unless it bears a label clearly stating the common or usual name of each ingredient" (California Health & Safety Code § 110725). California's law is identical to federal law. Moreover, California has expressly adopted the federal regulations as it own. Thus, California has adopted the requirements of 21 C.F.R. § 101.4 which mandate that the ingredient names listed on product labels be the common or usual name of those ingredients. In its guidance for industry and warning letters to manufacturers, the FDA has repeatedly stated its policy of restricting the ingredient names listed on product labels to their common or usual name, as provided in 21 C.F.R. § 101.4(a)(1).

153.    An ingredient's common or usual name is the name established by common usage or regulation, as provided in 21 C.F.R. § 102.5(d) which has been adopted by the State of California.

154.    The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, as provided in 21 C.F.R. § 102.5(a).

155.    The purpose of these laws and regulations is to ensure that consumers are provided with accurate information about products and their ingredients so they can make informed purchasing decisions. Consumers can avoid chemicals and ingredients they wish to avoid in particular products and can select products that contain the ingredients consumers desire.

156.    Absent such disclosures and labeling practices, consumers cannot avoid chemicals like the ones listed on the Material Safety Data Sheets that Defendant describes as posing both chronic and acute risks to health and life.  Ignoring California law and its incorporated federal regulations and guidance, Defendant mislabeled its Kirkland Signature Canola Oil Cooking Spray so that consumers were deprived of accurate information and, in fact, Plaintiff Liddle and the members of the class were misled by Defendant's concealment of chemicals and petrochemicals they wished to avoid.

157.    In listing "PROPELLANT" as an ingredient, and failing to list the actual ingredients Propane and Iso-butane by their common and usual names, Defendant not only misled Plaintiff Liddle and the Class by concealing the presence of these petrochemicals. Defendant also violated California Health & Safety Code § 110725 and the federal regulations (21 C.F.R. §§ 101.4 and 102.5) that have been adopted as law by the State of California.  Specifically, Defendant has failed to disclose the presence of the Propane and Iso-butane by their common or usual names, as required by California Health & Safety Code § 110725 and 21 C.F.R. §§ 101.4 and 102.5.

158.    A reasonable consumer would expect that when a manufacturer lists the ingredients on its products, the product's ingredients are given their common or usual name as required by law.  A reasonable consumer would also expect that when a manufacturer lists the ingredients on its products it would use the same names required on its Material Safety Data Sheets.

159.    Plaintiff Lisa Liddle purchased Kirkland Signature Canola Oil Cooking Spray and did not know, and had no reason to know, that this product was misbranded because Defendant

1   failed to list undisclosed chemicals and petrochemicals as ingredients or to name those ingredients

2   by the ingredients' common or usual name, despite identical California and federal regulations

3   requiring that that the chemicals and petrochemicals be listed as ingredients by their common and

4   usual names.

5        160.    Consumers are thus misled into purchasing Defendant's products with false and

6   misleading ingredient names, which do not describe the basic nature of the food or its

7   characterizing properties or ingredients, as provided in California Health & Safety Code § 110725

8   and 21 C.F.R. §§ 101.4 and 102.5(a), both of which have been adopted as law by California.

9        161.    Had Plaintiff Liddle been aware that the Kirkland Signature Canola Oil Cooking

10   Spray she purchased contained any amount (let alone the actual high levels) of petrochemicals

11   like the lighter fluid butane, she would not have purchased the products or knowingly used them

12   as food. Plaintiff had other alternatives that lacked such ingredients and Plaintiff also had cheaper

13   alternatives.

14        162.    Defendant's claims in this respect are false and misleading and the products are in

15   this respect misbranded under identical federal and California law, including California Health &

16   Safety Code § 110725.  Misbranded products cannot be legally sold and have no economic value

17   and are legally worthless. Plaintiff Liddle and members of the Class who purchased Kirkland

18   Signature Canola Oil Cooking Spray paid an unwarranted premium for this product.

19        163.    Defendant's listing of "propellant" as an ingredient is unlawful and misleading and

20   the Kirkland signature canola Oil Cooking Spray is misbranded under identical California and

21   federal law, as ingredients must be listed in descending order of predominance by weight. 21

22   C.F.R. § 101.4 (adopted by California).

23        164.    Such laws are designed to ensure consumers can determine if ingredients that are

24   important to them are either significant components of particular products or not and how those

25   ingredients compare relative to other ingredients.

26        165.    Defendant violates these regulations on its Kirkland Signature Canola Oil Cooking

27   Spray by listing as its last ingredient "Propellant" a component of the product which constitutes a

28

significant percentage of the product that is far greater than other ingredients listed before this ingredient.

166.    The failure to list ingredients in descending order of predominance by weight misbrands Defendant's Kirkland Signature Canola Oil Cooking Spray under identical California and federal laws. It also misleads consumers such as Plaintiff Liddle who relied on the labels into the erroneous belief that ingredients such as the synthetic chemicals and petrochemicals that comprised the propellant mix were a small component of the product less than even preservatives and anti-foaming agents, which is false.

167.    Had Plaintiff Liddle been aware that the Propane and iso-butane were ingredients that made up a significant component of the cooking spray products, she would not have purchased Kirkland Signature Canola Oil Cooking Spray.  Plaintiff had other alternatives that lacked such ingredients and Plaintiff also had cheaper alternatives.

**H.    Defendant Violates California Law By Making Unlawful And False Claims That Its Products Are "Free" of Preservatives And By Failing To Disclose On Its Purchased Products' Labels The Presence Of Preservatives In Those Products As Required By California Law**

168.    The following Purchased Products contain this type of claim:

Kirkland Signature Nature's Path Organic Ancient Grains Granola With Almonds

169.    The following unlawful and misleading language appears on the label as an ingredient of Kirkland Signature Nature's Path Organic Ancient Grains Granola With Almonds:

*"Preservative Free"*

170.    In violation of identical California and federal law, Defendant concealed the fact that its Kirkland Signature Canola Oil Cooking Spray contained an ingredient (tocopherols) functioning as an undisclosed chemical preservative.

171.    The purpose of these laws and regulations is to ensure that consumers are provided with accurate information about products and their ingredients so they can make informed purchasing decisions. Consumers can avoid chemical preservatives and ingredients they wish to avoid in particular products and can select products that contain the ingredients consumers desire.

172.    Absent such disclosures and labeling practices, consumers cannot avoid chemicals preservatives.  Ignoring California law and its incorporated federal regulations and guidance, Defendant mislabeled its Kirkland Signature Nature's Path Organic Ancient Grains Granola With Almonds so that consumers were deprived of accurate information and, in fact, Plaintiff Liddle and the members of the class were misled by Defendant's concealment of chemicals preservatives they wished to avoid.

173.    A reasonable consumer would expect that when a manufacturer lists the ingredients on its products, the product's ingredients and their functions are disclosed as required by law.

174.    Plaintiff Lisa Liddle purchased Kirkland Signature Nature's Path Organic Ancient Grains Granola With Almonds and did not know, and had no reason to know, that this product was misbranded because Defendant failed to disclose that an ingredient (tocopherols) was functioning as an undisclosed chemical preservative despite identical California and federal regulations requiring the disclosure of such chemical preservatives.

175.    Consumers are thus misled into purchasing Defendant's products with ingredients functioning as undisclosed chemical preservatives as required in California Health & Safety Code § 110740 and 21 C.F.R. §§ 101.22 which has been adopted as law by California.

176.    Had Plaintiff Liddle been aware that the Kirkland Signature Kirkland Signature Nature's Path Organic Ancient Grains Granola With Almonds she purchased contained any undisclosed chemical preservatives, she would not have purchased the products. Plaintiff had other alternatives that lacked such ingredients and Plaintiff also had cheaper alternatives.

177.    Defendant's claims in this respect are false and misleading and the products are in this respect misbranded under identical federal and California law, including California Health & Safety Code § 110740.  Misbranded products cannot be legally sold and have no economic value and are legally worthless. Plaintiff Liddle and members of the Class who purchased  Kirkland Signature Nature's Path Organic Ancient Grains Granola With Almonds paid an unwarranted premium for this product.

178.    Defendant violates these regulations on its Kirkland Signature Nature's Path Organic Ancient Grains Granola With Almonds by failing to disclose that tocopherols are functioning as a chemical preservative and instead conceals this fact by improperly representing it to be functioning solely as an added vitamin.

179.    The failure to disclose ingredients are functioning as chemical preservatives in Kirkland Signature Nature's Path Organic Ancient Grains Granola With Almonds under identical California and federal laws. It also misleads consumers such as Plaintiff Liddle who relied on the labels into the erroneous belief that these products were "preservative free" as Defendant falsely claimed.

180.    Had Plaintiff Liddle been aware that the Kirkland Signature Nature's Path Organic Ancient Grains Granola With Almonds was not actually "preservative free" as falsely claimed by the Defendant, she would not have purchased Kirkland Signature Nature's Path Organic Ancient Grains Granola With Almonds.  Plaintiff had other alternatives that lacked such ingredients and Plaintiff also had cheaper alternatives.

181.    Despite the fact that its Kirkland Signature Nature's Path Organic Ancient Grains Granola With Almonds contained chemical preservatives, Defendant falsely stated on the labels of its Purchased Products that they were "free" of preservatives. This statement was demonstrably false and misled consumers such as the Plaintiffs who relied on the statements.

182.    Defendant's Kirkland Signature Nature's Path Organic Ancient Grains Granola With Almonds  bought by Plaintiff Liddle bore such a false labeling statement. In fact, this product contained the chemical preservatives tocopherols which are listed as chemical preservatives in 21 C.F.R. § 182.3890 and which meet the definition of chemical preservatives incorporated into California and federal law in (21 C.F.R. § 101.22.

183.    Given the presence of this chemical preservative, the label statement "Preservative free" is both false and misleading and renders the product misbranded.

184.    Moreover, even if Defendant had not included a false representation that its Kirkland Signature Nature's Path Organic Ancient Grains Granola With Almonds was "preservative free" on its product labels, these products would have still been misbranded as a

1   matter of law because of Defendant's failure to disclose the function of such ingredients as

2   mandated by identical California and federal law.

3       185.    "Under California law "food is misbranded if it bears or contains any artificial

4   flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact

5   (California Health & Safety Code § 110740). California's law is identical to federal law on this

6   point.

7       186.    Pursuant to 21 C.F.R. § 101.22 which has been adopted by California, "[a]

8   statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the

9   food or on its container or wrapper, or on any two or all three of these, as may be necessary to

10  render such statement likely to be read by the ordinary person under customary conditions of

11  purchase and use of such food." 21 C.F.R. § 101.22 defines a chemical preservative as "any

12  chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not

13  include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to

14  food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or

15  herbicidal properties."

16      187.    Defendant's Kirkland Signature Nature's Path Organic Ancient Grains Granola

17  With Almonds was misbranded because it contained chemical preservatives like tocopherols but

18  failed to disclose that fact as required by law.

19      188.    Defendant's Kirkland Signature Nature's Path Organic Ancient Grains Granola

20  With Almonds bought by Plaintiff Liddle purchased by the Plaintiffs, contains tocopherols which

21  is used in that product as a type of chemical preservative designed to retard rancidity, the products

22  label fails to disclose the fact that the tocopherols are being used as a preservative in those

23  products by including a parenthetical such as (preservative) or (to retard spoilage) after the term

24  tocopherols in the ingredient statement. Because Defendant unlawfully fails to indicate these

25  ingredients are being used as chemical preservatives reasonable consumer would have no reason

26  to doubt the preservative free claim.

27      189.    A reasonable consumer would expect that when Defendant made a representation

28  on its products' labels that such products were "free" of preservatives that such a representation

was true, A reasonable consumer would also expect that when Defendant lists its products' ingredients that it would make all disclosures required by law such as the disclosure of chemical preservatives mandated by identical California and federal law.

190.    Plaintiff Liddle saw Defendant's label representations that its products were "free" of preservatives and relied on them in the reasonable expectation that such a representation was true. Plaintiff Liddle based her purchasing decisions in part on the belief that these products did not contain chemical preservatives or artificial ingredients.

191.    Plaintiff Liddle did not know, and had no reason to know, that Defendant's Kirkland Signature Nature's Path Organic Ancient Grains Granola With Almonds contained undisclosed chemical preservatives because 1) Defendant falsely represented on its label that the products were "free" of preservatives and 2) failed to disclose those chemical preservatives as required by California and federal law.

192.    Consumers are thus misled into purchasing Defendant's products with false and misleading labeling statements and ingredient descriptions, which do not describe the basic nature of the ingredients, as  required by California Health & Safety Code § 110740 and  21 C.F.R. §§ 101.22 which has been adopted as law by California..

193.    Had Plaintiff Liddle been aware that the Kirkland Signature Nature's Path Organic Ancient Grains Granola With Almonds she purchased contained chemical preservatives she would not have purchased the products. Plaintiff Liddle had other alternatives that lacked such ingredients and Plaintiff Liddle also had cheaper alternatives.

194.    Because of their false label representations and omissions about chemical preservatives Defendant's Kirkland Signature Nature's Path Organic Ancient Grains Granola With Almonds is in this respect misbranded under identical federal and California law, including California Health & Safety Code § 110740.  Misbranded products cannot be legally sold and have no economic value and are legally worthless. Plaintiff Liddle and members of the Class who purchased these products paid an unwarranted premium for these products.

   I.    **Defendant Has Violated California Law By Using Misleading Containers That Are Slack Filled**

195. Pursuant to C.F.R. 100.100 which has been adopted by California:

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;

(2) The requirements of the machines used for enclosing the contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other non-mandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

196. Defendant employed slack filled packaging to mislead consumers into believing they were receiving more than they actually were.

197. Defendant lacked any lawful justification for doing so.

198. Plaintiffs and members of the Class relied on and were deceived by Defendant's misleading slack filled packaging.

199.    The Plaintiffs purchased slack filled packages of the following Defendant's products: Kirkland Signature Nature's Path Organic Ancient Grains Granola; Kirkland Signature Whole Dried Blueberries; and Kirkland Signature Cashew Clusters.

200.    Plaintiffs did not know, and had no reason to know, that Defendant's products they purchased were slack filled and misbranded. Plaintiffs and members of the Class who purchased Kirkland Signature Nature's Path Organic Ancient Grains Granola; Kirkland Signature Whole Dried Blueberries; and Kirkland Signature Cashew Clusters paid an unwarranted premium for these products. Because of Defendant's slack fill packaging violations these products were misbranded and could not be legally held or sold. They were legally and economically worthless.

**DEFENDANT HAS VIOLATED CALIFORNIA LAW**

201.    Defendant has violated California Health & Safety Code § 110390 which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

202.    Defendant has violated California Health & Safety Code § 110395 which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

203.    Defendant has violated California Health & Safety Code §§ 110398 and 110400 which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

204.    Defendant has violated California Health & Safety Code § 110403 which makes it unlawful to advertise misbranded food by representing it to have any effect on conditions, disorders or diseases.

205.    Defendant has violated California Health & Safety Code § 110660 because its Purchased Product labels are false and misleading in one or more ways.

206.    Defendant's Purchased Products are misbranded under California Health & Safety Code § 110665 because their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and the regulations adopted thereto.

207. Defendant's Purchased Products are misbranded under California Health & Safety Code § 110670 because their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted thereto.

208. Defendants' Purchased Products are misbranded under California Health & Safety Code § 110705 because words, statements and other information required by the Sherman Law to appear on their labeling either are missing or not sufficiently conspicuous.

209. Defendant's Purchased Products are misbranded under California Health & Safety Code § 110720 as they fail to state the common or usual name for foods for which there is no standard of identity.

210. Defendant's Purchased Products are misbranded under California Health & Safety Code § 110725 as they fail to state the common or usual name of each ingredient.

211. Defendant's Purchased Products are misbranded under California Health & Safety Code § 110735 as they purport to be for special dietary uses but do not bear information concerning any vitamin or mineral content or other dietary property as necessary to inform purchasers as to the food's value for that use.

212. Defendant has violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

213. Defendant's Purchased Products are misbranded under California Health & Safety Code § 110755 because they purport to be or are represented for special dietary uses, and its labels fail to bear such information concerning their vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

214. Defendant has violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

215. Defendant has violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for deliver any such food.

216. Defendant has violated California Business and Professional Code §§ 12606 and 12606.2 which makes it unlawful for any person to fill any container as to be misleading and makes it unlawful for containers to contain non-functional slack fill.

## PLAINTIFFS PURCHASED DEFENDANT'S PURCHASED PRODUCTS WITH UNLAWFUL AND MISLEADING LABELS

217. Plaintiffs care about the nutritional content of food and seek to maintain a healthy diet.

218. Plaintiffs purchased Defendant's Purchased Products as described above on occasions during the Class Period.

219. Plaintiffs read the particular label statements described above on Defendant's Purchased Products before purchasing them. Defendant's labels falsely conveyed to the Plaintiffs the net impression that the Purchased Products they bought made only positive contributions to a diet, and did not contain any nutrients at levels that raised the risk of diet-related disease or health- related condition.

220. Plaintiffs read the unlawful and misleading statements referenced above on the labels of Defendant's Purchased Products before purchasing them. If Plaintiffs has known that the unlawful and misleading statements that they read on Defendant's labels misbranded the Purchased Products rendering them unlawful to possess or sell Plaintiffs would not have purchased such products. In addition, Defendant's unlawful statements falsely conveyed to the Plaintiffs the net impression that the Purchased Products they bought made only positive contributions to a diet, and did not contain any nutrients at levels that raised the risk of diet-related disease or health-related conditions. Plaintiffs relied on Defendant's label statements identified above and based and justified the decision to purchase Defendant's Purchased Products, in substantial part, on Defendant's label statements identified above.

221. At point of sale, Plaintiffs did not know, and had no reason to know, that Defendant's products were misbranded as set forth herein, and would not have bought the products had they known the truth about them.

222.     At point of sale, Plaintiffs did not know, and had no reason to know, that claims were improper and unauthorized as set forth herein, and would not have bought the products absent the claims.

223.     At point of sale, Plaintiffs did not know and had no reason to know that Defendant's Purchased Product labels were unlawful and misleading as set forth herein.  As a result of Defendant's improper labeling claims on the Purchased Products, Plaintiffs and thousands of others in California purchased the Purchased Products.

224.     As a result of Defendant's unlawful and misleading labels contained on the Purchased Products, Plaintiffs and thousands of others in California purchased the Purchased Products.  Defendant's labels on the Purchased Products as alleged herein are false and misleading and were designed to increase sales of the Purchased Products.  A reasonable person would attach importance to Defendant's label statements as described herein in determining whether to purchase the Purchased Products.

225.     A reasonable person would also attach importance to whether Defendant's products were legally salable, and capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the Purchased Products. Plaintiffs would not have purchased Defendant's Purchased Products had they known they were not capable of being legally sold or held.

**CLASS ACTION ALLEGATIONS**

226.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following "Class:"

> All persons in the United States, and alternatively, in a subclass of persons in the State of California who, within the Class Period, purchased one or more of the following products:
>
> Kirkland Signature Kettle Brand Krinkle Cut Potato Chips (Sea Salt)
> Kirkland Signature Whole Dried Blueberries
> Kirkland Signature Cashew Clusters with Almonds and Pumpkin Seeds
> Kirkland Signature Organic Chocolate Reduced Fat Milk
> Kirkland Signature Canola Oil Cooking Spray
> Kirkland Signature Newman's Own 100% Grape Juice
> Kirkland Signature Real Sliced Fruit – Fuji Apple, Strawberry Banana, Fuji Apple with Cinnamon
> Kirkland Signature Boathouse Farms Organic 100% Carrot Juice

Kirkland Signature Ancient Grains Granola with Almonds

227.    The following persons are expressly excluded from the Class: (1) Defendant and Its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

228.    This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

229.    <u>Numerosity</u>:  Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that joinder of all Class members is impracticable.

230.    <u>Common Questions Predominate</u>:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, for example:

> a.    Whether Defendant engaged in unlawful, unfair or deceptive business practices by failing to properly package and label its Purchased Products sold to consumers;
>
> b.    Whether the Purchased Products were misbranded as a matter of law;
>
> c.    Whether Defendant made improper and misleading nutrient content, antioxidant, and health claims;
>
> d.    Whether Defendant made unlawful and misleading "no sugar added" or "No Trans Fat" or "Preservative Free" claims;
>
> f.    Whether Defendant violated California Bus. & Prof. Code § 17200 *et seq.*, California Bus. & Prof. Code § 17500 *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*, and the Sherman Law;
>
> g.    Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief; and
>
> h.    Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiffs and the Class.

231.   <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the Class because Plaintiffs bought Defendant's Purchased Products during the Class Period.  Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiffs and the Class sustained similar injuries arising out of Defendant's conduct in violation of California law.  The injuries of each member of the Class were caused directly by Defendant's wrongful conduct.  In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

232.   <u>Adequacy</u>:  Plaintiffs will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class members.  Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the members of the Class.  Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

233.   <u>Superiority</u>:  There is no plain, speedy or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will

be served by addressing the matter as a class action.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

234.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

235.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

236.    Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Business and Professions Code § 17200, *et seq.***
**Unlawful Business Acts and Practices**

237.    Plaintiffs incorporate by reference each allegation set forth above.

238.    Defendant's conduct constitutes unlawful business acts and practices.

239.    Defendant sold Purchased Products in California during the Class Period.

240.    Defendant is a corporation and, therefore, is a "person" within the meaning of the Sherman Law.

241.    Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6  of the Sherman Law.

242.    Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

243. Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

244. Defendant sold Plaintiffs and the Class Purchased Products that were not capable of being sold, or held legally and have no economic value and which were legally worthless. Plaintiffs and the Class paid a premium price for the Purchased Products.

245. As a result of Defendant's illegal business practices, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any Class Member any money paid for the Purchased Products.

246. Defendant's unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiffs and the Class.

247. As a result of Defendant's conduct, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Products by Plaintiffs and the Class.

## SECOND CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### <u>Unfair Business Acts and Practices</u>

248. Plaintiffs incorporate by reference each allegation set forth above.

249. Defendant's conduct as set forth herein constitutes unfair business acts and practices.

250. Defendant sold Purchased Products in California during the Class Period.

251. Plaintiffs and members of the Class suffered a substantial injury by virtue of buying Defendant's Purchased Products that they would not have purchased absent Defendant's illegal conduct.

252. Defendant's deceptive marketing, advertising, packaging and labeling of its Purchased Products and its sale of unsalable misbranded products that were illegal to possess was of no benefit to consumers, and the harm to consumers and competition is substantial.

253.     Defendant sold Plaintiffs and the Class Purchased Products that were not capable of being legally sold or held and that have no economic value and were legally worthless. Plaintiffs and the Class paid a premium price for the Purchased Products.

254.     Plaintiffs and the Class who purchased Defendant's Purchased Products had no way of reasonably knowing that the products were misbranded and were not properly  marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

255.     The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefor.  Defendant's conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiffs and the Class.

256.     As a result of Defendant's conduct, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Products by Plaintiffs and the Class.

### THIRD CAUSE OF ACTION
**Business and Professions Code § 17200, *et seq.*
<u>Fraudulent Business Acts and Practices</u>**

257.     Plaintiffs incorporate by reference each allegation set forth above.

258.     Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

259.     Defendant sold Purchased Products in California during the Class Period.

260.     Defendant's misleading marketing, advertising, packaging and labeling of the Purchased Products and misrepresentation that the products were salable, capable of possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiffs and members of the Class were deceived.  Defendant has engaged in fraudulent business acts and practices.

261. Defendant's fraud and deception caused Plaintiffs and the Class to purchase Defendant's Purchased Products that they would otherwise not have purchased had they known the true nature of those products.

262. Defendant sold Plaintiffs and the Class Purchased Products that were not capable of being sold or held legally and that have no economic value and were legally worthless. Plaintiffs and the Class paid a premium price for the Purchased Products.

263. As a result of Defendant's conduct as set forth herein, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Products by Plaintiffs and the Class.

**FOURTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**Misleading and Deceptive Advertising**

264. Plaintiffs incorporate by reference each allegation set forth above.

265. Plaintiffs assert this cause of action for violations of California Business and Professions Code § 17500*, et seq*. for misleading and deceptive advertising against Defendant.

266. Defendant sold Purchased Products in California during the Class Period.

267. Defendant engaged in a scheme of offering Defendant's Purchased Products for sale to Plaintiffs and members of the Class by way of product labeling. These labels misrepresented and/or omitted the true contents and nature of Defendant's Purchased Products. Defendant's advertisements and inducements were made within California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such labels were intended as inducements to purchase Defendant's Purchased Products and are statements disseminated by Defendant to Plaintiffs and the Class that were intended to reach members of the Class. Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

268. In furtherance of its plan and scheme, Defendant prepared and distributed within California and nationwide via product labels, statements that misleadingly and deceptively

1   represented the composition and the nature of Defendant's Purchased Products.  Plaintiffs and the

2   Class necessarily and reasonably relied on Defendant's materials, and were the intended targets of

3   such representations.

4        269.   Defendant's conduct in disseminating misleading and deceptive statements in

5   California and nationwide to Plaintiffs and the Class was and is likely to deceive reasonable

6   consumers by obfuscating the true composition and nature of Defendant's Purchased Products in

7   violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq*.

8        270.   As a result of Defendant's violations of the "misleading prong" of California

9   Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the

10  expense of Plaintiffs and the Class.  Misbranded products cannot be legally sold or held and have

11  no economic value and are legally worthless. Plaintiffs and the Class paid a premium price for the

12  Purchased Products.

13       271.   Plaintiffs and the Class, pursuant to Business and Professions Code § 17535, are

14  entitled to an order enjoining such future conduct by Defendant, and such other orders and

15  judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any

16  money paid for Defendant's Purchased Products by Plaintiffs and the Class.

17  **FIFTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**<u>Untrue Advertising</u>**

18

19       272.   Plaintiffs incorporate by reference each allegation set forth above.

20       273.   Plaintiffs assert this cause of action against Defendant for violations of California

21  Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

22       274.   Defendant sold Purchased Products in California during the Class Period.

23       275.   Defendant engaged in a scheme of offering Defendant's Purchased Products for

24  sale to Plaintiffs and the Class by way of product labels.  These materials misrepresented and/or

25  omitted the true contents and nature of Defendant's Purchased Products.  Defendant's labels were

26  made in California and come within the definition of advertising as contained in Business and

27  Professions Code §17500, *et seq.* in that the labels were intended as inducements to purchase

28  Defendant's Purchased Products, and are statements disseminated by Defendant to Plaintiffs and

1   the Class.  Defendant knew, or in the exercise of reasonable care should have known, that these

2   statements were untrue.

3       276.    In furtherance of its plan and scheme, Defendant prepared and distributed in

4   California and nationwide via product labels, statements that falsely advertise the composition of

5   Defendant's Purchased Products, and falsely misrepresented the nature of those products.

6   Plaintiffs and the Class were the intended targets of such representations and would reasonably be

7   deceived by Defendant's materials.

8       277.    Defendant's conduct in disseminating untrue labels throughout California deceived

9   Plaintiffs and members of the Class by obfuscating the contents, nature and quality of

10  Defendant's Purchased Products in violation of the "untrue prong" of California Business and

11  Professions Code § 17500.

12      278.    As a result of Defendant's violations of the "untrue prong" of California Business

13  and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of

14  Plaintiffs and the Class.  Misbranded products cannot be legally sold or held and have no

15  economic value and are legally worthless. Plaintiffs and the Class paid a premium price for the

16  Purchased Products.

17      279.    Plaintiffs and the Class, pursuant to Business and Professions Code § 17535, are

18  entitled to an order enjoining such future conduct by Defendant, and such other orders and

19  judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any

20  money paid for Defendant's Purchased Products by Plaintiffs and the Class.

21                          **SIXTH CAUSE OF ACTION**
22              **Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.***

        280.    Plaintiffs incorporate by reference each allegation set forth above.
23
        281.    This cause of action is brought pursuant to the CLRA.  This cause of action does
24
    not currently seek monetary damages and is limited solely to injunctive relief.  Plaintiffs intend to
25
    amend this Complaint to seek damages in accordance with the CLRA after providing Defendant
26
    with notice pursuant to Cal. Civ. Code § 1782.
27

28

SECOND AMENDED CLASS ACTION COMPLAINT                                              57
CASE NO. 12-CV-02908 (EJD)

282.    At the time of any amendment seeking damages under the CLRA, Plaintiffs will demonstrate that the violations of the CLRA by Defendant was willful, oppressive and fraudulent, thus supporting an award of punitive damages.

283.    Consequently, Plaintiffs and the Class will be entitled to actual and punitive damages against Defendant for their violations of the CLRA.  In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiffs and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiffs and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

284.    Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

285.    Defendant sold the Purchased Products in California during the Class Period.

286.    Plaintiffs and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

287.    Defendant's Purchased Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

288.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Sections 1770(a)(5) of the CLRA, (because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

289.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

290.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods

1   of competition and unfair or fraudulent acts or practices in that they advertise goods with the

2   intent not to sell the goods as advertised.

3         291.   By engaging in the conduct set forth herein, Defendant has violated and continues

4   to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair

5   methods of competition and unfair or fraudulent acts or practices in that they represent that a

6   subject of a transaction has been supplied in accordance with a previous representation when it

7   has not.

8         292.   Plaintiffs request that the Court enjoin Defendant from continuing to employ the

9   unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If

10  Defendant is not restrained from engaging in these practices in the future, Plaintiffs and the Class

11  will continue to suffer harm.

12        293.   Pursuant to Section 1782(a) of the CLRA, Plaintiffs' counsel served Defendant

13  with notice of Defendant's violations of the CLRA.

14        294.   Defendant has refused or failed to respond to the CLRA demand notice.

15        295.   Defendant has failed to provide appropriate relief for its violations of the CLRA

16  within 30 days of its receipt of the CLRA demand notice.  Accordingly, pursuant to Sections 1780

17  and 1782(b) of the CLRA, Plaintiffs are entitled to recover actual damages, punitive damages,

18  attorneys' fees and costs, and any other relief the Court deems proper.

19        296.   The violations of the CLRA by Defendant were willful, oppressive and fraudulent,

20  thus supporting an award of punitive damages.  Consequently, Plaintiffs and the Class are entitled

21  to actual and punitive damages against Defendant for its violations of the CLRA.  In addition,

22  pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiffs and the Class are entitled to an order enjoining

23  the above-described acts and practices, providing restitution to Plaintiffs and the Class, ordering

24  payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the

25  Court pursuant to Cal. Civ. Code § 1780.

26                                    **JURY DEMAND**

27        Plaintiffs hereby demand a trial by jury of their claims.

28

1

**PRAYER FOR RELIEF**

2    WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, and

3   on behalf of the general public, pray for judgment against Defendant as follows:

4    A.    For an order certifying this case as a class action and appointing Plaintiffs and

5   their counsel to represent the Class;

6    B.    For an order awarding, as appropriate, damages, restitution or disgorgement to

7   Plaintiffs and the Class;

8    C.    For an order requiring Defendant to immediately cease and desist from selling its

9   Purchased Products listed in violation of law; enjoining Defendant from continuing to market,

10   advertise, distribute, and sell these products in the unlawful manner described herein; and

11   ordering Defendant to engage in corrective action;

12    D.    For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

13    E.    For an order awarding attorneys' fees and costs;

14    F.    For an order awarding punitive damages;

15    G.    For an order awarding pre-and post-judgment interest; and

16    H.    For an order providing such further relief as this Court deems proper.

17   Dated:  April  24, 2013          Respectfully submitted,

18

19                     /s/ Ben F. Pierce Gore
                    Ben F. Pierce Gore (SBN 128515)
20                    PRATT & ASSOCIATES
                    1871 The Alameda, Suite 425
21                    San Jose, CA 95126
                    Telephone:  (408) 429-6506
22                    Fax:  (408) 369-0752
                    pgore@prattattorneys.com
23
                    *Attorneys for Plaintiffs*
24

25

26

27

28