1  Amanda L. Groves (SBN: 187216)
   agroves@winston.com
2  Sean D. Meenan (SBN: 260466)
   smeenan@winston.com
3  WINSTON & STRAWN LLP
   101 California Street
4  San Francisco, CA  94111-5802
   Telephone:    (415) 591-1000
5  Facsimile:    (415) 591-1400

6  Attorneys for Defendant
   COSTCO WHOLESALE CORPORATION
7

8              UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11 KAREN THOMAS and LISA LIDDLE,            Case No. 5:12-CV-02908-EJD-PSG
   individually and on behalf of all others similarly
12 situated,                               **DEFENDANT COSTCO WHOLESALE
                                           CORPORATION'S AMENDED NOTICE
13              Plaintiffs,                 OF MOTION AND MOTION TO DISMISS
                                           AND STRIKE SECOND AMENDED
14         v.                               COMPLAINT; MEMORANDUM OF
                                           POINTS AND AUTHORITIES IN
15 COSTCO WHOLESALE CORPORATION,            SUPPORT**

16              Defendant.                  Hearing Date:   November 1, 2013
                                           Time:           9:00 a.m.
17                                          Courtroom:      Courtroom 4, 5th Floor
                                           Judge:          Hon. Edward J. Davila
18

19                                          Complaint Filed:   June 5, 2012

20

21

22

23

24

25

26

27

28

*Winston & Strawn LLP*
*101 California Street*
*San Francisco, CA 94111-5802*

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 1, 2013 at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 4, 5th Floor of this Court, located at 280 South 1st Street, San Jose, California 95113, Defendant Costco Wholesale Corporation ("Costco") will, and hereby does, move this Court for an order dismissing with prejudice the Second Amended Complaint For Damages, Equitable And Injunctive Relief ("SAC") (Docket Entry No. 60) of Plaintiffs Karen Thomas and Lisa Liddle, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  Costco moves on the grounds that: (a) Plaintiff Thomas lacks standing to bring this action, as previously determined by the Court; (b) Plaintiffs' claims based on the SAC's self-proclaimed "unlawful part" (or "first facet") fail for lack of required allegations regarding deception and causation and, independently, are preempted; (c) Plaintiffs failed to satisfy the reasonable consumer test required by each of their causes of action; and (d) Plaintiffs' claims regarding "evaporated cane juice" attempt to resolve questions that fall within the primary jurisdiction of the FDA.

Pursuant to Rule 12(f)(1) of the Federal Rules of Civil Procedure, Defendant Costco also moves to strike all allegations pertaining to the SAC's "first facet," including the allegations in paragraph 3, the allegations in paragraph 6 regarding statements "being unlawfully misbranded under the Sherman Law," and all allegations that Plaintiff(s) relied on pertaining to the fact that products were not misbranded, including those in paragraphs 56, 60, 64, 71, 73, 77, 95, 109, 116, 133, 136, and 159.  Costco also moves to strike the allegations in paragraph 18 that relates to a legal standard, which is inaccurate and irrelevant to consumer fraud standards.  Said allegations are "immaterial" and "impertinent" under the applicable standard since the "unlawful" theory Plaintiffs allege is contrary to law.  Finally, Costco moves to strike the allegations in paragraphs 4, 14 and 134-147 relating to purported requirements concerning "evaporated cane juice" because the interpretation for the same is solely within FDA jurisdiction.

This Motion is based on this Amended Notice of Motion and Motion, the previously-filed Memorandum of Points and Authorities in support of the Motion filed concurrently herewith, the

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1    record in this action, and any evidence and argument that may be presented at or before the hearing.

2

3    Dated:  July 26, 2013                    WINSTON & STRAWN LLP

4

5                                        By:  /s/ Amanda L. Groves
                                             Amanda L. Groves
6                                            Attorneys for Defendant
                                             COSTCO WHOLESALE CORPORATION

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COSTCO'S AMENDED MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT
CASE NO. 5:12-CV-02908-EJD-PSG

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA  94111-5802**

# TABLE OF CONTENTS

**Page**

I.      SUMMARY OF ARGUMENT ................................................................................. 1

II.     STATEMENT OF ISSUES .................................................................................... 2

III.    THE COURT'S ORDER GRANTING COSTCO'S MOTION TO DISMISS AND
        PLAINTIFFS' AMENDED ALLEGATIONS IN RESPONSE ................................ 2

IV.     LEGAL STANDARDS FOR MOTIONS TO DISMISS AND STRIKE ................................ 3

V.      ARGUMENT ...................................................................................................... 4

        A.      Plaintiff Thomas Has Not and Cannot Cure the Standing Defects
                Identified in the Court's Dismissal Order. ............................................. 4

                1.      Thomas's Purchase Caused No Injury-in-Fact. ............................... 5

                2.      Thomas Did Not Sufficiently Allege Causation. ............................. 7

        B.      The SAC's "First Facet" – "the Misbranding Part" – Fails As a Matter of
                Law ........................................................................................................ 8

                1.      Plaintiffs' "Misbranding Part" of Their Case Flies in the Face of
                        Proposition 64 and Established Caselaw: There is No Strict
                        Liability under the UCL's Unlawful Prong. .................................... 8

                2.      Even if California Law Allowed Plaintiffs' Ill-Fated "First Facet,"
                        It Is Preempted. ........................................................................... 10

        C.      Plaintiffs' "Second Facet"– the "Fraudulent Part" –Lacks the Required
                Deception/Reliance Allegations and Otherwise Fails the Plausibility Test............... 12

                1.      Plaintiffs' Amended "Fraudulent Part" Allegations Largely Mirror
                        their Doomed "Misbranding" Allegations, and Should be
                        Dismissed and Stricken. ............................................................... 12

                2.      The Few Claims Where Plaintiffs Actually Allege Something
                        More Than Mere Misbranding Do Not Meet the Reasonable
                        Consumer Test. ............................................................................. 14

        D.      Plaintiffs' ECJ Allegations Improperly Require Interpretation of FDCA
                Provisions Within the Primary Jurisdiction of the FDA. ............................. 16

VI.     CONCLUSION ................................................................................................. 18

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

i

1

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

# TABLE OF AUTHORITIES

Page(s)

CASES

*A/P Hotel, LLC v. Lehman Bros. Holdings, Inc.*,
    2010 WL 5100917 (D. Nev. Dec. 8, 2010)..................................................................7

*All One God Faith, Inc. v. Hain Celestial Grp., Inc.*,
    No. C 09-3517 SI, 2012 WL 3257660 (N.D. Cal. Aug. 8, 2012)...........................18

*Allen v. Wright*,
    468 U.S. 737 (1984)..................................................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................3, 4, 15, 16

*Astiana v. Hain Celestial Grp., Inc.*,
    905 F. Supp. 2d 1013 (N.D. Cal. 2012) ................................................................17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................4

*Buckman Co. v. Plaintiffs' Legal Committee*,
    531 U.S. 341, 353 (2001)........................................................................................12

*Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*,
    217 F. Supp. 2d 1028 (C.D. Cal. 2002) ..................................................................4

*Carney v. Verizon Wireless Telecom, Inc.*,
    No. 09cv1854, 2010 WL 1947635 (S.D. Cal. May 13, 2010) ................................10

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
    No. 11-15263, 2012 WL 1131526 (9th Cir. Apr. 5, 2012) ....................................14

*Chacanaca v. Quaker Oats Co.*,
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ......................................................5, 6, 7, 8

*Delacruz v. Cytosport*,
    No. C 11-3532 CW, 2012 WL 2563857 (N.D. Cal. June 28, 2012)...............6, 7, 15

*Durrell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350, 108 Cal. Rptr. 3d 682 (2010)............................................9

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517, 114 S.Ct. 1023,
    127 L. Ed. 2d 455 (1994)........................................................................................4

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ...........................................................................................9

*Gordon et al. v. Church & Dwight, Co.*,
    No. C 09-5585 PJH, 2010 WL 1341184 (N.D. Cal. Apr. 2, 2010)..........................17

*Hood v. Wholesoy & Co.*,
    No. 4:12cv5550 (N.D. Cal. July 12, 2013) ....................................................2, 17

*In re Medtronic*,
    623 F.3d 1200 (8th Cir. 2010) ...............................................................11, 12

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ..............................................................5, 9, 10

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) ..............................................................5, 6, 9

*Lavie v. Proctor & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ......................................................14, 15

*Leadsinger, Inc. v. BMG Music Publishing*,
    429 F. Supp. 2d 1190 (C.D. Cal. 2005) ...................................................4

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).............................................................................4, 5

*McKinnis v. Sunny Delight Beverages, Co.*,
    No. 07-02034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ...............................14

*National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals*,
    107 Cal. App. 4th 1336 (Cal. Ct. App. 2003) ...........................................13

*Perez v. Nidek Co., Ltd.*,
    711 F.3d 1109 (9th Cir. 2013) ....................................................10, 11, 13

*Pom Wonderful LLC v. Coca Cola Co. et al.*,
    No. CV 08–06237 SJO, 2013 WL 543361 (C.D. Cal. Feb. 13, 2013) ...................17

*Pom Wonderful LLC v. Coca-Cola Co.*,
    679 F.3d 1170 (9th Cir. 2012) ....................................................................16

*Princess Cruise Lines, Ltd. v. Sup. Ct.*,
    179 Cal. App. 4th 36 (2009) .......................................................................5

*Rissetto v. Plumbers & Steamfitters Local 343*,
    94 F.3d 597 (9th Cir. 1996) .......................................................................8

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .....................................................................7

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

iii

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ...................................................................7

*Sugawara v. Pepsico, Inc.*,
    No. 08-1335, 2009 WL 1439115 (E.D. Cal. May 21, 2009) ......................15

*Telesaurus VPC, LLC v. Power*,
    623 F.3d 998 (9th Cir. 2010) ......................................................................4

*Tourgeman v. Collins Fin. Servs., Inc.*,
    CV 01392, 2009 WL 6527758 (S.D. Cal. Nov. 23) .....................................8

*United States v. El-O-Pathic Pharmacy*,
    192 F.2d 62 (9th Cir. 1951) ......................................................................13

*Videtto v. Kellogg USA*,
    No. 08-1324, 2009 WL 1439086 (E.D. Cal. May 21, 2009) ......................14

*Williams v. Gerber Prod. Co.*,
    552 F.3d 934 (9th Cir. 2008) .................................................................9, 14

*Wilson v. Frito-Lay North America, Inc.*,
    No. 12-1586, 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013) ..........................7

STATUTES

21 U.S.C. § 343-1(a) ..........................................................................................14

21 U.S.C. § 343-1(a)(4)-(a)(5) ...........................................................................10

Cal. Bus. & Prof. Code § 17204 ...................................................................5, 9, 10

Cal. Bus. & Prof. Code § 17508 .........................................................................13

Cal. Bus. & Prof. Code § 17535 ...........................................................................5

Cal. Civ. Code § 1780(a) ......................................................................................5

FDCA .............................................................................................................passim

OTHER AUTHORITIES

21 C.F.R. § 101.9(c)(2)(ii) ....................................................................................6

21 C.F.R. § 101.13(h)(1) ........................................................................................7

21 C.F.R. § 182.3890 ...........................................................................................15

21 C.F.R. § 184.1165 ...........................................................................................16

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

iv

21 C.F.R. § 184.1655 ...................................................................................................16

5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (1990) ..............4

Fed. R. Civ. P. 12(b)(6)..............................................................................................3

Fed. R. Civ. P. 12(f) ...................................................................................................4

Fed. R. Civ. P. 12(f)(1) ...............................................................................................4

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA  94111-5802**

COSTCO'S AMENDED MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT
CASE NO. 5:12-CV-02908-EJD-PSG

## MEMORANDUM OF POINTS & AUTHORITIES

### I.    SUMMARY OF ARGUMENT

Plaintiffs have now attempted three times to plead actionable consumer fraud in connection with their Costco Kirkland Signature brand purchases.  After this Court's order granting Costco's last motion to dismiss ("Order"),[1] Plaintiffs  amended their complaint again (now their Second Amended Complaint ["SAC"]), and attempted to state with more clarity which products Plaintiffs purchased, which labels Plaintiffs read and relied upon, and how those labels allegedly were deceptive.  (Order at 14.)  Plaintiffs' amendment shows that for most of the products at issue, Plaintiffs did not rely on the labels and were not "deceived" by those labels they allegedly read.

Unable to even *plead* the required reliance and deception, Plaintiffs came up with a novel, "two-faceted" theory of consumer fraud.  The "first facet," which Plaintiffs dub the "unlawful part," alleges Plaintiffs need not have reviewed or relied on any of the labels at issue: each came with an "implied" representation of compliance with FDA regulations, so any alleged violation results in state consumer-fraud liability.  The Ninth Circuit has already reviewed and rejected this theory in the context of the FDCA, and it should be rejected here.  The theory also runs afoul of California consumer law, which plainly requires allegations of deception and reliance for consumer fraud liability.

The "second facet" of Plaintiffs' SAC – "the fraudulent part" – fares no better.  Most of it simply continues to rely on nothing more than the supposed "implied representation" that all available products comply with all FDA regulations in all particulars.  And the small portions of the SAC that at least try to allege a label misrepresentation are so facially inadequate that the court should determine no reasonable consumer would be misled by the supposed misrepresentation.

Moreover, Plaintiff Thomas, who purchased the Kirkland Signature Kettle Chips, has attempted to re-plead her claims – notwithstanding this Court's order that she lacks standing.  Thomas has not cured and cannot cure the defects the Court identified and her claims again should be dismissed, this time with prejudice.

---

[1] Plaintiffs voluntarily amended after Costco filed its first motion to dismiss.  See First Amended Complaint, filed September 28, 2012.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Finally, Plaintiffs rely on FDA **guidance** to support their allegations related to the evaporated cane juice ingredient ("ECJ") in the Kirkland Reduced Fat Chocolate Milk.  A Northern District court recently declined to interpret the as-yet undecided ECJ standard because it would "usurp the FDA's interpretative authority."  *Hood v. Wholesoy & Co.*, No. 4:12cv5550 (Dkt. #31) (N.D. Cal. July 12, 2013).  Plaintiffs' ECJ allegations here are virtually identical and should be dismissed.

Since Plaintiffs' third attempt to satisfy their pleading obligations has failed, Costco respectfully requests the Court grant this motion to dismiss with prejudice.

## II.    STATEMENT OF ISSUES

1.    Did Plaintiff Karen Thomas cure the standing deficiencies identified in the Court's order granting Costco's motion to dismiss?

2.    Can Plaintiffs avoid preemption and California's consumer-fraud requirements by creating an "implied" representation that all products comply with FDA regulations?

3.    Have Plaintiffs satisfied the reasonable consumer test required under the UCL, such that their claims are plausible under applicable motion to dismiss standards?

4.    Does the Amended Complaint contain allegations that allows private plaintiffs to enforce regulations of the FDCA and resolve questions that fall within the primary jurisdiction of the FDA?

## III.    THE COURT'S ORDER GRANTING COSTCO'S MOTION TO DISMISS AND PLAINTIFFS' AMENDED ALLEGATIONS IN RESPONSE

On April 9, 2013, this Court granted Costco's motion to dismiss. (DE 58.)  The claims of Plaintiff Thomas, who purchased only Kirkland Signature Kettle Chips, were dismissed for lack of standing.  Specifically, the Court found that Plaintiff Thomas failed to allege that the representations regarding "No Trans Fat" or "0 grams trans fat" were misleading, i.e., that the product "actually contained any amount of trans fat."  (Order at 7.)  The Court further ruled that Plaintiff Thomas did not meet the injury-in-fact requirement "because she has not asserted that she received a product different from the one as labeled."  (*Id.*)  And she did not meet the "causation" prong of standing because she admitted that she read the label and thus was aware of the contents of the Kettle Chips.  (*Id.*)

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1    The Court also held that both Plaintiffs failed to comply with Rule 9 by failing to state their

2    claims for false or deceptive advertising with particularity: "Plaintiffs are required to aver with

3    particularity the specific circumstances surrounding the alleged mislabeling, which give rise to their

4    claims." (*Id* at 9.) The Order suggested Plaintiffs identify, among other things, which parts of the

5    labeling they read, how they relied on the statements and which language on the labeling constitutes

6    the misrepresentations. (*Id.* at 13.)

7    Rather than identify label statements that constitute the alleged misrepresentations, Plaintiffs'

8    SAC takes a different tact. In a self-described "first facet" of their case (SAC ¶ 3), Plaintiffs allege

9    that the labels are misleading not because they are false, but solely because they allegedly are

10   "misbranded" under FDA regulations and the corresponding regulations in California's Sherman

11   Law. (SAC ¶¶ 39-113, 237-247.) Plaintiffs allege that Costco's labels are accompanied by an

12   "implied representation" of compliance with FDCA standards. (*See e.g.*, SAC ¶¶ 51, 56, 57, 65.)

13   And for most labels, Plaintiffs assert Costco's failure to live up to this "implied" representation –

14   without more – creates state law liability. (See SAC, Sections A-D at 12-28.) For a few of their

15   claims, Plaintiffs have alleged the actual wording of the labels is misleading and that Plaintiffs relied

16   on the wording itself. (See SAC, Sections E-I at 28-46.) Plaintiffs refer to these allegations as the

17   "fraudulent part" of their case. While these claims at least attempt to plead consumer-fraud

18   elements, both facets fail, as discussed below.

19   **IV.    LEGAL STANDARDS FOR MOTIONS TO DISMISS AND STRIKE**

20   Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a

21   complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

22   For a complaint to adequately state a claim for relief, a plaintiff must allege enough facts to render

23   the claim facially plausible, not just conceivable. "To survive a motion to dismiss, a complaint must

24   contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

25   face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) "While a complaint . . . does not need detailed

26   factual allegations . . . a plaintiff's obligation to provide the grounds of his entitlement to relief

27   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

28   action will not do. Factual allegations must be enough to raise a right to relief above the speculative

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

3

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotation marks and citations omitted); *see also Iqbal*, 556 U.S. at 663 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Although a motion to dismiss may be granted with leave to amend, leave to amend is not required where "any amendment would be futile." *See Leadsinger, Inc. v. BMG Music Publishing*, 429 F. Supp. 2d 1190, 1197 (C.D. Cal. 2005). Leave to amend is also not required where plaintiffs have failed to cure deficiencies in their complaint after having multiple opportunities to do so. *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

Under Rule of Civil Procedure 12(f), a court may also strike allegations from a complaint that are "redundant, immaterial, impertinent, or scandalous," and the Court has considerable discretion in deciding whether to strike such allegations. *See* Fed. R. Civ. P. 12(f)(1); *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (whether to grant a motion to strike is within the sound discretion of the trial court). An "immaterial" matter is one that has no essential or important relationship to the claim for relief or the defenses being pleaded. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07 (1990)), *rev'd on other grounds*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Additionally, an "'impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id*.

As set forth below, Costco moves to dismiss the first cause of action, the claims pled based on labeling described in the SAC's Subsections A-D and the claims based on labels described in the SAC's Subsections E-I. The allegations relating to the "first facet" claims should also be stricken, as should the irrelevant FDA "reasonable" standards in the SAC's paragraph 18.

## V.   ARGUMENT

### A.   Plaintiff Thomas Has Not and Cannot Cure the Standing Defects Identified in the Court's Dismissal Order.

Article III of the Constitution "requires a litigant to have 'standing' to invoke the power of a federal court." *Allen v. Wright*, 468 U.S. 737, 750-51 (1984). To satisfy Article III's standing requirement, a plaintiff must show an "injury-in-fact," causation, and redressability. *Lujan v.*

4

1   *Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992).  Similarly, under the UCL, FAL, and CLRA, a

2   plaintiff must establish the he or she suffered an "injury-in-fact" and "has lost money or property" ***as***

3   ***the result*** of a defendant's alleged conduct.  Cal. Bus. & Prof. Code §§ 17204; 17535; Cal. Civ.

4   Code § 1780(a); see also *In re Tobacco II Cases*, 46 Cal. 4th 298, 314 (2009).  Moreover, for

5   plaintiffs asserting UCL, FAL, and CLRA claims, courts require actual reliance by plaintiffs.  *See,*

6   *e.g., Tobacco II*, 46 Cal. 4th at 326 (actual reliance required for claims under UCL fraud prong);

7   *Princess Cruise Lines, Ltd. v. Sup. Ct.*, 179 Cal. App. 4th 36, 41-42 (2009) (reliance required for

8   UCL, FAL, and CLRA claims).  This Court already has held that Thomas lacks two of the essential

9   elements of standing:  (1) injury-in-fact, and (2) causation.  The Second Amended Complaint has not

10  and cannot resolve either shortcoming.

### 1.    Thomas's Purchase Caused No Injury-in-Fact.

12       "Injury in fact" requires alleging "an invasion of a legally protected interest which is concrete

13  and particularized and actual or imminent, not conjectural or hypothetical."  *Id.* at 560 (citations and

14  internal quotation marks omitted).  The UCL and FAL incorporate the Article III standing

15  requirements, but additionally require that the plaintiff plead an economic injury.  *Kwikset Corp. v.*

16  *Super*. Ct., 51 Cal. 4th 310, 322-23 (2011).  Under the UCL and FAL, a plaintiff suffers an injury-in-

17  fact where he or she has: "(1) expended money due to the defendants acts of unfair competition; (2)

18  lost money or property; or (3) been denied money to which he or she has a cognizable claim."

19  *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010).  To satisfy the injury-

20  in-fact requirement for unfair competition claims, "courts in California require that plaintiffs

21  demonstrate the purchase of products as a result of deceptive advertising."  *Id*.

22       In support of her claim for standing in the First Amended Complaint, Thomas asserted that

23  she "would not have purchased the products at issue had the products been properly labeled in

24  accordance with the California labeling requirements or had [she] known the truth about these

25  products."  (Order at 6.)  But as this Court explained, these claims were "belied by assertions" in the

26  First Amended Complaint:

27           Thomas' causes of action apparently involve her purchase of Kirkland
             Signature Kettle Chips containing representations of "No Trans Fat" or "0
28           grams trans fat" on the labeling.  However, she fails to sufficiently allege that

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

5

these representations were untruthful or misleading, which would be required for standing in this situation.  See Kwikset 51 Cal.4th at 326-27.  Plaintiff Thomas does not allege that the product in question actually contained any amount of trans fat, which would be contrary to the assertions on the label.  Because she has not asserted that she received a product different from the one as labeled, she has not met the injury-in-fact requirement for standing.  See Delacruz v. Cytosport, No. C 11-3532 CW, 2012 WL 2563857, at *8 (N.D. Cal. June 28, 2012) (dismissing a similar claim based on a "0g Trans Fat" labeling because Plaintiff "does not claim that the statement misrepresented the amount of trans fat in the [product]" and therefore the statement "does not amount to a false statement or misrepresentation and, thus, is not an actionable claim").

(Order at 7.)  Disregarding the shortcomings found by the Court, Thomas filed a Second Amended Complaint simply repackaging the rejected allegations of the First Amended Complaint.  (SAC ¶¶ 114-133.)  Once again, Thomas bases her claims solely on the "No Trans Fat" representation on the front label of Kirkland Signature Kettle Chips (SAC ¶ 22).  And once again, Thomas "does not allege that the product in question actually contained any amount of trans fat, which would be contrary to the label." (Order at 7.)  Thomas also does not assert "that she received a product different from the one as labeled." (Id.)  Instead, Thomas includes again the FAC's allegation that (apparently despite reading the indisputably accurate labels) she was "misled" into believing the potato chips only made positive contributions to her diet (FAC 166), and that they did not contain total fat at the higher levels (see SAC ¶ 33).  But this allegation is the same the plaintiffs tried and failed in Cytosport, the factually indistinguishable case the Order cited in dismissing Thomas' claims.  Cytosport, 2012 WL 2563857, at *8 ("Rather, she alleges that the '0 g Trans Fat" statement distracts consumers from the product's unhealthy fat and saturated fat content.  The alleged distraction, however, does not amount to a false statement or misrepresentation and, thus, is not an actionable claim.").

Perhaps recognizing this, Plaintiffs' SAC cites two trans fat cases issued before this Court's Order dismissing her claims.  (SAC ¶ 131.)  Neither supports Plaintiffs' claims here.  In the first, Chacanaca v. Quaker Oats Company,  the plaintiff argued that a "0 grams trans fat" statement was misleading because the product in fact contained small amounts of trans fat.  752 F. Supp. 2d 1111, 1119-20 (N.D. Cal. 2010).  The FDCA, however, requires that "[i]f the serving contains less than 0.5 grams [of trans fat], the content, when declared shall be expressed as zero."  21 C.F.R. §

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1    101.9(c)(2)(ii).  Since the state claim asserted was different than the federal standards, the "0 grams

2    trans fat" claim was preempted and dismissed.  Chacanaca, 752 F. Supp. 2d at 1119-21.  The second

3    case cited by Plaintiffs, *Wilson v. Frito-Lay North America, Inc.*, is equally inapposite, as that court

4    expressly stated that the trans-fat claims at issue there were distinguishable from those in *Cytosport*

5    (and, thus, here).  No. 12-1586, 2013 WL 1320468, at *14 (N.D. Cal. April 1, 2013).  As Judge

6    Conti explained,  "[i]n *Delacruz* [v. *Cytosport*], this Court dismissed a plaintiff's claims as to a '0

7    grams Trans Fat' statement on a nutrition bar, holding that even though that statement ***was not***

8    ***accompanied by a 21 C.F.R. § 101.13(h)(1) disclosure of any sort,*** the statement was true, and the

9    distraction the statement posed relative to fat and saturated fact contents constituted neither a false

10   statement nor a misrepresentation."  *Frito-Lay*, 2013 WL 1320468, at *14 (emphasis added).  That is

11   precisely the claim asserted by Thomas in this action.  (SAC ¶¶ 114-33.)  *Frito-Lay*, on the other

12   hand, did have a disclosure statement, but one that Judge Conti found would lead reasonable

13   consumers "to think that the statements on the labels make accurate claims about the labeled

14   products' nutritional content when, in fact, they do not."  *Id*. at *14 (emphasis added).

15             This Court correctly dismissed Thomas' claims from the First Amendment Complaint and its

16   reasoning applies equally to the SAC.  Thomas purchased Kirkland Signature Kettle Chips expecting

17   them to contain "No Trans Fat" as represented on the front of the label, and that expectation was

18   met.  "Because she has not asserted that she received a product different from the one as labeled, she

19   has not met the injury-in-fact requirement for standing."  (Order at 7, citing *Delacruz v. Cytosport*,

20   No. C 11-3532 CW, 2012 WL 2563857, at *8 (N.D. Cal. June 28, 2012).)

21             **2.      Thomas Did Not Sufficiently Allege Causation.**

22             Thomas further lacks standing – still – because she has failed to plead causation.  A plaintiff

23   can plead herself out of court by making factual allegations contrary to the elements of her claims.

24   *See, e.g., Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Steckman v.*

25   *Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998); *A/P Hotel, LLC v. Lehman Bros.*

26   *Holdings, Inc.*, 2010 WL 5100917, at *2 (D. Nev. Dec. 8, 2010).  Thomas's "No Trans Fat" claim is

27   premised on the assumption that a consumer who reads the "No Trans Fat" statement, but does not

28   see an instruction to "See nutritional information for fat content," would not read the back panel, but

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

7

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1 would instead rely on the "No Trans Fat" statement as the definitive source of information regarding

2 the overall nutritional value of the chips.  The statement had no such effect on Thomas, who twice

3 admitted that she "read the labels on [the chips] . . . before purchasing them."  (Compl. ¶ 56; FAC ¶

4 166.)  Because Thomas did the very thing that the label is purported to mislead consumers into not

5 doing, there is no causal connection between the alleged unlawful activity and alleged harm.  *See*

6 *Tourgeman v. Collins Fin. Servs., Inc.*, CV 01392, 2009 WL 6527758, at *8 (S.D. Cal. Nov. 23).

7          In its Order dismissing the first amended complaint, this Court confirmed that Thomas lacked

8 standing on this basis:

> Moreover, the causation prong of standing is missing from Thomas'
> allegation in that she admits to having "read the labels on the [Kettle
> Chips] . . . before purchasing them."  See Am. Compl. ¶ 166.
> Therefore, she was aware of the trans fat content of the chips—which
> was 0 grams, confirming the "no trans fat" claim on the label—as well
> as the content of other types of fat (e.g. saturated fat, polyunsaturated
> fat, monounsaturated fat), all of which was clearly stated on the
> labeling of the product she purchased.  See Am. Compl. Ex. 1. For
> these reasons, Plaintiff Thomas' claims will be dismissed for lack of
> standing. See Chacanaca, 752 F. Supp. 2d at 1125 ("[C]ourts in
> California require that plaintiffs demonstrate the purchase of products
> as a result of deceptive advertising.").

16          (Order at 7.)  Despite this Court's holding that Thomas lacked standing because she admitted

17 to having "read the label" before purchasing the chips, Thomas filed the SAC which at no point

18 disclaims this blanket admission.  (*See* SAC ¶133) (Thomas reiterates that she read the challenged

19 "front of package statement 'No Trans Fat,'" but at no point disclaims her previous blanket

20 admission of "read[ing] the label.").)  Nor could she disclaim it, as plaintiffs are judicially estopped

21 from asserting allegations contradicting those previously alleged.  *See Rissetto v. Plumbers &*

22 *Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996).

23          Because Plaintiff Thomas has not and cannot cure the standing defects related to her Kettle

24 Chips purchase described in the Court's Order, and because her only claims relate to the Kettle

25 Chips purchase, all her claims should be dismissed with prejudice.

26      **B.      The SAC's "First Facet" – "the Misbranding Part" – Fails As a Matter of Law**

27          **1.      Plaintiffs' "Misbranding Part" of Their Case Flies in the Face of
                      Proposition 64 and Established Caselaw: There is No Strict Liability
28                    under the UCL's Unlawful Prong.**

8

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1    Plaintiffs obviously hope their "unlawful part" (*i.e.*, the SAC's "first facet") will avoid their

2    need to plead and prove deception and reliance.  (SAC at ¶3).

3        This "misbranding" -- standing alone without any allegations of
         deception by Defendant or reliance on the labels by Plaintiffs – give
4        rise to Plaintiffs' first cause of action under the UCL. To state a claim
         under the unlawful prong, Plaintiffs need only allege that they would
5        not have purchased the product had they known it was misbranded
         because they would have a product that is illegal to own or possess.
6

7    (*Id.*)  Based on this premise, the SAC later includes a first cause of action under the UCL's unlawful

8    prong (SAC ¶¶ 237-47), conspicuously devoid of deception or reliance allegations.

9        Plaintiffs cannot avoid the UCL's pleading requirements under their unlawful prong for

10   allegedly deceptive advertising.  California voters intended to require Plaintiffs prove reliance and

11   economic harm – without regard to "prongs"-- when they passed Proposition 64, which limits a

12   private right of action under the UCL to persons who "suffered injury in fact and ha[ve] lost money

13   or property *as a result of* the unfair competition."  Cal. Bus. & Prof. Code § 17204 (emphasis

14   added).  "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a

15   showing of a causal connection or reliance on the alleged misrepresentation."  *Kwikset Corp. v.*

16   *Super. Ct.*, 51 Cal. 4th 310, 326 (2011).  A plaintiff may rely on an inference of reliance only where

17   there is a showing that a misrepresentation was material.  *Tobacco II Cases*, 46 Cal. 4th at 326.  "A

18   misrepresentation is judged to be material if a reasonable man would attach importance to its

19   existence or nonexistence in determining his choice of action in the transaction in question

20   [citations], and as such materiality is generally a question of fact unless the fact misrepresented is so

21   obviously unimportant that the jury could not reasonably find that a reasonable man would have

22   been influenced by it. [Citation.]"  *Id.* (citations and internal quotation marks omitted).  In other

23   words, to state a claim based on misrepresentation, a statement must be likely to deceive a

24   reasonable consumer.  *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008);

25   *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).

26       And contrary to the SAC's novel "first facet," the requirements regarding causation, reliance,

27   materiality, and deception apply under the unlawful prong of the UCL as well as under the other

28   UCL prongs and the CLRA.  *Durrell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363, 108 Cal.

9

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1    Rptr. 3d 682 (2010) ("Construing the phrase 'as a result of' in Business and Professions Code

2    section 17204 in light of Proposition 64's intention to limit private enforcement actions under the

3    UCL, we conclude the reasoning of *Tobacco II* applies equally to the 'unlawful' prong of the UCL

4    when, as here, the predicate unlawfulness is misrepresentation and deception."); *Carney v. Verizon*

5    *Wireless Telecom, Inc.*, No. 09cv1854, 2010 WL 1947635, at *3 (S.D. Cal. May 13, 2010) (finding

6    that a plaintiff must show actual reliance regardless of whether the claim arises under the 'unfair,'

7    'unlawful' or 'fraudulent' prong of a UCL claim based on misrepresentations).

8         Plaintiffs' attempt to mask their lack of deception and reliance -- by making a new per se

9    theory of liability under the UCL -- should be rejected.  Plaintiffs' first cause of action should be

10   dismissed and the allegations pertaining to the SAC's "first facet" stricken.[2]

11             **2.    Even if California Law Allowed Plaintiffs' Ill-Fated "First Facet," It Is**
                       **Preempted.**
12

13        As Plaintiffs' acknowledge, their first facet rests on nothing more than alleged misbranding:

14   "Plaintiffs need only allege that they would not have purchased the product had they known it was

15   misbranded because they would have a product that is illegal to own or possess."  (SAC ¶ 3)  Since

16   Plaintiffs "did not know, and had no reason to know" that the products were misbranded, Plaintiffs

17   apparently believe state law provides a remedy on this basis alone (SAC ¶ 7).  Recently, other FDCA

18   plaintiffs have tested this theory -- under the Medical Device Amendment sections of the statute --

19   and the Ninth Circuit held their claims preempted.  *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109 (9th Cir.

20   2013).  Since the Nutrition Labeling and Education Act  ("NLEA") Amendment to the FDCA

21   contains the very same preemption provisions, Plaintiffs' claims here are similarly preempted.  (*See*

22   21 U.S.C. § 343-1(a)(4)-(a)(5) ["No state . . . may directly or indirectly establish . . . any requirement

23   for the nutrition labeling of food that is not identical to the requirement of section 343(q) . . . [and/or]

24   . . . any requirement respecting any claim of the type described in section 343(r)(1) of this title, made

25   in the labeling of food that is not identical to the requirement of section 343(r)."].)

26        In *Perez*, the plaintiffs sought state law remedies against a manufacturer and group of doctors

27   who used a medical device for a particular LASIK eye surgery.  The plaintiffs alleged that although

28   _____
     [2] For a list of such allegations, see Notice of Motion and Motion.
                                          10

1    they did not know it at the time, the FDA had not approved the device for that particular surgery.

2    Plaintiffs further alleged that had they known the laser lacked FDA approval for that purpose, they

3    would not have consented to the surgeries.  As the Ninth Circuit described Plaintiffs' theory:

4    "defendants misled the proposed class by failing to disclose that the Laser was not FDA approved

5    for hyperoic surgeries, even though Nidek and the doctors knew or should have known that the

6    proposed class members believed the Laser was FDA approved for such surgeries."  *Id*. at 1117.

7          The Ninth Circuit struck all of Perez's claims on express and implied preemption grounds.

8    The court examined the preemption provisions of the Medical Device Amendment to the FDCA –

9    which mirror the preemption provisions of the NLEA Amendment to the FDCA at issue here.  It

10   then recognized that under those provisions, where state-law duties "parallel" the federal duties, the

11   state claim is not preempted.  However, claims "in addition to" or "different from" the federal

12   requirements are preempted (*id*. at 1118), dooming Perez's claims.  First, express preemption was

13   "obvious" because Perez "seeks to write a new provision into the FDCA: that physicians and

14   medical device companies must affirmatively tell patients when medical devices have not been

15   approved for a certain use."  *Id*. at 1118-1119.  The claims also were impliedly preempted, since

16   Perez's claim rested solely on failure to disclose lack of FDA approval and Congress empowered the

17   FDA to punish and deter fraud against the Administration.  *Id*. at 1119 .  In concluding its opinion,

18   the Ninth Circuit observed the "narrow gap" for state-law claims to escape preemption by the

19   FDCA:  "The plaintiff must be suing for conduct that violates the FDCA (or else his claim is

20   expressly preempted)…, but the plaintiff must not be suing because the conduct violates the FDCA

21   (such a claim would be impliedly preempted)."  *Id*. at 1120, citing *In re Medtronic*, 623 F.3d 1200,

22   1204 (8th Cir. 2010).

23         Plaintiffs' newly minted "second facet" -- devoid of any actual deception or reliance and

24   relying solely on FDCA violations – does not squeeze into that gap.  Nothing in the FDCA requires

25   companies to disclose whether their products meet FDA particulars, which would essentially

26   guarantee their products comply with every detail in every FDCA regulation.  No such requirement

27   exists in the Medical Device Amendment of the FDCA or in the NLEA Amendment of the FDCA,

28   so such claims are "in addition to" the FDCA requirements and preempted.  As Perez noted, not

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

11

1   every violation of the FDCA will support a state-law claim.  *Id*. at 1119-20, citing *Buckman Co. v.*

2   *Plaintiffs' Legal Committee*, 531 U.S. 341, 353 (2001) (rejecting "the proposition that any violation

3   of the FDCA will support a state-law claim.").  But Plaintiffs' theory, if accepted, would do just that,

4   by boot strapping any and every purported FDCA labeling violation – no matter how minor and even

5   if no one was misled or even read the label – into a state consumer fraud claim.[3]

6   **C.    Plaintiffs' "Second Facet"– the "Fraudulent Part" –Lacks the Required**
        **Deception/Reliance Allegations and Otherwise Fails the Plausibility Test**

7

8       Although Plaintiffs describe the "fraudulent part" of their case as including the required

9   elements from the consumer protection statutes, this is true for only some of the labels at issue.  For

10  many, Plaintiffs' "fraudulent" allegations are nothing more than a repeat of their claim that the

11  products are misbranded, without any allegation that the labels actually are misleading or anyone

12  relied on their wording.  (SAC Subsections A-D.)  Instead, Plaintiffs allegedly *believed* (not based

13  on anything Costco said or did) that each product complied with every particular of the FDA

14  regulations.  And since the labels at issue allegedly did not comply with every particular, Plaintiffs

15  were damaged.  As discussed below, although Plaintiffs describe these allegations as their

16  "fraudulent part," they are no different than the "misbranding part" allegations and should similarly

17  be dismissed and stricken.

18      Other of Plaintiffs' "fraudulent" allegations do at least set forth a purportedly misleading

19  label.  (SAC Subsections E-I.)  While these claims can more fairly be described as falling into a

20  "fraudulent part" bucket, they necessarily fail since no reasonable consumer would make purchasing

21  decisions in the way Plaintiffs allege they made theirs.

22      **1.    Plaintiffs' Amended "Fraudulent Part" Allegations Largely Mirror their**
             **Doomed "Misbranding" Allegations, and Should be Dismissed and**
23           **Stricken.**

24      As the Court ordered them to, Plaintiffs segregated the labels at issue and described, for each,

25

26  ───────────────
    [3] Plaintiffs' own complaint shows the fallacy of allowing such claims.  One of the requirements
    described in the SAC deals with font size.  (SAC at 18 n. 1 [Noting that when the term "antioxidant"
27  is linked to a symbol (such as an asterisk) that also appears elsewhere on the package to list particular
    nutrients, "the list of nutrients must appear in letters of a type size height no smaller than the larger
    of one half the type size of the largest nutrient content claim or 1/16 inch."].)  Under Plaintiffs'
28  theory, the wrong font size, "standing alone" (SAC ¶ 3) would create consumer-fraud liability.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1   in what way it allegedly was misleading.  (Order at 9-14.)  The SAC used subsections (lettered A

2   through I), and after setting forth mini-tomes on FDA regulations relating to each, described "the

3   particular statements Plaintiffs allegedly relied on when making their purchases."  (Order at 9.)  The

4   allegations in many of the subsections – particularly subsections A through D (SAC ¶¶ 29-113) --

5   reveal that Plaintiffs did not rely on anything Costco said or did.  Instead, Plaintiffs seek to avoid the

6   deception and causation elements required for their claim and hinge all claims for those labels on

7   misbranding alone.  As described above, without allegations that the labels were somehow

8   misleading and damaging under the consumer-statute standards, Plaintiffs' claims fail to comply

9   with Proposition 64 and are preempted under *Perez*.

10         For instance, in Subsections A-D (SAC ¶¶ 29-113), Plaintiffs do not allege that anything

11   Costco actually represented was misleading, and acknowledge they did not rely on any

12   representation Costco actually made.  Instead, Plaintiffs relied on "implicit representations" Costco's

13   products met "regulatory muster."  (SAC, ¶ 110).  First, for nutrient and antioxidant content claims

14   (SAC Subsections A-B), Plaintiffs allege reliance on the "implied representation that [the] product []

15   met the minimum nutritional threshold to make [the content] claims"  (SAC, ¶ 57 61, 65).  The

16   "misleading" conduct was not any falsity in the content claims themselves (since the products in fact

17   contained the level of ingredients cited), but Plaintiffs' "belief" that the products satisfied the FDA's

18   "minimum nutritional requirement."   (*Id*.)  So, for instance, Plaintiffs do not allege the claim that

19   grape juice and blueberries are an "excellent" source of antioxidants is false—or that cashew clusters

20   in fact do not "contain oleic acid" or constitute a "good source" of fiber and protein as represented.

21   Nor do Plaintiffs claim the "no sugar added" statements on the fruit slices and carrot juice are not

22   true: the products are simply "misbranded."  (SAC ¶¶ 75-92.)  The same is true for the cashew

23   clusters' "health" claims.  (SAC ¶¶ 93-113).[4]   For each of these labels, Plaintiffs allege they "did

---

[4] In their health claims subsection, Plaintiffs' attempt to bolster their "misbranding part" by alleging
the claims lack sufficient scientific substantiation.  These allegations are plainly barred by *National
Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals*, 107 Cal. App. 4th 1336, 1343
(Cal. Ct. App. 2003) (holding that, because "Business and Professions Code section 17508
establishes an administrative procedure whereby prosecuting authorities may require an advertiser to
substantiate advertising claims," private persons do not have a right to demand substantiation).
The SAC states an entirely different standard, the one used by the FDA.  (SAC ¶ 18, citing *United
States v. El-O-Pathic Pharmacy*, 192 F.2d 62 (9th Cir. 1951) (government suit to enjoin sale of
relabeled hormone products). ) No known court has adopted that standard for the consumer fraud

13

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1  not know, and had no reason to know, that [the] product[s] were misbranded." (SAC ¶ 90).  But

2  Costco made no representation about the branding of its products, and nothing in the FDCA requires

3  companies guarantee their products in that way.  Plaintiffs' repeated attempts to impose such a

4  requirement is therefore "in addition to" and "different from" the FDCA obligations and preempted.

5  See 21 U.S.C. § 343-1(a).

6       **2.**    **The Few Claims Where Plaintiffs Actually Allege Something More Than Mere Misbranding Do Not Meet the Reasonable Consumer Test.**

7

8       Even where Plaintiffs points to more than alleged misbranding as the basis of their claims

9  (SAC Subsections E-I), they fall far short of alleging actionable misrepresentations.  As stated

10  above, to be actionable under the UCL, FAL, or CLRA, a statement must be likely to deceive a

11  reasonable consumer.  *See Williams v. Gerber Prod. Co., supra*, 552 F.3d at 938.   While the

12  reasonable consumer "may be unwary or trusting," she is not the "least sophisticated consumer."

13  *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 506-07 (2003).  "'Likely to deceive' implies

14  more than a mere possibility that the advertisement might conceivably be misunderstood by some

15  few consumers viewing it in an unreasonable manner."  *Id*. at 508.  Rather, the advertisement must

16  be "such that it is probable that a significant portion of the general consumer public or of targeted

17  customers, acting reasonably in the circumstances, could be misled."  *Id*. at 508.

18       Courts routinely dismiss claims under the UCL, FAL, and CLRA where the alleged

19  misrepresentations are not likely to deceive a reasonable consumer.  *See, e.g., Carrea v. Dreyer's

20  Grand Ice Cream, Inc.*, No. 11-15263, 2012 WL 1131526 (9th Cir. Apr. 5, 2012) (dismissal where

21  reasonable consumer would not be misled by the terms "Original" and "Classic"); *McKinnis v.

22  Sunny Delight Beverages, Co.*, No. 07-02034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007), at *5

23  (fruit names and depictions of assorted fruits on the packaging of SunnyD, which allegedly contains

24  only a negligible amount of fruit, unlikely to deceive a reasonable consumer); *Videtto v. Kellogg

25  USA*, No. 08-1324, 2009 WL 1439086, at *2-3 (E.D. Cal. May 21, 2009) ("Froot" in product name

26

27  statutes Plaintiffs sue under, which would be contrary to established law requiring  evaluation of UCL, FAL and CLRA cases under the standards discussed herein.  Plaintiffs' repeated attempts to

28  avoid California law requirements and rely on FDA standards alone only highlights their inability to state a claim.

1   and pictures of actual fruit not likely to deceive a reasonable consumer, even where product contains

2   no actual fruit); *Sugawara v. Pepsico, Inc.*, No. 08-1335, 2009 WL 1439115, at *2-4 (E.D. Cal.

3   May 21, 2009) (representations and images on Cap'n Crunch packaging unlikely to deceive a

4   reasonable consumer).  Similarly, this Court should dismiss Plaintiffs' claims regarding trans fat (to

5   the extent not dismissed for lack of standing), evaporated cane juice, preservatives, propellant, and

6   slack-filled products (Subsections E-I) because a reasonable consumer would not be deceived by the

7   representations at issue.

8          Plaintiff Thomas' allegations regarding trans fat are discussed above and will not be repeated

9   here. (*See also Cytosport, supra.*)  Plaintiff Liddle, who purchased the rest of the products at issue,

10  alleges she was misled by the term "evaporated cane juice," one of eight ingredients included in the

11  ingredient list for Kirkland Reduced Fat Chocolate Milk.  The Second Amended Complaint asserts

12  that "evaporated cane juice" is not the common or usual name for the sweetener in the milk (SAC ¶

13  142)  and that the appropriate names for the substance-at-issue are "sugar," "can syrup," or "dried

14  cane syrup."  (*Id.* ¶¶ 138, 140, 146.)  Liddle states that she read and relied on the inclusion of

15  "evaporated cane juice" in the ingredient list and that she would not have purchased the product had

16  the ingredients all been listed by their common and usual names.  (*Id.* ¶ 147.)  Like any consumer

17  who has read the Nutrition Facts panel to view the evaporated cane juice disclosure, Liddle was also

18  made aware that the chocolate milk contained 26 grams of sugar.  (SAC, Ex. 4.)  It is facially

19  implausible that Liddle would purchase milk with 26 grams of fat and one of the eight ingredients

20  listed as "evaporated cane juice," but would not have purchased this milk if only that ingredient was

21  listed as "dried cane syrup."  *See Iqbal*, 556 U.S. at 678.  And it is not at all "probable that a

22  significant portion of the general consumer public or of targeted customers, acting reasonably in the

23  circumstances, could be misled" by this alleged "misrepresentation."  *See Lavie* 105 Cal. App. 4th at

24  508.

25         With respect to Kirkland Ancient Grains Granola with Almonds, Liddle alleges that a

26  "Preservative Free" statement on the product label is untrue because "this product contain[s] the

27  chemical preservative tocopherols."  (Amended Complaint ¶ 182.)  Liddle cites an FDCA regulation

28  that includes chemical tocopherols in the FDA's list of "chemical preservatives."  21 C.F.R. §

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1   182.3890.  But, as reflected in Exhibit 7 of the Amended Complaint, Kirkland Granola does not

2   contain chemical tocopherols; rather, it contains **natural** tocopherols, which Liddle has not and

3   cannot allege to be preservatives.  (SAC, Ex. 9 ["tocopherols (natural vitamin E)."]  Liddle's claim

4   regarding this product, too, fails on its face for lack of an actionable misrepresentation.

5        Liddle's final labeling claim relates to the use and location of the word "propellant" on the

6   label of Kirkland Cooking Spray.  Liddle does not dispute that the cooking spray contains propellant;

7   rather she alleges that individual gas components of propellant should have been separately listed on

8   the label.  (SAC ¶¶ 148-167.)  A reasonable consumer would not rely on the wording, let alone the

9   location in the ingredient list, of substances the FDA has a affirmed that each of the components-at-

10  issue are "'generally recognized as safe' for use in food."  21 C.F.R. §§ 184.1165, 184.1655.

11       Perhaps recognizing the weaknesses in her allegations of allegedly deceiving statements,

12  Liddle adds a novel theory of liability, unrelated to *any* representation whatsoever.  Liddle claims

13  Kirkland Granola, Kirkland Blueberries, and Kirkland Cashew Clusters are "slack-filled" and that

14  the slack-filled packaging influenced her purchasing decisions.  But the Second Amended Complaint

15  does nothing more than recite a regulation regarding slack-filled packaging and state in a conclusory

16  manner that "Defendant employed slack-filled packaging."  (SAC ¶¶ 195-96.)  Liddle does not

17  support this claim with a single factual allegation.  The Supreme Court has left no doubt that such

18  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

19  do not suffice."  *Iqbal*, 556 U.S. at 678.

20       **D.    Plaintiffs' ECJ Allegations Improperly Require Interpretation of FDCA
21            Provisions Within the Primary Jurisdiction of the FDA.**

22       Plaintiffs rely on 2009 FDA **Guidance** to support their assertion that "evaporated cane juice"

23  is not a "common or usual name" that may be included in the ingredient list of Kirkland Reduced Fat

24  Chocolate Milk.  (SAC ¶ 140.)  However, this FDA Guidance includes the clear disclaimer that "[i]t

25  does not contain or confer any rights for or on any person and does not operate to bind the FDA or

26  the public;" rather, it contains "nonbinding recommendations" based upon "the FDA's current

27  thinking [as of 2009] on this topic."  *Id.*  For Plaintiffs to use this guidance as the grounds for their

28  claim is a direct contradiction to what the guidance states.  As the Ninth Circuit explained in *Pom*

16

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1   *Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012), courts should abstain from

2   deciding claims that ask a judge to "originally interpret ambiguous FDA regulations, because

3   rendering such an interpretation would usurp the FDA's interpretive authority." *Pom*, 679 F.3d at

4   1176.  The Ninth Circuit continued by stating "for a court to act when the FDA has not — despite

5   regulating extensively in this area [food labeling] — would risk undercutting the FDA's expert

6   judgments and authority." *Id.* at 1177.  While the *Pom* opinion applied this doctrine to a Lanham

7   Act claim, the impetus behind the courts' analysis — the preservation of the FDA's exclusive

8   authority over enforcement of the FDCA — applies equally to state unfair competition laws such as

9   those asserted here.  Indeed, on remand the district court granted summary judgment to the

10   defendants, and found that "Plaintiff cannot be allowed to pursue its State Law Claims in the face of

11   FDA action pursuant to the FDCA." *Pom Wonderful LLC v.  Coca Cola Co. et al.*, No. CV 08–

12   06237 SJO (FMOx), 2013 WL 543361 at *5 (C.D. Cal. Feb. 13, 2013).[5]

13           Most recently, Judge Rogers in the Northern District determined that "evaporated cane juice"

14   claims, nearly identical to those Plaintiffs make here, should be dismissed on primary jurisdiction

15   grounds.  *See Hood*, No. 4:12cv5550 (Dkt. #31) (Oct. 29, 2012).  In *Hood*, as in the instant case, the

16   plaintiffs attempted to use the FDA's October 2009 guidance on ECJ as a basis for their FDCA

17   violations.  *Id.*  Judge Rogers dismissed the state claims, and instead appropriately deferred "to the

18   authority and expertise of the FDA to say what the appropriate rules should be with respect to …

19   evaporated cane juice." *Id.*

20           A similar result was reached in *Astiana v. Hain Celestial Grp., Inc.,* 905 F. Supp. 2d 1013,

21   1015 (N.D. Cal. 2012).  In *Astiana*, the plaintiffs brought UCL and CLRA claims against the

22   defendants, and alleged that the defendants' use of the word "natural" on their products was false

23   and misleading.  *Id.* at 1014.  Judge Hamilton declined to define the word "natural" because such

24   actions fell within the FDA's jurisdiction and regulation, and found that any attempt by the court to

25   define the same would "risk undercutting the FDA's expert judgments and authority." *See id.* at

26   1015-16*; see also Gordon et al. v. Church & Dwight*, *Co.*, No. C 09-5585 PJH, 2010 WL 1341184 at

27   *1 (N.D. Cal. Apr. 2, 2010) (dismissing plaintiffs' UCL and CLRA claims as the scope and content

28   

---

[5] The plaintiffs have appealed that decision.

COSTCO'S AMENDED MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT
CASE NO. 5:12-CV-02908-EJD-PSG

1   of the labels were within the primary jurisdiction of the FDA); *All One God Faith, Inc. v. Hain*

2   *Celestial Grp., Inc.,* No. C 09-3517 SI, 2012 WL 3257660, at *11 (N.D. Cal. Aug. 8, 2012)

3   (dismissing plaintiff's complaint under the primary jurisdiction doctrine because the alleged claims

4   would require the court to interpret federal organic standards and would intrude upon the USDA's

5   authority).  This Court should apply the same reasoning here and dismiss or strike Plaintiffs'

6   "evaporated cane juice" allegations.

7   **VI.      CONCLUSION**

8        For the foregoing reasons, Costco respectfully requests the Court grant this motion to dismiss

9   and/or strike the allegations of the Second Amended Complaint as set forth herein.

10

11  Dated:  July 26, 2013                       WINSTON & STRAWN LLP

12

13                                          By:  */s/ Amanda L. Groves*
                                               Amanda L. Groves
14                                             Attorneys for Defendant
                                               COSTCO WHOLESALE CORPORATION

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802