UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KAREN THOMAS and LISA LIDDLE, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>COSTCO WHOLSALE CORPORATION,<br><br>Defendant. | Case No. 5:12-CV-02908-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>**[Re: Docket No. 70]** |

Presently before the Court is Defendant Costco Wholesale Corporation's ("Costco" or "Defendant") Motion to Dismiss and Strike Plaintiffs' Second Amended Class Action Complaint ("SAC"). Dkt. No. 70. Plaintiffs Karen Thomas ("Thomas") and Lisa Liddle ("Liddle") filed this putative class action against Defendant alleging that several of Defendant's food products have been improperly labeled so as to amount to misbranding and deception in violation of several California and federal laws.

Per Civ. L.R. 7-1(b), the motion was taken under submission without oral argument. Having fully reviewed the parties' papers, the Court grants in part and denies in part Defendant's motion to dismiss for the reasons explained below.

## I. BACKGROUND

Plaintiffs filed their original Complaint in this case on June 5, 2012. Dkt. No. 1. On September 28, 2012, Plaintiffs filed the Amended Class Action Complaint on behalf of themselves and a putative class of all persons in the United States who have purchased the same or similar products or other of Defendant's food products that were allegedly mislabeled. Dkt. No. 24. Plaintiffs' First Amended Complaint was dismissed by this Court on April 9, 2013 based on Plaintiff Thomas' lack of standing and failure to comply with Rule 9. Dkt. No. 58.

Plaintiffs filed their SAC on April 24, 2013. Dkt. No. 60. Defendant filed a Motion to Dismiss on June 6, 2013 and an Amended Motion to Dismiss and Strike on July 26, 2013. Dkt. No. 68 and Dkt. No. 70.

Plaintiffs are two California consumers who purchased a variety of Defendant's food products from June 5, 2008. Plaintiff Thomas alleges that she purchased Defendant's Kirkland Signature Kettle Chips. Dkt. No. 60 ¶ 22. Plaintiff Liddle alleges that she purchased Defendant's products including Kirkland Signature Cashew Clusters with Almonds and Pumpkin Seeds, Kirkland Signature Whole Dried Blueberries, Kirkland Signature Newman's Own 100% Grape Juice, Kirkland Signature Organic Chocolate Reduced Fat Milk, Kirkland Signature Bolthouse Farms Organic 100% Carrot Juice, Kirkland Signature Real Sliced Fruit (Fuji Apple, Strawberry Banana, and Fuji Apple with Cinnamon), Kirkland Signature Nature's Path Organic Ancient Grains Granola with Almonds, and Kirkland Signature Canola Oil Cooking Spray. Id. ¶ 23.

Plaintiffs argue that the following representations on the packaging of these and other of Defendant's food products were unlawful and/or misleading: (1) nutrient content claims; (2) claims about antioxidant content; (3) "no sugar added" claims; (4) health claims; (5) "0 grams trans fat" or "no trans fat" claims; (6) "evaporated cane juice" ("ECJ") claims; (7) synthetic chemical content omissions; (8) "preservative free" claims and omissions about preservative content; and (9) slack-filled packaging. Id. ¶¶ 55-200. They also allege that they "read the unlawful and misleading statements . . . on the labels of Defendant's Purchased Products before purchasing them" and that they "relied on Defendant's label statements . . . and based and justified the decision to purchase

Defendant's Purchased Products, in substantial part, on Defendant's label statements . . . ." Id. ¶¶ 219-20.

Plaintiffs allege the following causes of actions: violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., (counts 1-3); violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq., (counts 4-5); and violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., (count 6).

**II. LEGAL STANDARD**

**A. Rule 8(a)**

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). The court must accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001). But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

3

Case No. 5:12-CV-02908-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

**B. Rule 9(b)**

Fraud-based claims are subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b). In that regard, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). To that end, the allegations must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). Averments of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Additionally, "the plaintiff must plead facts explaining why the statement was false when it was made." Smith v. Allstate Ins. Co., 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) (citation omitted); see also In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc) (superseded by statute on other grounds).

**C. Rule 12(b)(1)**

A party may file a motion to dismiss with the Court for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion may be either facial or factual. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). A facial 12(b)(1) motion involves an inquiry confined to the allegations in the complaint, whereas a factual 12(b)(1) motion permits the court to look beyond the complaint to extrinsic evidence. Id. When a defendant makes a facial challenge, all material allegations in the complaint are assumed true, and the court must determine whether lack of federal jurisdiction appears from the face of the complaint itself. Wolfe, 392 F.3d at 362.

On a factual challenge, the party opposing the motion must produce affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction. Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Under a factual attack, the court need not presume the plaintiff's allegations as true. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000);

.

accord Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983). In the absence of a full-fledged evidentiary hearing, however, disputed facts pertinent to subject matter jurisdiction are viewed in the light most favorable to the nonmoving party. Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1996).

Federal courts are courts of limited jurisdiction, adjudicating only cases which the Constitution and Congress authorize. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). An Article III federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution. To satisfy Article III standing, a plaintiff must allege: (1) an injury in fact that is concrete and particularized, as well as actual and imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative) that the injury will be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-62 (1992).

At least one named plaintiff must have suffered an injury in fact. See Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F.3d 1018, 1022 (9th Cir. 2003) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class").

A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996). If a court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

**III. DISCUSSION**

Plaintiffs contend that their case essentially has two facets: (1) Defendant's packages and labels render the products "misbranded" and therefore unlawful; (2) Defendant's labels are "fraudulent" and "misleading." Dkt. No. 60 ¶¶ 3-7. First, Plaintiffs allege that Defendant's

5

Case No. 5:12-CV-02908-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

packages and labels do not comply with certain sections of state and federal laws, thereby "misbranding" the product, creating a product that is unlawful and legally worthless. This misbranding gives rise to Plaintiffs' first cause of action under the "unlawful" prong of the UCL.

Second, Plaintiffs claim that Defendant's labels are misleading, deceptive, unfair, and fraudulent. Plaintiffs contend that they "reasonably relied in substantial part on the unlawful label statements, and were thereby deceived, in deciding to purchase these products."

Defendant challenges the SAC on a number of grounds including: lack of constitutional and statutory standing; failure to state a claim; and the doctrine of primary jurisdiction.

**A. Statutory Framework**

The operative statute in this matter is the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343 et seq. 21 U.S.C. § 343 establishes the conditions under which food is considered "misbranded." Generally, food is misbranded under 21 U.S.C. § 343(a)(1) if "its labeling is false or misleading in any particular."

The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq., incorporates the requirements of the FDCA as the food labeling requirements of the state of California. Plaintiffs bring claims for relief under the UCL, FAL, and CLRA based on Defendant's alleged violations of the Sherman Law. The UCL prohibits business practices that are unlawful, unfair, or fraudulent. The "fraudulent" prong of the UCL "requires a showing [that] members of the public are likely to be deceived." Wang v. Massey Chevrolet, 97 Cal. App. 4th 856, 871 (2002). The "unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable." Daugherty v. Am. Honda Motor Co., Inc., 144 Cal. App. 4th 824, 837 (2006). As for the "unfair" prong, "California appellate courts disagree on how to define an 'unfair' act or practice in the context of a UCL consumer action." Morgan v. Wallaby Yogurt Co., Inc., No. 13-CV-00296-WHO, 2014 WL 1017879, at *11 (N.D. Cal. March 13, 2014); (citing Davis v. Ford Motor Credit Co., 179 Cal. App. 4th 581, 594 (2009)). Some courts have held that the "unfair" prong requires alleging a practice that "offends an established public policy or . . . is

immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and the policy must be "tethered to specific constitutional, statutory or regulatory provisions." Bardin v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255, 1263, 1266 (2006) (quotations omitted). Other courts have held that the court must apply a balancing test that "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." Schnall v. Hertz Corp., 78 Cal. App. 4th 1144, 1167 (2000).

### B. Standing

As noted, to establish Article III standing, a plaintiff must allege facts showing an "injury-in-fact," causation, and redressability such that the injury will be likely redressed by a decision in the plaintiff's favor. Lujan, 504 U.S. at 561-62. An "injury in fact" requires showing "an invasion of a legally protected interest which is concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. at 560 (citations and internal quotation marks omitted).

The UCL and FAL incorporate the Article III standing requirements, but additionally require that the plaintiff plead an economic injury. Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 322-23 (2011); see also TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 825 n.1 (9th Cir. 2011) ("Plaintiffs filing an unfair competition suit must prove a pecuniary injury . . . and 'immediate' causation. . . . Neither is required for Article III standing." (internal citations omitted)). Proposition 64 was enacted in 2004 as a means of "confin[ing] [UCL] standing to those actually injured by a defendant's business practices and [ ] curtail[ing] the prior practice of filing suits on behalf of clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant." Kwikset, 51 Cal. 4th at 321 (internal citations omitted). Under the UCL and FAL, a plaintiff suffers an injury-in-fact when he or she has "(1) expended money due to the defendants' acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim." Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010).

To satisfy the injury-in-fact requirement for unfair competition claims, "courts in California require that plaintiffs demonstrate the purchase of products as a result of deceptive advertising."

7

Id. To plead actual reliance, the "plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct." In re Tobacco II Cases, 46 Cal. 4th 298, 328 (2009). However, "the plaintiff is not required to allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct." Id. A plaintiff can satisfy the UCL's standing requirement by alleging that he or she would not have bought the product but for the alleged misrepresentation. Kwikset, 51 Cal. 4th at 330.

The California Supreme Court has held that the phrase "as a result of" in UCL section 17204 "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." Tobacco II, 46 Cal. 4th at 326. This also applies under the UCL's "unlawful" and "unfair" prong, where the predicate unlawfulness is misrepresentation and deception. Hale v. Sharp Healthcare, 183 Cal. App. 4th 1373, 1385 (2010); see also Kwikset, 51 Cal. 4th 310; In re Actimmune Mkt. Litig., No. 08-2376, 2010 WL 3463491, at *8 (N.D. Cal. Sept. 1, 2010), aff'd, 464 F. App'x 651 (9th Cir. 2011); Brazil v. Dole Food Co., 935 F. Supp. 2d 947 (N.D. Cal. 2013); Kane v. Chobani, No. 12-CV-02425-LHK, 2014 WL 6573000, at *5 (N.D. Cal. Feb. 20, 2014).

The federal and state statutes relied on by Plaintiffs prohibit a particular type of consumer deception, the mislabeling of food products. As such, the actual reliance requirement applies to Plaintiffs' claims under all prongs of the UCL. See Figy v. Amy's Kitchen, No. 13-CV-03816-SI, 2013 WL 6169503 (N.D. Cal. Nov. 25, 2013); Kwikset, 51 Cal. 4th 310; Wilson v. Frito-Lay N. Am., 961 F. Supp. 2d 1134 (N.D. Cal. 2013).

### 1. Plaintiff Thomas

In the Order Granting the Motion to Dismiss Plaintiffs' FAC, this Court found that Plaintiff Thomas lacked standing because she failed to sufficiently allege that the "no trans fat" or "0 grams trans fat" representations were untruthful or misleading, or that the product in question actually contained any amount of trans fat. Because she did not assert that she received a product different from the one as labeled, she did not met the injury-in-fact requirement for standing and she did not meet the causation prong because she admitted to having "read the labels on the [Kettle Chips] . . .

8

Case No. 5:12-CV-02908-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

before purchasing them." Dkt. No. 58 at 7. Defendant argues that Plaintiff Thomas has not cured the standing defects in the SAC and thus her claims must be dismissed with prejudice.

In support of her claim, Plaintiff Thomas asserts that she purchased Defendant's Kettle Chips in reliance on the "no trans fat" representation on the label. Dkt. No. 60 ¶¶ 116-17. Plaintiff Thomas, however, does not claim that the product contained any trans fat, only alleging that she was misled into believing that the product only made positive contributions to her diet and did not contain total fat levels that may increase risk of disease or health related condition. Id. ¶ 133. Plaintiff claims that she would not have purchased the product had she "known the truth" about the product, without indicating what "the truth" is about the product. Id. ¶ 117. These allegations are the same as those previously dismissed by this Court for lack of standing and similar to claims dismissed by this district in Delacruz v. Cytosport, No. C-11-3532-CW, 2012 WL 3563857, at *8 (N.D. Cal. June 28, 2012). Plaintiff still fails to allege that the chips she purchased included any amount of trans fat or that she received a product different from the one as labelled. As such, the injury-in-fact requirement for standing has not been met.

Next, to show injury-in-fact, Plaintiff Thomas claims that the "no trans fat" claims were improper and misleading because Defendant failed to include disclosure statements required by 21 C.F.R. § 101.13(h)(1) and Plaintiff would not have purchased the product had she known it was illegal to purchase and possess. This argument fails for two reasons. First, this district has already held that a similar "0g trans fat" statement was not actionable. Cytosport, 2012 WL 3563857, at *8. Furthermore, Plaintiff does not demonstrate that the label is in violation of the regulation.

21 C.F.R. § 101.13 (h)(l) provides that:

> If a food . . . contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30 g or less . . . per 50 g . . . then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: "See nutrition information for __ content"

9

Case No. 5:12-CV-02908-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

with the blank filled in with the identity of the nutrient exceeding the specified level, e.g., "See nutrition information for fat content."

Plaintiffs claim that Defendant violates this provision because the product allegedly contains more than 13 grams of fat.[1]

In Cytosport, as discussed supra, this district dismissed a similar "0 grams trans fat" claim, holding that even though the statement was not accompanied by a 21 C.F.R. §101.13(h)(1) disclosure, the statement about trans fat was true and the "alleged distraction" posed relative to fat and saturated fat was neither a false statement nor a misrepresentation and therefore, not an actionable claim. Cytosport, 2012 WL 3563857, at *8-10.

In Frito-Lay, the court found that the plaintiffs sufficiently alleged that a "0 grams trans fat" statement was deceptive because, accompanied by a disclosure of at least one of the ingredients that 21 C.F.R. §101.13(h)(1) requires to be disclosed (saturated fat), they and other consumers would think that the statements on the labels made accurate claims about the product's nutritional content, when they did not. Id. at *14. In Frito-Lay, unlike in Cytosport, the "0 grams trans fat" statement was accompanied by a disclosure directing consumers to see nutrition facts for saturated fat information, without telling them to look at the total fat level, which was higher than 13 grams of fact. The Frito-Lay court noted Cytosport's opposite holding, concluding that it was based on a distinct fact pattern. The facts in the present case are identical to those in Cytosport and distinct from Frito-Lay, as no incomplete disclosure was included in the labeling.

In Samet v. Procter & Gamble, No. 12-CV-01891-PSG, 2013 WL 3124647 (N.D. Cal. June 18, 2013), plaintiffs brought a similar claim that "0g trans fat" statements must be accompanied by disclosures. The court noted that Frito-Lay found that a "0g trans fat" statement could be misleading to a consumer, but declined to decide whether that was true in the Samet case because

---

[1] On a Motion to Dismiss, Plaintiff's allegations in the complaint must be taken as true. Plaintiff alleges that the product contains more than 13 grams of fat and therefore the label is in violation of 21 C.F.R. § 101.13 (h)(l). However, attached to the SAC is a copy of the Kirkland Signature Kettle Brand Krinkle Cut Potato Chips (sea salt) packaging (both front and back). The nutrition panel indicates that none of the levels of total fat, saturated fat, cholesterol or potassium per serving reach the levels indicated in 21 C.F.R. § 101.13 (h)(l) (9g total fat, 1g saturated fat, 0mg cholesterol, and 430mg potassium) and therefore Plaintiff has not demonstrated a requirement for a disclosure to be included. Dkt. No. 60-1.

10

Case No. 5:12-CV-02908-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

plaintiffs had not alleged in detail required by Rule 9(b) how they were misled, other than offering legal conclusions that they were "unaware" that the products were "misbranded." Samet, 2013 WL 3124647, at * 8.

As such, the Court finds that Plaintiff Thomas has not pled an injury-in-fact and therefore has no standing to bring a claim. Plaintiff Thomas was given two opportunities to cure the deficiencies in her claim and the claim is now dismissed without leave to amend.

### 2. Plaintiff Liddle

As discussed in the Court's previous Order, Plaintiff Liddle has met the Article III and statutory standing requirements of her claims.

### C. Sufficiency of Pleadings

Plaintiffs allege two different facets of their argument against Defendant. First, Defendant's packages and labels render the products "misbranded" and therefore unlawful; second, Defendant's labels are "fraudulent" and "misleading."

For all claims under the UCL that arise from deceptive advertising, as all of Plaintiff's claims here do, Plaintiff must plead reliance in accordance with Rule 9(b) and show that "members of the public are likely to be deceived." Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008); Kwikset, 51 Cal. 4th 310. Whether a practice is "deceptive, fraudulent, or unfair" is generally a question of fact that is not appropriate for resolution on the pleadings. Williams, 552 F.3d at 938-39; Bruton v. Gerber Prods. Co., 961 F. Supp. 2d 1062, 1089 (N.D. Cal. 2013). Where there are food packaging features that could likely deceive a reasonable consumer, the Ninth Circuit has found that granting a motion to dismiss is inappropriate. Williams, 552 F.3d at 939.

However, where a court can conclude as a matter of law that alleged misrepresentations are not likely to deceive a reasonable consumer, courts have dismissed claims under the UCL, FAL, and CLRA. Jones v. ConAgra Foods, Inc., 912 F. Supp. 2d 889, 899 (N.D. Cal. 2012); see Red v. Kraft Foods, Inc., No. 10-CV-1028-GW, 2012 WL 5504011, at *4 (C.D. Cal. Oct. 25, 2012) ("where . . . the claim alleges that a consumer will read a true statement on a package and then disregard 'well-known facts of life' . . .," the court granted a motion to dismiss because a

11
Case No. 5:12-CV-02908-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

reasonable consumer would not be deceived by pictures of vegetables and the true phrase "Made with Real Vegetables"); Carrea v. Dreyer's Grand Ice Cream, Inc., 475 Fed. Appx. 113 (9th Cir. 2012) (unpublished Ninth Circuit case determined that a reasonable consumer would not think the terms "original" or "classic" indicate a wholesome or nutritious product).

### 1. "Unlawful" Claims

As discussed supra, under the "unlawful" prong of the UCL, Plaintiffs must plead reliance when claims are premised on allegedly deceptive advertising. See Kwikset, 51 Cal. 4th 310; Chobani, No. 12-CV-02425-LHK, 2014 WL 657300, at *5 (N.D. Cal. Feb. 20, 2014); Brazil, 2013 WL 5312418, at *8-9. Defendant argues that Plaintiffs cannot avoid the UCL's pleading requirement under the "unlawful" prong.

Plaintiffs argue that their claims are not based on misrepresentation, rather on the illegality of the products themselves as their misbranding violates the Sherman Law, and therefore there is no need for Plaintiffs to prove reliance. Plaintiffs rely on Medrazo v. Honda of N. Hollywood, 205 Cal. App. 4th 1 (2012), and Steroid Hormone Product Cases, 181 Cal. App. 4th 145 (2010), for the proposition that no showing of reliance is required where a defendant sells a product that is illegal to sell. However, as discussed in Chobani, 2014 WL 657300, at *7, these cases are unavailing because Steroid Hormone was decided prior to the California Supreme Court's decision in Kwikset and the alleged unlawful conduct in that case was not based on a statute prohibiting specific types of misrepresentations. Similarly, Medrazo does not discuss Kwikset's finding that actual reliance applies to claims under the unlawful prong of the UCL. Plaintiffs cannot circumvent the reliance requirement by simply pointing to a regulation or code provision that was violated by the alleged label misrepresentation, summarily claiming that the product is illegal to sell and therefore negating the need to plead reliance. As this district pointed out in Brazil, if the court held that a plaintiff "has standing to bring claims based solely upon allegations that he would not have purchased a product that was misbranded, purchasers who never 'viewed the defendant's advertising' or misleading labeling would have standing to sue. Such a holding is inconsistent with Proposition 64 and Kwikset." Brazil, 2013 WL 5312418, at *9.

12

Case No. 5:12-CV-02908-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Plaintiffs argue that even if reliance is required, reliance has been adequately pled because Plaintiffs relied on Defendant not to sell them illegal products (i.e. products misbranded under state law). Here again, Plaintiffs rely on the reasoning in Medrazo and Steroid Hormone for the proposition that the sale of an illegal product in and of itself leads to a presumption of reliance because the representation made was material. However, as explained above, the cases Plaintiffs cite are inapposite and actual reliance on the representation must be pled in order to satisfy the requirements of the UCL. Therefore, the Court addresses all of Plaintiff's claims together and analyzes sufficiency under Rule 9(b), as all claims stem from the allegedly misleading labels.

### 2. "Fraudulent" Claims

In the SAC, Plaintiffs list products purchased and their alleged Sherman Law violations. Plaintiffs specifically assert that Defendants make misbranded content claims that fall into nine categories: (a) "nutrient content" (including "naturally rich in antioxidants," "excellent source of antioxidants," "good source of fiber," "good source of protein," and "contain oleic acid"); (b) "antioxidant nutrient content"; (c) "no sugar added"; (d) health claims (such as "promotes good cardiovascular health" and "being healthy too"); (e) "no trans fat"; (f) "evaporated cane juice" ("ECJ"); (g) failure to label ingredients by their common names and concealing high levels of synthetic chemicals and petrochemicals in cooking spray; (h) "preservative free"; and (i) use of slack-filled containers.

Defendant argues that claims a-d do not allege that anything Defendant represented was misleading nor did Plaintiffs rely on any representation made by Costco. Defendant further argues that in Plaintiffs' claims e-i, Plaintiffs fall short of alleging actionable misrepresentations under the UCL, FAL, or CLRA, because the statements are not likely to deceive a reasonable consumer. As discussed supra, under the UCL, FAL, and CLRA, "fraud" claims are governed by a "reasonable consumer" test. Williams, 552 F.3d at 938.

For the nutrient content and antioxidant nutrient content claims, Plaintiff Liddle alleges reliance on "implicit misrepresentation that [the] product she was purchasing met the minimum nutritional threshold to make such claims." Dkt. No. 60 ¶¶ 57, 61, 65, and 72. However, Plaintiff

13

1   does not allege that the claims are false, or that the products do not contain antioxidants, fiber,

2   protein, or oleic acid. Instead, Plaintiff simply states that the product did not satisfy minimum

3   nutritional requirements with regard to the claimed nutrient as set out in 21 C.F.R. § 101.54(b) and

4   (c), without explaining how they reached that conclusion. For the antioxidant nutrient content

5   claims, Plaintiffs allege Defendant is in violation of 21 C.F.R. § 101.54(g) because the names of

6   antioxidants are not disclosed on the product labels; there are no RDIs for the antioxidants

7   advertised; the antioxidants fail to meet the required levels for claims such as "high," "good

8   source," and "more"; and Defendant lacks adequate scientific evidence concerning antioxidants.

9   For the "no sugar added" claim, Plaintiff alleges that the product is misbranded because it

10   does not satisfy 21 C.F.R. §101.60(c)(2)(v), which requires that if the term "no sugar added" is

11   used, the product must include a statement that the food is not "low calorie" or "calorie reduced,"

12   unless the food meets the requirements for a low or reduced calorie food, and direct consumers' to

13   the nutrition panel for further information about sugar and calorie content, and further disregards

14   21 C.F.R. § 101.60(c)(1). Plaintiff does not allege that the products did in fact contain added

15   sugar, only that the products were falsely represented and misbranded under California and federal

16   law because they did not include a disclaimer although they have a high caloric value. Plaintiff

17   alleges that she "did not know, and had no reason to know, that this product was misbranded. . ."

18   Dkt. No. 60 ¶ 90.

19   For the health claims, Plaintiff alleges that Defendant violated California and federal law by

20   making unapproved health claims in products which had disqualifying levels of fat. Plaintiff

21   alleges reliance "on these label representations . . . and was misled because she erroneously

22   believed the two phrases ('promotes good cardiovascular health' and 'being healthy too')." Id. ¶

23   97.

24   As discussed above, the no trans fat claims are dismissed for lack of standing.

25   In the ECJ claims, Plaintiffs argue that ECJ is an unlawful term for an ingredient that has a

26   common name. Plaintiff Liddle alleges that she "read and relied on the listing of evaporated cane

Case No. 5:12-CV-02908-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

juice," she "would not have bought [the product] had the ingredients been listed by their common . . . names," and a reasonable consumer would have been misled. Id. ¶¶ 138, 147.

Plaintiffs further claim that Defendant unlawfully identified an ingredient as "propellant" instead of using the common names of the petrochemicals in the product. Plaintiff Liddle alleges that she was misled and had she been aware of the chemical components of the product, she would not have purchased it. Id. ¶ 167.

Next, Plaintiffs allege that Defendant's "preservative free" product was misbranded because the product contained tocopherols, which functioned as an undisclosed chemical preservative. Defendant points out that the product contains natural tocopherols, which Plaintiffs cannot allege function as preservatives.

Plaintiffs' last claim is that particular products purchased were unjustifiably slack-filled, which Plaintiff Liddle relied on and was misled as a result of her reliance.

The Court finds that claims for nutrient content, antioxidant content, health, no sugar added, preservative free, propellant and slack-fill claims are properly pled, may deceive a reasonable consumer, and are inappropriate to resolve at the motion to dismiss stage. See Jones, 912 F. Supp. 2d at 901; Ivie, 2013 WL 685372, at *12.

However, the ECJ claim will be dismissed with leave to amend based on the reasoning of two recent cases, Avoy v. Turtle Mountain, No. 13-CV-0236-LHK, 2014 WL 587173 (N.D. Cal. Feb. 14, 2014) and Chobani, No. 12-CV-02425-LHK, 2013 WL 5289253 (N.D. Cal., Sept. 19, 2013). Like the plaintiff in Avoy, Plaintiff Liddle included the label of the purchased product, which lists "sugar" as an included nutrient and clearly show how much sugar is contained in the product. As in Chobani, Plaintiff Liddle indicates in the SAC that she knows that ECJ is the same as "sugar" and "dried cane syrup." Further, the SAC fails to allege what Plaintiff Liddle believed ECJ to be if not sugar and does not explain what a reasonable person would believe ECJ to be.

**D. Primary Jurisdiction**

The primary jurisdiction doctrine allows courts to "stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an

15

administrative agency." Ivie, 2013 WL 685372, at *5 (quoting Clark v. Time Warner Cable, 523 F. 3d 1110, 1114 (9th Cir. 2008)). Courts consider the following factors in deciding whether the doctrine of primary jurisdiction applies: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." Ivie, 2013 WL 685372, at *5.

Where determination of a plaintiff's claim would require a court to decide an issue committed to the FDA's expertise without a clear indication of how the FDA would view the issue, courts of this district have found that dismissal or stay under the primary jurisdiction doctrine is appropriate. See Hood v. Wholesoy & Co., Modesto Wholesoy Co. LLC, No. 12-CV-5550-YGR, 2013 WL 3553979, at *5-6 (N.D. Cal. July 12, 2013) (ECJ and soy yogurt claims dismissed because the FDA's position is unsettled); Astiana v. Hain Celestial, 905 F. Supp. 2d 1013, 1016-17 (N.D. Cal. 2012) (holding that "[i]n absence of any FDA rules or regulations (or even informal policy statements) . . . the court declines to make any independent determination of whether [the label] was false or misleading" and the claims were barred under the primary jurisdiction doctrine).

In contrast, however, where FDA policy is clearly established with respect to what constitutes an unlawful or misleading label, the primary jurisdiction doctrine is inapplicable because there is little risk that the courts will undermine the FDA's expertise. See Brazil, 935 F. Supp. 2d at 959 (where the FDA has established requirements applicable to the violations, there is no risk of undercutting the FDA's judgment and authority, thus a stay is not necessary).

With regard to ECJ claims, the majority of courts in this district have decided that such claims are not barred by the doctrine of primary jurisdiction. However, since this Court has already decided that the ECJ claims are dismissed for failure to state a claim, it finds no need to address this argument at this time.

16

Case No. 5:12-CV-02908-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss will be GRANTED in part and DENIED in part. Plaintiff Thomas' claim is dismissed with prejudice. Plaintiff Liddle's claim regarding evaporated cane juice is dismissed with leave to amend.

If Plaintiffs wish to further amend the complaint, the Court orders that it be pled in compliance with the pleading standards of Rules 8 and 9 and filed within 15 days of the date of this order.

**IT IS SO ORDERED**

Dated: March 31, 2014



EDWARD J. DAVILA
United States District Judge

Case No. 5:12-CV-02908-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS