UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KAREN THOMAS, et al., <br> Plaintiffs, <br> v. <br> COSTCO WHOLESALE CORPORATION, <br> Defendant. | Case No. 12-cv-02908-BLF <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> [Re: ECF 89] |

Plaintiff Lisa Liddle, on behalf of a putative class, brings this action alleging that a number of products she purchased at Defendant's retail locations were unlawfully mislabeled. Defendant seeks partial summary judgment as to six of these products, contending that it is entitled to avail itself of the dealer immunity[1] provision of California's Sherman Law[2] because it received written guarantees from the vendors of these products that the products were not adulterated, misbranded, or falsely advertised. Plaintiff opposes on two grounds: (1) that the Sherman Law's dealer immunity provision provides immunity from criminal prosecution only, not civil liability, and (2) that there is a disputed issue of material fact as to whether Defendant could avail itself of the dealer immunity provision because of its involvement with the development of the products.

Having reviewed the parties' arguments, relevant statutes, and case law, the Court finds the

---

[1] The Court uses "dealer immunity provision" and "safe harbor" interchangeably.
[2] In Defendant's opening motion for partial summary judgment, Defendant argued that it is entitled to immunity under the Federal Food, Drug, and Cosmetic Act ("FDCA") and the Sherman Law. However, in its supplemental reply, Defendant abandons its FDCA argument, focuses only on the Sherman Law's safe harbor, and concedes that "Plaintiff identifies language indicating that the safe harbor of the FDCA may be limited to criminal penalties." Accordingly, in this motion, the Court considers only the applicability of the Sherman Law's safe harbor to Defendant's conduct. The Court discusses the FDCA only to the extent it is relevant to understanding and interpreting the Sherman Law.

1 Sherman Law's dealer immunity provision provides immunity from both criminal and civil
2 liability, and that there is a disputed issue of material fact as to whether Defendant qualifies as a
3 dealer under the Sherman Law. Accordingly, the Court DENIES Defendant's motion for partial
4 summary judgment, for the reasons articulated herein.

**I.     BACKGROUND**

**A.     General Factual Background**

The parties have gone through several rounds of motions to dismiss and amendment to Plaintiff's complaint, and the background facts are familiar to the Court and the parties so they will not be recited in detail here. *See generally* Dismissal Order, ECF No. 83. Plaintiff Liddle is a California consumer who alleges that she purchased eight of Defendant's Kirkland Signature food products: (1) Whole Dried Blueberries, (2) Cashew Clusters with Almonds and Pumpkin Seeds, (3) Organic Chocolate Reduced Fat Milk, (4) Canola Oil Cooking Spray, (5) Newman's Own 100% Grape Juice, (6) Real Sliced Fruit—Fuji Apple, Strawberry Banana, and Fuji Apple with Cinnamon, (7) Boathouse Farms Organic 100% Carrot Juice, and (8) Ancient Grains Granola with Almonds. Third Amended Complaint ¶¶ 2a–2h, ECF No. 84. Plaintiff brought suit contending that these products are unlawfully mislabeled. *See id.* at ¶ 5.

**B.     Procedural Background**

On April 15, 2014, Plaintiff filed her Third Amended Complaint. *See* ECF No. 84. On May 16, 2014, Defendant filed a partial motion to dismiss the Third Amended Complaint, or in the alternative a motion for partial summary judgment. *See* ECF No. 89. On November 12, 2014, the Court granted Defendant's partial motion to dismiss and deferred ruling on the motion for partial summary judgment until relevant discovery had been completed. *See* ECF No. 101. On March 5, 2015, Plaintiff submitted her supplemental response to Defendant's motion for partial summary judgment and Defendant submitted its supplemental reply on March 13, 2015. *See* ECF Nos. 106, 107. The parties appeared before the Court for oral argument on June 4, 2015. *See* ECF No. 108.

**C.     Undisputed Facts**

The parties have stipulated to the following facts. The products in this lawsuit are all Kirkland Signature products that are subject to dual or private label agreements with similar terms.

*See* Stipulation 1-2, ECF No. 105. The private label agreements require product labels to be approved in writing by Defendant and the dual brand agreements require product labels to be approved in writing by both Defendant and the vendor. *Id*. at 2. The standard terms applicable to all the products at issue provide that the labels and packaging, including artwork and non-technical aspects are subject to review and approval by Defendant and vendor. *Id*. Defendant and vendor must also cooperate in good faith to agree on any changes "that are determined necessary by either party in order to comply with the applicable law." *Id*. The Kirkland Signature products and labels in this action were approved by Defendant's Full Committee which included Defendant's Chief Executive Officer, Chief Operations Officer, Executive Vice President, Director of Foods and Sundries Merchandising, Legal Department, and Product Buyer. *Id*. at 2-3.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "Partial summary judgment that falls short of a final determination, even of a single claim, is authorized by Rule 56 in order to limit the issues to be tried." *State Farm Fire & Cas. Co. v. Geary,* 699 F. Supp. 756, 759 (N.D. Cal. 1987).

The moving party "bears the burden of showing there is no material factual dispute," *Hill v. R+L Carriers, Inc.,* 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). In judging evidence at the summary judgment stage, "the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.,* 891 F. Supp. 510, 513–14 (N.D. Cal. 1995). For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]." *Corales v. Bennett,* 567 F.3d 554, 562 (9th Cir. 2009).

3

## III. DISCUSSION

Defendant seeks partial summary judgment on the discrete issue of whether its conduct is protected by the Sherman Law's safe harbor. The Court first addresses Plaintiff's argument that the Sherman Law's safe harbor does not apply to civil liability and then considers whether Defendant is entitled to judgment as a matter of law that its conduct is protected by the safe harbor.

### A. Safe Harbor's Applicability to Civil Actions

#### 1. Statutory Overview

In 1938, Congress enacted the Federal Food, Drug, and Cosmetic Act ("FDCA"), codified at 21 U.S.C. § 301, *et seq.*, and established the Food and Drug Administration to protect the public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A). California adopted the food labeling requirements of the FDCA and its subsequent amendments with the Sherman Food, Drug, and Cosmetic Law ("Sherman Law"). *See* Cal. Health & Safety Code § 110100.

The FDCA and Sherman Law are parallel statutes, but they are not identical. For example, while both statutes provide safe harbors to dealers who meet certain requirements, the language of each safe harbor differs. The FDCA's safe harbor provides, in pertinent part, as follows:

(c) Exceptions in certain cases of good faith, etc.

No person shall be subject to the *penalties of subsection (a)(1) of this section,…* for having violated section 331(a) or (d) of this title, if he establishes a guaranty or undertaking…received in good faith…that such article is not adulterated or misbranded.

21 U.S.C. § 333(c) (emphasis added). The "penalties of subsection (a)(1)" are imprisonment of not more than one year, a fine of not more than $1,000, or both. *See* 21 U.S.C. § 333(c)(a)(1).

The Sherman Law's safe harbor reads, in pertinent part, as follows:

No dealer shall be prosecuted *under this part* for a violation concerning any food…if all of the following requirements are satisfied…

(c) He or she can produce a guarantee to the effect that the food…is not… misbranded…within the meaning of this part.

Cal. Health & Safety Code § 110245 (emphasis added). Thus, the FDCA protects dealers from the penalties of "subsection (a)(1)" while the Sherman Law protects dealers from being "prosecuted

4

under this part."

### 2. Summary of the Parties' Competing Interpretations

Plaintiff argues that the safe harbor provisions of the FDCA and Sherman Law provide immunity from criminal prosecution only, and not civil liability. Pl.'s Supp. Opp. 1-4, ECF No. 106. Plaintiff contends that Section 333(c) of the FDCA is clear that a dealer is immune solely from the penalties of subsection (a)(1) of Section 333. *Id*. at 1-2. Since Section 333(a)(1) describes criminal and not civil penalties, Plaintiff argues that the FDCA exempts dealers from criminal prosecution only. *Id*. Turning to the Sherman Law, Plaintiff argues that the Sherman Law's safe harbor is based on the FDCA's safe harbor. *Id*. at 2. Given that the FDCA provides immunity only from criminal prosecution, Plaintiff argues that the word "prosecuted" as used by the Sherman Law should be given "its ordinary meaning of criminal prosecution." *Id*. at 1-2. Plaintiff also focuses on the phrase "under this part" as set forth in the first sentence of Section 110245. *Id*. at 2. Plaintiff believes that "'this part' unambiguously refers" to the criminal provisions of the Sherman Law set forth in Cal. Health & Safety Code § 111825, *et seq*. Since Section 111825 only contains criminal penalties, Plaintiff contends that the Sherman Law does not provide immunity from civil liability. *Id*.

Defendant advances a different interpretation of the Sherman Law's safe harbor. First, Defendant disputes Plaintiff's interpretation of "this part." Def.'s Supp. Reply 3-4, ECF No. 107. Defendant notes that the California Health & Safety Code is organized by "divisions, parts, chapters, articles and sections" and that the Sherman Law is contained within Part 5 of Division 104. *Id*. According to Defendant, "under this part" should be interpreted as "under Part 5" and the Sherman Law's safe harbor provides protection from any chapter, article, and section of Part 5. *Id*. Second, Defendant argues that "prosecuted" does not have an ordinary meaning of criminal prosecution. *Id*. at 3 n.2 (noting that Black's Law Dictionary defines prosecution as "to carry on an action or other judicial proceeding" and that both the California Code of Civil Procedure and Federal Rules of Civil Procedure use "prosecute" in the context of civil actions). Thus, Defendant asserts that the Sherman Law provides immunity from civil liability.

### 3. Analysis

#### a. Standard of Review

Federal courts interpreting a state law look to the state's rules of statutory interpretation and attempt to determine what meaning the state's highest court would give it. *See Turnacliff v. Westly*, 546 F.3d 1113, 1117-18 (9th Cir. 2008). According to the California Supreme Court, the "ultimate task" in statutory interpretation "is to ascertain the legislature's intent." *People v. Massie*, 19 Cal. 4th 550, 569 (1998). California courts have established a three-step process of statutory interpretation to determine legislative intent. *See MacIsaac v. Waste Mgmt. Collection and Recycling, Inc.*, 134 Cal. App. 4th 1076, 1082 (2005) ("[T]he key to statutory interpretation is applying the rules of statutory construction in their proper sequence.").

Courts "start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context." *Martinez v. Combs*, 49 Cal. 4th 35, 51 (2010). "If the words themselves are not ambiguous, [courts] presume the Legislature meant what it said and the statute's plain meaning governs." *Wells v. One2One Learning Found.*, 39 Cal. 4th 1164, 1190 (2006). When the wording of the statute is ambiguous or permits more than one reasonable interpretation, courts move to the second step of the inquiry. *See Alejo v. Torlakson*, 212 Cal. App. 4th 768, 787 (2013). In this step, a court may turn to secondary rules of interpretation, such as "maxims of construction," *People v. Smith*, 32 Cal. 4th 792, 798 (2004), "the statutory scheme of which the provision is a part, the history and background of the statute, the apparent purpose, and any considerations of constitutionality." *Hughes v. Bd. of Architectural Exam'rs.*, 17 Cal. 4th 763, 776 (1998). "If ambiguity remains after resort to secondary rules of construction…then [courts] must cautiously take the third and final step in the interpretive process." *Alejo*, 212 Cal. App. 4th at 788. In this step, courts apply "reason, practicality, and common sense to the language at hand." *Id*.

#### b. Statutory Language

The Sherman Law's safe harbor provides, in pertinent part, that "no dealer shall be prosecuted under this part…if all the following requirements are satisfied." *See* Cal. Health & Safety Code § 110245. The Court must determine whether the Sherman Law's safe harbor only

6

applies to criminal liability by first, analyzing whether "part" refers to the Sherman Law as a whole or specifically to the penal provisions of Section 111825 and second, analyzing whether "prosecuted" refers solely to criminal actions.

The plain language of the Sherman Law's safe harbor indicates that "part" refers to the Sherman Law as a whole and not to one specific section. The California Health and Safety Code is organized by divisions, parts, chapters, articles, and sections. The Sherman Law is found in Part 5 ("Sherman Food, Drug, and Cosmetic Law") of Division 104 ("Environmental Health"). The Dealer Immunity provision is found in Section 110245 ("Immunity of dealer from prosecution; requirements") of Chapter 3 ("Guarantees") of Part 5 of Division 104. The only reasonable interpretation of "part" is that it refers to "Part 5" of the California Health and Safety Act. *See, e.g.*, Cal. Health & Safety Code § 110405 (using "under Section 110390" when referring to a specific section); Cal. Health & Safety Code § 110385 (using "this article" to refer to the specific article that section falls under); *Crommie v. California, Public Utilities Comm.*, No. 89-4433-BAC, 1993 WL 187719, at *4 (N.D. Cal. Feb. 9, 1993) (finding "part" does not refer to a specific section in the Fair Employment and Housing Act but rather to the entire Act contained within that part of the California Code).

Plaintiff's argument that "part" refers specifically to Section 111825 is unpersuasive for at least two reasons. First, Plaintiff appears to rely on the parallel FDCA statute to support her contention that "part unambiguously refers to the penal provisions of the Sherman Law." Although the FDCA and Sherman Law are parallel statutes, Plaintiff's argument disregards that these statutes are not identical. The California Legislature enacted the Sherman Law with state enforcement provisions separate and apart from the FDCA. *See In Re Farm Raised Salmon Cases*, 42 Cal. 4th. 1077, 1098 (2008). The Court must give significance to the state's choices. The Court cannot presume the California Legislature meant to copy the scope of the FDCA's safe harbor when it deliberately employed different words and a different structure for the Sherman Law's safe harbor. Second, Plaintiff's purported definition of "part" neglects that "part" is used in other portions of the Sherman Law's safe harbor. The pertinent parts of the Sherman Law's safe harbor provide:

7

> No dealer shall be prosecuted under *this part* for a violation concerning any food, drug, device, or cosmetic that is contained in an original, unbroken, and undamaged package that bears the original labeling if all of the following requirements are satisfied…
>
> (c) He or she can produce a guarantee to the effect that the food, drug, device, or cosmetic is not adulterated, misbranded, or falsely advertised, within the meaning of *this part*, or that it is not a food, drug, device, or cosmetic which, pursuant to *this part*, may not be sold or offered for sale in this state.

Cal. Health & Safety Code § 110245 (emphasis added). The use of "part" in subsection c clearly does not refer solely to the penal provisions of Section 111825. Plaintiff's proposed interpretation of "part" in the safe harbor's first sentence would require a different interpretation of "part" in subsection c and violate the long accepted rule of statutory construction that "a term appearing in several places in a statutory text is generally read the same way each time it appears." *People v. Anderson*, 28 Cal. 4th 767, 787 (2002) (quoting *Ratzalf* v. *United States*, 510 U.S. 135, 143 (1994)). Accordingly, Plaintiff's proposed interpretation of "part" is not reasonable.

With respect to the interpretation of "prosecuted," the Court finds that its meaning is not clear and unambiguous. Plaintiff argues "prosecuted" has an ordinary meaning of "criminal prosecution," while Defendant argues that its ordinary meaning includes both criminal and civil actions. In order for the Court to agree with either party, the proposed interpretation of "prosecuted" must be not merely more reasonable than the other proposal, but must be the only reasonable interpretation. *See Coal. of Concerned Cmtys. v. City of Los Angeles*, 34 Cal. 4th 733, 737 (2004). Both Plaintiff's and Defendant's proposed interpretations of "prosecuted" are reasonable. While "prosecuted" may be associated with criminal proceedings, it is also commonly used in the context of civil actions. Black's Law Dictionary defines "prosecute" as "to commence and carry out (a legal action)" and shows the term in context as "because the plaintiff failed to prosecute its contractual claims, the court dismissed the suit." *See* Black's Law Dictionary (10th ed. 2014); s*ee also* Cal. Code Civ. Proc. § 583.410 (allowing for dismissal of civil cases for "delay in prosecution"). As a secondary meaning, Black's Law Dictionary provides a definition of "prosecute" that is related to criminal actions. *See* Black's Law Dictionary (10th ed. 2014) ("[t]o institute and pursue a criminal action"). Under a plain meaning analysis, the term "prosecute" could pertain to either civil or criminal actions or both. Thus, both interpretations advanced by the

parties are reasonable and the Court must move to the second step of the statutory interpretation analysis.

During the second step of the inquiry, the Court may consider the legislative history, statutory scheme, maxims of construction, and other extrinsic sources to determine the meaning of "prosecute." The Court is mindful that the canons of statutory construction provide that a word or phrase is presumed to have the same meaning throughout a text, *see* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012), if possible, every word is to be given effect, *see id.* at 174, and the Court is to construe the text as a whole. *See id*. at 167; *see also People v. Anderson*, 28 Cal. 4th 767, 787 (2002) (quoting *Ratzalf* v. *United States*, 510 U.S. 135, 143 (1994)) ("[A] term appearing in several places in a statutory text is generally read the same way each time it appears."); *Reno v. Baird*, 18 Cal. 4th 640, 658 (1998) ("[Courts] should avoid a construction making any word surplusage."). With these canons in mind, the Court examines the Sherman Law.

The Sherman Law's provisions regarding food labeling are patterned after the FDCA. *See* Cal. Health & Safety Code § 110100. Consistent with federal law, states were permitted to enact food labeling requirements that are identical to the FDCA. *See* 21 U.S.C. § 343-1. Congress, however, did not foreclose a state's right to establish the range of available remedies a state might choose to provide for violation of its laws. *In Re Farm Raised Salmon Cases*, 42 Cal. 4th. 1077, 1090 (2008). The Sherman Law has been upheld as consistent with and not preempted by the FDCA. *Id*.

The Sherman Law covers labeling requirements, administrative actions, and enforcement. The term "prosecute" is used throughout Part 5. *See, e.g.*, Cal. Health & Safety Code §§ 110135, 110155, 110245, 110255, 110552, 110597, 110845, 110850, 110875, 110915, 111830, 111840, 111885, 111905. However, there is no definition of the term in the Sherman Law.

Most relevant to this discussion are the enforcement provisions of the Sherman Law. *See* Cal. Health & Safety Code Ch. 8. In general, the Sherman Law divides enforcement into two parts. First, the Department of Health Services (now, the Department of Public Health) may investigate suspected violations and initiate administrative proceedings and assess civil penalties

for violations to enforce the law. *See* Cal. Health & Safety Code § 111855. Second, since the Department of Health Services is not authorized to file any actions in court, it must refer such cases to the Attorney General, district attorney, or city attorney (referred together as "Attorney General") to "begin appropriate proceedings in the proper court." *See* Cal. Health & Safety Code § 111840.

Under the Sherman Law, the Attorney General may bring a criminal or civil action and the enforcement provisions use the term "prosecute" in reference to both criminal and civil proceedings. In criminal proceedings, the Attorney General may seek convictions for violations of the Sherman Law and the penalties for conviction may include imprisonment, fines, and "reasonable costs incurred by the department in investigating and *prosecuting* the action…" *Id.* at §§ 111825, 111830 (emphasis added). In civil actions, the Attorney General may bring an action in superior court to obtain a temporary or permanent injunction under Cal. Code Civ. P. § 525 to restrain a person from violating the Sherman Law. *See* Cal. Health & Safety Code § 111900. In addition to injunctive relief, or as a "nonpunitive alternative," after finding that the law has been violated, the court "shall award to the department all reasonable costs incurred by the department in investigating and *prosecuting* the action…" *Id.* at § 111905 (emphasis added).

Further, analyzing the use of "prosecute" in other parts of the Sherman Law confirms that "prosecute" cannot refer solely to criminal actions. Section 110155, which is titled "[a]ccess to carrier records; criminal prosecution," provides, in pertinent part, that "[e]vidence obtained under this section shall not be used in a criminal prosecution of the person from whom it is obtained." Cal. Health & Safety Code § 110155. If, as Plaintiff argues, "prosecuted" has an ordinary meaning of "criminal prosecution," then the Legislature would not have included the word "criminal" in this section. Plaintiff's proposed interpretation would make the word "criminal" surplusage and violate a fundamental maxim of construction. *See Reno*, 18 at 658; s*ee also Moss v. Kroner*, 197 Cal. App. 4th 860, 879 (2011) ("It is a settled axiom of statutory construction that significance should be attributed to every word and phrase of a statute, and a construction making some words surplusage should be avoided.").

By examining of all the uses of the term "prosecute" throughout the Sherman Law and

1  considering the canons of statutory interpretation, it is clear that the Sherman Law uses the term
2  "prosecute" in reference to both civil and criminal actions and not solely criminal proceedings.
3  Based on this analysis, the Court finds that the Sherman Law's safe harbor applies to this civil
4  action.
5       As the parties acknowledge, there is no private right of action under the Sherman Law.
6  Plaintiff brings this suit through California's Unfair Competition Law ("UCL"). The UCL
7  proscribes "unlawful business activity," which includes "anything that can properly be called a
8  business practice and that at the same time is forbidden by law." *See Barquis v. Merchants*
9  *Collection Assn.*, 7 Cal. 3d 94, 113 (1972). If Defendant meets the requirements of the Sherman
10  Law's safe harbor, Defendant's conduct would not be forbidden by law, and Plaintiff could not
11  bring an action under the UCL. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.
12  4th 163, 180 (1999) (internal citations omitted) ("When specific legislation provides a 'safe
13  harbor,' plaintiffs may not use the general unfair competition law to assault that harbor.").

### B. Safe Harbor's Applicability to Defendant

15       Although the Court has determined that the Sherman Law's safe harbor protects dealers
16  from civil liability if they comply with its requirements, the safe harbor does not provide any
17  immunity for manufacturers. The Sherman Law does not provide a definition of dealer, but both
18  parties agree that the purpose of the Sherman Law's safe harbor is to place responsibility on the
19  entities best positioned to determine compliance with the Sherman Law. *Glaser, Kohn & Co. v.*
20  *United States*, 224 F. 84, 87 (7th Cir. 1915). ("As between a dealer, to whom the purity of the
21  goods is guaranteed, and the manufacturer, who has the better opportunity of ascertaining the
22  facts, the act aims to throw the ultimate responsibility on the latter, and it should therefore be
23  interpreted, if reasonably possible, so as to carry out this purpose to the fullest extent.").
24       Defendant asks this Court to grant it partial summary judgment because its conduct is
25  covered by the Sherman Law's safe harbor. Def. Mot. for Partial Summary Judgment 8-11, ECF
26  No. 89. Defendant argues that it has complied with all of the requirements of the safe harbor and
27  should be afforded immunity. *Id.* Defendant also contends that Plaintiff has not put forth any
28  evidence to suggest Defendant is a manufacturer as opposed to a dealer. Def.'s Supp. Reply 6,

ECF No. 107.  To the extent Plaintiff claims Defendant works with vendors who manufacture the Kirkland Signature products, Defendant notes that its labeling involvement and approval process occur before the vendor manufactures the product, and is limited to non-technical aspects.  *Id*.; Stipulation 2, ECF No. 105.

Plaintiff responds by arguing that Defendant is a manufacturer with respect to the Kirkland Signature products.  First, Plaintiff argues that Defendant reviews and approves any product labels and has the authority to decide whether changes are necessary to comply with the law.  Pl.'s Supp. Opp. 5-6, ECF No. 106.  Second, Plaintiff points to the deposition of David Tran who is employed as a buyer by Defendant.  *Id*. at 6.  During his deposition, Mr. Tran testified that with "Kirkland Signature [products], we develop both the item and the packaging in conjunction with the vendor."  *Id*.  Further, Mr. Tran testified with respect to the relationship Defendant has with Kirkland Signature vendors that:

> A. The partnership starts with the item inside the box and evolves all the way through to the outside and then onto the shelves. So there's more involvement from both sides from the specifications all the way to the sells [sic].
>
> Q. Okay. So there's much more involvement with Costco and the vendor from A to Z of development of the product, from the product itself to the packaging, from the manufacturing of the product all the way to putting it on the -- from A to Z, Costco is involved in that process with the Kirkland Signature Series product?
>
> A. For Kirkland Signature, to my knowledge, yes.

*Id*.  Plaintiff submits that this deposition testimony, at a minimum, creates a triable issue of fact as to whether Defendant is a manufacturer or dealer.

The Court agrees with Plaintiff, and finds that there is enough evidence to create a disputed issue of material fact as to whether Defendant is a dealer or manufacturer.  Defendant has put forth evidence to show that its involvement with the development of Kirkland Signature products is limited and ceases before its outside vendor manufacturers the product.  *See* Stipulation 2, ECF No. 105.  Since Defendant has put forth evidence that shows its compliance with the Sherman Law's safe harbor, the burden shifts to Plaintiff to present evidence beyond the pleadings that indicates there is a disputed issue of material fact.

The evidence presented by Plaintiff demonstrates that Defendant closely participates in the

development, manufacturing, and sales of Kirkland Signature products. *See generally* Dep. of David Tran, ECF No. 106-1. Defendant counters that its agreements with vendors explicitly limit the scope of Defendant's involvement with the development of Kirkland Signature products. However, Plaintiff's evidence from Defendant's own buyer's testimony, that Defendant is involved from "A to Z" with the development, manufacturing, and selling of Kirkland Signature products, could reasonably be construed as directly contradicting Defendant's vendor agreements and lead to a reasonable inference that Defendant is not merely a "dealer" as defined by the Sherman Law. On a motion for partial summary judgment brought by Defendant, the Court is required to draw all reasonable inferences from the facts before the Court in Plaintiff's favor. Accordingly, at this juncture, the Court cannot rule as a matter of law based on the undisputed facts that Defendant qualifies as a dealer under the Sherman Law's safe harbor.

**IV.  ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion for Partial Summary Judgment is DENIED.

Dated: August 13, 2015

_____
BETH LABSON FREEMAN
United States District Judge